**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Xcentric Ventures LLC, an Arizona limited liability company, | ) ) ) | No. CV-11-1426-PHX-GMS |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| Lisa Jean Borodkin; Daniel Blackert; Asia Economic Institute LLC; Raymond Mobrez; Iliana Llaneras; Does 1-10, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court are four motions filed by Defendants: (1) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 18); (2) Defendants' Motion to Dismiss for Improper Venue or to Transfer (Doc. 17); (3) Defendant Borodkin's Motion for More Definite Statement (Doc. 35); and (4) Defendant Borodkin's Motion to Strike (Doc. 36). As discussed below, the motion to dismiss for lack of personal jurisdiction is denied. The motion to dismiss or transfer for improper venue is also denied. The motion for a more definite statement is granted in part and denied in part. The motion to strike is granted in part and denied in part.[1]

---

[1] Defendants' requests for oral argument are denied as oral argument will not aid the Court's decision. See *Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

Plaintiff Xcentric Ventures, LLC ("Xcentric") is an Arizona company that operates the website www.ripoffreport.com ("Ripoff Report"). As its name suggests, Ripoff Report is an online forum where users can read and post messages about businesses that purportedly have "ripped off" consumers in some manner. Edward Magedson is the manager of Xcentric and the editor of Ripoff Report.

Defendant Asia Economic Institute, LLC ("AEI") is a California company that published current news and events online from the year 2000 until June 2009.

**I.     The 2010 Lawsuit**

On January 27, 2010, AEI and its principles, Raymond Mobrez and Iliana Llaneras, brought an action against Xcentric in state court in California (the "California Action"), asserting claims for defamation, unfair business practices, intentional and negligent interference with prospective economic advantage, and RICO violations. *See Asia Economic Institute v. Xcentric Ventures, LLC*, 2010 WL 4977054 (C.D. Cal. July 19, 2010). These claims arose out of AEI's allegations that Xcentric deliberately manipulated the Ripoff Report so that posts about AEI were more visible than posts about many other companies, and that Xcentric requested money from AEI in exchange for giving AEI more favorable treatment. *See id.* In February 2010, that action was removed to the U.S. District Court for the Central District of California on the grounds of both federal question and diversity jurisdiction. *See id.*; *Asia Economic Institute v. Xcentric Ventures, LLC,* 2011 WL 2469822 (C.D. Cal. May 4, 2011). On July 19, 2010, the District Court granted Xcentric's motion for summary judgment as to the RICO claims. *See Asia Economic Institute*, 2010 WL 4977054. On May 4, 2011, the District Court granted Xcentric's motion for summary judgment as to the remaining claims. *Asia Economic Institute*, 2011 WL 2469822. AEI, Mobrez, and Llaneras were initially represented by just one attorney, Daniel F. Blackert, but from April 19, 2010 until the conclusion of the case were also represented by a second attorney, Lisa J. Borodkin.

## II.     The Current Lawsuit

On July 18, 2011, Xcentric filed a Complaint in this Court, bringing claims for malicious prosecution[2] and aiding and abetting tortious conduct against AEI, Borodkin, Mobrez, Llaneras, and Blackert[3] (collectively "Defendants"). (Doc. 1). Defendants AEI, Mobrez, and Llaneras have filed a motion to dismiss for lack of personal jurisdiction (Doc. 18), and a motion to change venue (Doc. 17), both of which Defendant Borodkin has joined. Borodkin has filed a motion for a more definite statement (Doc. 35), and a motion to strike several paragraphs of the Complaint (Doc. 36). The Court will address each motion in turn.

## DISCUSSION

## I.     Motion to Dismiss for Lack of Personal Jurisdiction

As there is no applicable federal statute governing personal jurisdiction, Arizona's long-arm statute applies. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995). Arizona Rule of Civil Procedure 4.2(a) "provides for personal jurisdiction coextensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).

Federal due process restricts "the power of [a forum state] to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984) (citing *Pennoyer v. Neff*, 95 U.S. 714 (1878)). A nonresident defendant must have certain "minimum contacts" with the forum state such that

---

[2] In its Complaint, Plaintiff brings two similar claims: Wrongful Initiation of Civil Proceedings, and Wrongful Continuation of Civil Proceedings. Plaintiff brings its wrongful continuation claim against all defendants, and its wrongful initiation claim against all defendants except Borodkin. Under California law, which appears to be the applicable law, *see* Section I.C.3, *infra*, both the wrongful initiation of a civil action and the wrongful continuation of such action are covered by a single cause of action—malicious prosecution. *See Zamos v. Stroud*, 32 Cal. 4th 958, 970 (2004) (holding that the tort of malicious prosecution includes "continuing to prosecute a lawsuit discovered to lack probable cause"). The Court will therefore refer to these two claims collectively as Plaintiff's "malicious prosecution" claim.

[3] Default has already been entered against Blackert in this action. (Doc. 51).

1    the exercise of personal jurisdiction does not offend traditional notions of fair play and

2    substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[T]he

3    relationship among the defendant, the forum, and the litigation [are] the central concern of

4    the inquiry into" the minimum contacts necessary for personal jurisdiction. *Shaffer v.*

5    *Heitner*, 433 U.S. 186, 204 (1977).

6         Plaintiff bears the burden of establishing personal jurisdiction. *See Ziegler v. Indian*

7    *River County*, 64 F.3d 470, 473 (9th Cir. 1995). Because the Court is resolving Defendants'

8    motions without an evidentiary hearing, Plaintiff "need make only a prima facie showing of

9    jurisdictional facts to withstand the motion[s]." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th

10   Cir. 1995). That is, Plaintiff "need only demonstrate facts that if true would support

11   jurisdiction." *Id.*

12        The parties agree that general jurisdiction does not exist with respect to Defendants.

13   The Ninth Circuit has established a three-part inquiry for specific jurisdiction: (1) has the

14   defendant purposefully directed tortious activities at the forum or a resident thereof or

15   performed some act by which he purposefully availed himself of the privileges of conducting

16   activities in the forum, (2) do the claims arise out of or result from the defendant's forum-

17   related activities, and (3) is the exercise of jurisdiction reasonable? *See Bancroft & Masters,*

18   *Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000). The Court will address each of

19   these considerations separately.

20        **A.    Purposeful Direction or Availment**

21        This test is satisfied when the defendant's non-forum conduct was purposely directed

22   at and caused harm in the forum state. *See Calder v. Jones*, 465 U.S. 783, 788–90 (1984).

23   The defendant "must have (1) committed an intentional [tortious] act, which was (2)

24   expressly aimed at the forum state, and (3) caused harm . . . which is suffered and which the

25   defendant knows is likely to be suffered in the forum state." *Bancroft*, 223 F.3d at 1087

26   (citation omitted); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,

27   433 F.3d 1199, 1207 (9th Cir. 2006) (clarifying that the "'brunt' of the harm need not be

28   suffered in the forum state"). Accepting Plaintiff's factual allegations as true, as the Court

1 must at this stage, *see Ballard*, 65 F.3d at 1498, the Court finds these elements satisfied.

2      First, Plaintiff alleges that Defendants committed malicious prosecution by litigating

3 the California Action even though their claims were not tenable. (Doc. 1, ¶ 69). Defendant

4 Borodkin was not part of the California Action at the time it was initiated. Nonetheless,

5 Plaintiff alleges that Borodkin joined Blackert as counsel for AEI in April 2010 and

6 continued litigating the claims against Plaintiff "despite knowing that each and every claim

7 . . . was factually groundless and that the action was commenced . . . for the improper

8 purpose of harassment." (*Id.* at ¶ 53). As discussed in Section IV, *infra*, such conduct may

9 constitute an intentional tort under California law. Plaintiff has therefore adequately alleged

10 an intentional tortious act.

11      Plaintiff also adequately alleges express aiming. To be "expressly aimed" at a state,

12 conduct must be "targeted at a known individual who has a substantial, ongoing connection

13 to the forum." *Fiore v. Walden*, 657 F.3d 838, 849 (9th Cir. 2011). Plaintiff alleges that the

14 California Action was targeted at Plaintiff and Plaintiff's principals and officers, whom

15 Defendants knew to be residents of Arizona. (Doc. 1, ¶ 9). Furthermore, the complaint filed

16 by Defendants in the California Action identifies Plaintiff as an Arizona LLC. (Doc. 1, Ex.

17 A at 1).[4] Plaintiff has therefore sufficiently alleged that Defendants targeted Plaintiff, and that

18 Plaintiff had a substantial and ongoing connection to the State of Arizona. *See Dole Food*

19 *Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (holding that purposeful availment

20 is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful

21 direction' of a foreign act having effect in the forum state").

22      Finally, Plaintiff alleges that Defendants intended that their actions cause Plaintiff to

23 suffer harm within Arizona. (*See* Doc. 1, ¶ 9). Plaintiff has satisfied each element of the

24 _____

25      [4] The Court takes this document into account because it has been attached as an
exhibit to Plaintiff's Complaint. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d

26 895, 899–900 (9th Cir. 2007) ("When ruling on a motion to dismiss, we may generally
consider only allegations contained in the pleadings, exhibits attached to the complaint, and

27 matters properly subject to judicial notice.") (internal quotation omitted).

28

1  purposeful direction test.

2        Defendants contend that this Court's decision in *Xcentric Ventures, LLC v. Bird*, a

3  case in which this Court dismissed an action for lack of personal jurisdiction, suggests the

4  opposite result. 683 F. Supp. 2d 1068, 1074 (D. Ariz. 2010). In *Bird*, the defendants allegedly

5  published an article on the internet that defamed Xcentric. *Id.* at 1070–72. Xcentric brought

6  suit against the defendants in Maricopa County Superior Court, and the action was removed

7  to this Court. *Id.* The defendants then moved to dismiss for lack of personal jurisdiction. The

8  Court granted their motion, holding that "Plaintiffs have [ ] not met their burden of

9  establishing that Defendants purposefully directed their allegedly defamatory article at

10  Arizona." *Id.* at 1075. A lawsuit differs significantly, however, from an internet article.

11  Whereas an internet article is published for a broad audience, a lawsuit is served on a

12  particular individual. Unlike a webpage, a lawsuit is not a forum to air general grievances;

13  it is a process by which a particular individual is expressly targeted for a particular remedy.

14  The facts in *Bird* are therefore unlike those in this case.

15        Nor does the Arizona Supreme Court's decision in *Bils v. Bils* suggest a different

16  result. 200 Ariz. 45, 46, 22 P.3d 38, 39 (2001). In *Bils*, the court determined that Arizona

17  courts could not exercise personal jurisdiction over an abuse of process claim filed by an

18  Arizona resident against a California resident. *See id.* at 48. In *Bills*, however, the judicial

19  proceeding during which the alleged abuse of process occurred was initiated in the California

20  court by the Arizona resident, not by the California resident. *See id*. at 46 ("This is a civil

21  action brought by Willy Bils, an Arizona resident, against his brother, Henry Bils, a

22  California resident. . . . The dispute arose out of the probate of their mother's estate *initiated

23  by Willy* in a California court.") (emphasis added). In the instant case, Defendants expressly

24  targeted an Arizona entity and haled it into California for judicial proceedings. (*See* Doc. 1,

25  Ex. A). *Bils* is therefore unlike this case.

26        In short, the facts alleged in Plaintiff's Complaint satisfy all three elements of the

27  Ninth Circuit's test for purposeful direction.

28

**B.     Forum-Related Activities**

"The second requirement for specific jurisdiction is that the contacts constituting purposeful [direction] must be the ones that give rise to the current suit." *Bancroft*, 223 F.3d at 1088. The Ninth Circuit "measure[s] this requirement in terms of 'but for' causation." *Id.* The requirement is easily satisfied in this case. But for Defendants' initiation and continuation of the California Action, Plaintiff would not have brought the instant action.

**C.     Reasonableness**

Where the previous two requirements are met, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see Ballard*, 65 F.3d at 1500 (characterizing this as a "heavy burden of rebutting the strong presumption in favor of jurisdiction"). Seven specific factors must be considered in making the reasonableness determination: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Bancroft*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476–77).

**1.     Extent of Purposeful Interjection into Arizona**

While Defendants have had little direct contact with Arizona, Plaintiff has made a prima facie showing that Defendants purposefully directed allegedly tortious conduct at Arizona residents. "On balance, the extent of [Defendants'] purposeful interjection into Arizona affairs is neither particularly great, nor *de minimis*. This fact appears to be neutral." *Menken v. Emm*, 503 F.3d 1050, 1060.

**2.     Burden on Defendants in defending in Arizona**

Undoubtedly, it would be more burdensome for Defendants to litigate in Arizona than in California. "'Nevertheless, with the advances in transportation and telecommunications

1  and the increasing interstate practice of law, any burden is substantially less than in days

2  past.' Although the inconvenience does not appear to be severely burdensome, this factor

3  weighs slightly in favor of [Defendants]." *Id.* (citation omitted).

4  ### 3.    Conflict with Sovereignty of California

5  Defendants argue that deciding this case here in Arizona would conflict with

6  California's interest in interpreting its own laws. When sitting in diversity, the Court applies

7  Arizona choice of law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496

8  (1941); *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  And in Arizona, the governing law

9  for malicious prosecution actions is generally "the local law of the state where the proceeding

10  complained of occurred, unless, with respect to the particular issue, some other state has a

11  more significant relationship . . . to the occurrence and the parties." *Gradient Analytics, Inc.*

12  *v. Biovail Corp.*, 2010 WL 2991573, at *4 (D. Ariz. July 26, 2010) (citing the RESTATEMENT

13  (SECOND) CONFLICT OF LAWS § 155). The parties do not contend that Arizona has a more

14  significant relationship to the occurrence than does California. Nor is the Court aware of any

15  facts which so demonstrate. "To the contrary, 'the paramount interest in cases involving the

16  torts of malicious prosecution and abuse of process is that of the state whose courts were

17  allegedly abused.'" *Id.* at *5 (citing *Tripodi v. Local Union No. S38*, 120 F. Supp. 2d 318,

18  321 (S.D.N.Y. 2000). Plaintiff's claims should therefore be decided under California law.

19  California law thus not only apparently applies to Plaintiff's substantive claims, but

20  also applies to the admissibility of several recordings which Plaintiff may seek to provide as

21  evidence in this case. In the California Action, Defendants alleged in their complaint that

22  during the course of several phone calls between Defendant Mobrez and Plaintiff, Plaintiff

23  demanded a fee of approximately $5,000 to correct the content of various third-party postings

24  about AEI on Plaintiff's website. (Doc. 1, Ex. A at ¶¶ 30–35). Defendant Mobrez allegedly

25  submitted a sworn declaration to the court in the California Action detailing these phone

26  conversations and reasserting that Plaintiff had demanded $5,000 to make any changes. (Doc.

27  1, Ex. C). Plaintiff, contends, however, that unbeknownst to Defendants, these phone

28  conversations between Mobrez and Plaintiff were recorded by Plaintiff's phone system and

1   are now in Plaintiff's possession. (Doc. 1, ¶ 41). Plaintiff contends that these recordings show

2   that Plaintiff did not, in fact, ask for any money from Mobrez. (*Id.* at ¶¶ 41–43).

3        California Penal Code § 632 states that a phone conversation cannot be recorded

4   unless all parties to the conversation consent to the recording; recordings for which consent

5   is not given are inadmissible in both civil and criminal proceedings. Cal. Penal Code §

6   632(a), (d). The federal court in the California Action stated that if it were to engage in a

7   choice-of-law analysis regarding the admissibility of these phone recordings, it "undoubtedly

8   would apply California law, given California's strong public interest in protecting the

9   confidentiality of certain communications." *Asia Economic Institute*, 2010 WL 4977054, at

10  *11. The California Action involved federal as well as state causes of action, and the court

11  ultimately applied federal law without reaching California Penal Code § 632.[5] The instant

12  action, however, is not based on questions of federal law. Rather the Court is sitting in

13  diversity. Generally, the Federal Rules govern the admissibility of evidence in diversity

14  cases. The Ninth Circuit has held, however, that § 632 "is an exception to [this] general rule,"

15  as this section "is an integral component of California's substantive state policy of protecting

16  the privacy of its citizens, and is properly characterized as substantive law." *Feldman v.*

17  *Allstate Ins. Co.*, 322 F.3d 660, 666–67 (9th Cir. 2003) ("[S]tate evidence rules that are

18  'intimately bound up' with the state's substantive decision making must be given full effect

19  by federal courts sitting in diversity."). Accordingly, if Plaintiff were to request admission

20  of the phone recordings in the instant case, it appears the Court would be required to apply

21

22

23

24   [5] The court held that under 18 U.S.C. § 2511—the federal law that regulates the interception of oral communications—the recordings were admissible. The court ultimately

25  found, however, that by refusing to reveal the name of the third-party vendor who actually made the recordings, Xcentric failed to properly authenticate the recordings as required by

26  Federal Rules of Evidence 902 and 1002. Accordingly, the court held that the recordings were not admissible as evidence. *See Asia Economic Institute*, 2010 WL 4977054, at *12–13.

27  Xcentric states that it may disclose the identity of the third-party vendor in this case and get

28  such vendor to submit an affidavit authenticating the recordings. (Doc. 26 at 13).

1    California Penal Code § 632 in determining whether the recordings are admissible.[6]

2        In short, the court which decides this action will likely need to apply both California

3    tort law and California Penal Code § 632. Given the State of California's interest in applying

4    its own laws, the sovereignty factor weighs in favor of Defendants, but not significantly as

5    this Court is well able to apply such law.

6                    **4.    Arizona's Interest in Adjudicating the Dispute**

7        Arizona has a strong interest in ensuring that its residents are compensated for their

8    injuries. See *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). This factor

9    favors Plaintiff.

10                   **5.    Most Efficient Judicial Resolution of the Controversy**

11       In evaluating this factor, the Court should look " 'primarily at where the witnesses and

12   the evidence are likely to be located.'" *Menken*, 503 F.3d at 1061 (citation omitted). Because

13   evidence and witnesses are located in both Arizona and California, "neither forum has a clear

14   efficiency advantage." *Id.* This factor is neutral.

15                   **6.    Importance of Litigating in Arizona to Plaintiff**

16       Because Plaintiff is located in Arizona, litigating here would be more convenient than

17   litigating in California. This factor weighs in favor of Plaintiff.

18                   **7.    Existence of Alternative Forum**

19       Plaintiff does not dispute that this action could have been brought in a California

20   court. This factor favors Defendants.

21

22   _____

    [6] Defendant Borodkin contends that by arguing in the instant case that the recordings
23   are admissible under California law, Xcentric's counsel is attempting to relitigate an issue
    previously decided against it, and should be subject to sanctions under 28 U.S.C. § 1927
24   (2006). In the California Action, the court implied that, in a diversity suit, the recordings
    would be inadmissible pursuant to California Penal Code § 632. *See Asia Economic Institute*,
25   2010 WL 4977054, at *11–12. The California Action, however, was not a diversity action,
    and the admissibility of the recordings was ultimately decided under federal law. *See id.* The
26   court's statement that the recordings are inadmissible under California law was therefore
    dicta and not a resolution of the issue. The Court will not sanction Xcentric's counsel under
27   § 1927.

28

1

## 8.    Consideration of All the Factors

2      Defendants have "not presented a compelling case that the exercise of jurisdiction

3   would be unreasonable." *Menken*, 503 F.3d at 1061 (citations omitted). Rather, this case is

4   very similar to *Magedson v. Whitney Information Network, Inc.*, a case in which this Court

5   determined that the exercise of jurisdiction was reasonable. 2009 WL 113477 (D. Ariz. Jan.

6   16, 2009). In *Whitney*, Xcentric filed abuse of process claims against Florida-based Whitney

7   Information Network, Inc. ("WIN") and its counsel and officers based on a prior lawsuit

8   brought by WIN against Xcentric in the U.S. District Court for the Middle District of Florida.

9   *Id.* The Court in *Whitney* denied the defendants' motion to dismiss for lack of personal

10  jurisdiction, holding that "the seven reasonableness factors d[id] not weigh heavily in favor

11  of Defendants." *Id.* at *4.

12     Defendants seek to distinguish the instant case from *Whitney*, arguing that the conflict

13  with state sovereignty is greater in this case than it was in *Whitney*:

14         In *Whitney* there was no dispute over the admissibility of
            recorded conversations based on diametrically opposing
15         evidentiary rules. Thus, in *Whitney*, the sovereignty of the laws
            of Florida, the forum of the underlying action, were not
16         threatened.

17  (Doc. 33 at 5). California's interest in interpreting its own laws, however, is not sufficient

18  in this case to make the exercise of jurisdiction in Arizona unreasonable. "Diversity

19  jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility

20  to potential local bias." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 111 (1945). And

21  if local courts were always required to adjudicate diversity cases involving their forum's

22  laws, this assurance against local bias would be weakened. Defendants required Plaintiff to

23  litigate the first lawsuit in California. Defendants cannot now argue persuasively that it is

24  unreasonable to be required to litigate the second lawsuit in Arizona.

25     In sum, specific jurisdiction exists with respect to each Defendant. The exercise of

26  personal jurisdiction over Defendants will not violate the principles of due process.

27

28

**III.     Motion to Dismiss for Improper Venue; or in Alternative to Transfer for Improper Venue; or in Alternative to Transfer for Convenience**

Defendants ask the Court to dismiss this action under 20 U.S.C. § 1391(a) on the grounds that venue is improper. (Doc. 17 at 1–5). Defendants alternatively ask the Court to transfer this action to the Central District of California pursuant to either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). (Doc. 17 at 5–9).

**A.     Motion to Dismiss for Improper Venue – 20 U.S.C. § 1391(a)**

Under 20 U.S.C. § 1391(a), a diversity action must be brought in:

> (1) A judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) A judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The first and third provisions of § 1391(a) are not available in this case because none of the Defendants reside in Arizona and because there is at least one other district—the Central District of California—in which this action could be brought. Similarly, because property is not at issue in this case, the second prong of the second provision does not apply. Nevertheless, pursuant to § 1391(a)(2), venue is proper in Arizona because a substantial part of the events or omissions giving rise to the claims occurred in Arizona. "[F]or venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, *even if other material events occurred elsewhere*." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis added). Xcentric alleges that the brunt of its harm was suffered here in Arizona, and the Ninth Circuit has held that in a tort action, the "locus of the injury" constitutes a substantial part of the events giving rise to a plaintiff's claim. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). *See also Fiore*, 657 F.3d at 859 (9th Cir. 2011) ("In *Myers*, the fact that 'at least one of the "harms" suffered by Plaintiffs . . . was felt in Nevada' was sufficient to make venue proper

- 12 -

1    in Nevada.").

2           Even if the locus of Plaintiffs injury did not, standing alone, constitute a substantial

3    part of the events giving rise to Plaintiff's claims, other substantial events giving rise to

4    Plaintiff's claims have also taken place in Arizona. To be sure, the principal event giving rise

5    to Plaintiff's claims was the California Action and its accompanying California-based

6    judicial proceedings. Nonetheless, other substantial events relating to that action occurred

7    in Arizona. For instance, Defendants Mobrez and Llaneras traveled to Arizona for settlement

8    discussions with Plaintiff's manager, Ed Magedson, and sent attorneys to Arizona to depose

9    him. (Doc. 27 at 4). Defendants Borodkin and Blackert sent demand letters to Plaintiff's

10   general counsel in Arizona. (Doc. 26-1, Exs. B, C). And just prior to the filing of the

11   California Action, Mobrez placed seven phone calls to Xcentric's place of business in

12   Arizona and had several conversations with Xcentric representatives. (Doc. 1 at ¶ 26). These

13   conversations were allegedly recorded in Arizona by Xcentric's phone system and according

14   to Defendants "are key to Plaintiff's burden of proof" in the instant case. (Doc. 33 at 3).

15          In sum, the alleged harm to Plaintiff in Arizona as a result of the California Action

16   constitutes a substantial part of the events giving rise to Plaintiff's claims. Moreover, acts

17   taken by Defendants in Arizona in connection with the California Action also constitute a

18   substantial part of the events giving rise to Plaintiff's claims. Plaintiff's claims are not

19   dismissed due to improper venue.

20          **B.     Motion to Transfer for Improper Venue – 28 U.S.C. § 1406(a)**

21          Defendants next ask the Court to transfer this action to the Central District of

22   California pursuant to 28 U.S.C. § 1406(a) (2006). (Doc. 17 at 5–9). Section 1406(a) states

23   that where a case is filed "laying venue in the wrong division or district," the court "shall

24   dismiss, or if it be in the interest of justice, transfer such case to any district or division in

25   which it could have been brought." 28 U.S.C. § 1406(a). As discussed above, Plaintiff has

26   filed its case in a proper venue. The Court will not, therefore, transfer the case under

27   § 1406(a).

28

1   **C.    Motion to Transfer for Convenience – 28 U.S.C. § 1404(a)**

2          Defendants lastly request that the Court transfer this case to the Central District of

3   California pursuant to 28 U.S.C. § 1404(a). The statute authorizes such a transfer if the action

4   could have been brought in the Central District of California and "transfer is warranted by

5   the convenience of parties and witnesses and promotes the interests of justice." *Van Dusen*

6   *v. Barrack*, 376 U.S. 612, 616 (1964). "[T]he purpose of [section 1404(a)] is to prevent the

7   waste of time, energy and money and to protect litigants and the public against unnecessary

8   inconvenience and expense." *Id.* (citation omitted).

9          The parties do not dispute that this action could have been brought in the Central

10   District of California. The Court must determine whether Defendants have made "a strong

11   showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal*

12   *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). This determination

13   requires the weighing of several factors: (1) the convenience of the parties, (2) the

14   convenience of witnesses, (3) the availability of compulsory process to compel unwilling

15   witness attendance, (4) the availability of witnesses and their live testimony at trial, (5) the

16   ease of access to sources of proof, (6) the differences in the costs of litigation in the two

17   forums, (7) contacts with the chosen forum, (8) jurisdiction over the parties, (9) the state

18   most familiar with the governing law, and (10) the relevant public policy of the forum state.

19   *Decker Coal*, 805 F.2d at 843; *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir.

20   1988); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

21   **1.    Convenience of the Parties and Witnesses**

22          Xcentric is an Arizona limited liability company, and its founder and manager, Ed

23   Magedson, is an Arizona resident. AEI has its principal place of business in California, and

24   three of the four individual Defendants are California residents. Potential non-party witnesses

25   are located in both Arizona and California. The convenience of the parties and witnesses is

26   therefore "an equally neutral factor in deciding the motion for change of venue." *Advanced*

27   *Semiconductor Materials v. Applied Materials, Inc.*, 30 U.S.P.Q.2d 1553, 1554 (D. Ariz.

28   1993).

### 2.    Availability of Compulsory Process and Live Testimony

The "availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y.1989). Defendants, however, do not contend that their witnesses will be unavailable to testify in Arizona absent the use of the Court's subpoena power. (*See* Doc. 17 at 9; Doc. 32 at 3–4; Doc. 34 at 15; Doc. 47 at 10–11). This factor is therefore neutral.

### 3.    Ease of Access to Sources of Proof

The primary sources of proof in this action appear to be 1) testimony provided by the parties and other witnesses; 2) court documents from the California Action; and 3) recordings of phone conversations between Xcentric and Mobrez. As stated above, the parties and witnesses are located in both Arizona and California. The parties do not address whether the court documents or phone recordings would be easier to access in Arizona or California. This factor is neutral.

### 4.    Differences in the Costs of Litigation between the Two Forums

Given the recent advances in electronic communication and document production, discovery costs should be about the same in either forum. *See Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 416 F. Supp. 2d 948, 971 (D. Haw. 2006). At this stage of the litigation, it cannot be determined whether the costs of travel and transportation will be greater if the case is tried in Arizona. This factor is neutral.

### 5.    Contacts with the Chosen Forum

Plaintiff's contacts in Arizona justify its choice of this forum. Defendants' contacts with Arizona are minimal. If this factor favors Plaintiff, it does so only slightly.

### 6.    Jurisdiction over the Parties

The Court has determined that specific jurisdiction exists with respect to each Defendant. This factor weighs against transfer.

### 7.    State Most Familiar with the Governing Law

As discussed in Section I.C.3 above, the Court will likely be required to apply

California law to Plaintiff's claims. This factor weighs slightly in favor of Defendants.

**8.      Relevant Public Policy of the Forum State**

This factor weighs strongly against transfer because Arizona has an interest in ensuring that its citizens are compensated for their injuries. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984).

**9.      Consideration of All the Factors**

Having carefully considered each of the relevant factors, the Court concludes that this case should not be transferred to the Central District of California. "A court should not lightly disturb a plaintiff's choice of forum." *Holder Corp. v. The Main Street Distrib.*, Inc., 1987 WL 14339, at *8 (D. Ariz. Jan. 16, 1987) (citing *N. Acceptance Trust v. Gray*, 423 F.2d 635, 654 (9th Cir.1970)). Defendants "must make a strong showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal*, 805 F.2d at 843. They have not met this burden. Only one factor, familiarity with the governing law, weighs in favor of transfer. Although this factor is important, it is not enough to upset Plaintiff's choice of its home forum. Defendants required Plaintiff to litigate the first lawsuit in California. The California Defendants cannot now argue persuasively that it is unreasonable for them to be required to litigate the second lawsuit in Arizona. *Whitney*, 2009 WL 113477, at *4.

**IV.    Motion for More Definite Statement**

Defendant Lisa Borodkin moves for a more definite statement with respect to Plaintiff's allegations against her. First, Borodkin contends that there are certain paragraphs of the Complaint for which Plaintiff should specify which "Defendants" it is referencing. (Doc. 35 at 2). Second, Borodkin contends that there are particular paragraphs of the Complaint in which Plaintiff should detail which "claims" it is referencing. (*Id.*). Third, Borodkin argues that Plaintiff should provide a more definite statement regarding Borodkin's alleged improper purpose in continuing the California Action. (*Id*. at 15–16). Lastly, Borodkin contends that Plaintiff must reference a specific primary tort in relation to its "Aiding and Abetting Tortious Conduct" claim. (*Id.* at 16).

"If a defendant needs additional information to enable him to answer or prepare for

1   trial the procedure provided by the Federal Rules is a motion for a more definite statement."
2   *Bowles v. Glick Bros. Lumber Co.*, 146 F.2d 566, 568 (9th Cir. 1945). Under Federal Rule
3   of Civil Procedure 12(e), if "a complaint is 'so vague or ambiguous that a party cannot
4   reasonably be required to frame a responsive pleading,' the defendant may move for an order
5   requiring a more definite statement by pointing out 'the defects complained of and the details
6   desired." *Bautista v. County of L.A.*, 216 F.3d 837, 843 n.1 (9th Cir. 2000). Rule 12(e)
7   motions are "'ordinarily restricted to situations where a pleading suffers from unintelligibility
8   rather than want of detail, and if the requirements of the general rule as to pleadings are
9   satisfied and the opposing party is fairly notified of the nature of the claim, such motion is
10  inappropriate.'" *Castillo v. Norton*, 219 F.R.D. 155, 163 (D. Ariz. 2003) (quoting *Sheffield
11  v. Orius Corp.*, 211 F.R.D. 411, 414–15 (D. Or. 2002)).

12          Borodkin first contends that Plaintiff references "Defendants" in several paragraphs
13  of the Complaint without specifying which defendants it is referencing. To the contrary,
14  Plaintiff appears to have spelled out in these instances that it is referring to all Defendants.
15  (*See, e.g.,* Doc. 1, ¶ 53) ("Defendants, *and each of them*, actively and aggressively opposed
16  Xcentric's Motion for Summary Judgment despite knowing that each and every claim in the
17  Asia Litigation was factually groundless.") (emphasis added).[7] Plaintiff was likewise careful
18  to either spell out which "claims" it is referencing, or else to use this word in a context that
19  makes it reasonably clear which claims it is referencing. (*See, e.g.*, Doc. 1, ¶ 69)
20  ("Defendants AEI, MOBREZ, LLANERAS and BLACKERT each knew the action was
21  factually groundless *as to each and every claim*.") (emphasis added).

22          Borodkin next contends that Plaintiff must provide a more definite statement
23  regarding Borodkin's alleged improper purpose in continuing the California Action. (Doc.

24  ——————————————

25          [7] The sole exception to Plaintiff's adequate identification of defendants is the second
26  paragraph in Plaintiff's Complaint. In paragraph 2, Plaintiff alleges that Defendants
    committed perjury, subornation of perjury, and false swearing, without specifying which
27  defendants committed each alleged wrong. (Doc. 1, ¶ 2). As discussed below, however, this
    paragraph has been stricken from the Complaint. Plaintiff need not, therefore, provide a more
28  detailed statement regarding paragraph 2's allegations.

35 at 15–16). Under California law, to establish liability for malicious prosecution a plaintiff must show that the defendant initiated or continued a lawsuit (1) "without probable cause"; and (2) "with malice." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 871–72 (1989) (quoting *Bertero v. National General Corp.*, 13 Cal.3d 43, 50 (1974)). *See also Zamos v. Stroud*, 32 Cal.4th 958, 970, 87 P.3d 802, 810 (2004) ("[A]n attorney may be held liable for malicious prosecution for *continuing* to prosecute a lawsuit discovered to lack probable cause.") (emphasis added); *Lujan v. Gordon*, 70 Cal. App. 3d 260, 264 (1977) ("There does not appear to be any good reason not to impose liability upon a person who inflicts harm by aiding or abetting a malicious prosecution which someone else has instituted."). An action is initiated or continued without probable cause where the action is not "legally 'tenable.'" *Sheldon*, 47 Cal.3d at 877. The probable cause element therefore requires an "objective evaluation of legal tenability" and is a matter of law to be decided by the Court. *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 497–98 (1998) (emphasis in original omitted).

The "malice" element, on the other hand, "relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." *Downey Venture v. LMI Ins. Co.* 66 Cal. App. 4th 478, 494 (1998). "The plaintiff must plead . . . actual ill will or some improper ulterior motive." *Id.* (emphasis in original omitted). An improper ulterior motive held by a client "is not imputable to counsel." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.,* 515 F.3d 1019, 1032–33 (9th Cir. 2008). Accordingly, where a plaintiff brings claims against both client and counsel in a malicious prosecution action, the plaintiff must separately plead and prove an improper purpose on each defendant's behalf. *See Zeavin v. Lee*, 136 Cal. App. 3d 766, 772 (1982) ("Appellants' unstated but assumed argument of joint liability of attorney and client for the conduct of each other where both are joined as defendants in a malicious prosecution action [ ] lacks merit."). Although, "for some purposes an attorney is treated as the agent of his client so that his conduct is imputed to his client, the client is not the agent of his attorney." *Id.* (internal citations and quotation marks omitted). Therefore, an attorney is only liable for his own improper purposes, and not those of his client. *See id. See also* RESTATEMENT (SECOND) OF TORTS § 674, cmt d ("[E]ven if [counsel]

has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim.").

Plaintiff pleads several improper purposes on behalf of AEI, Mobrez, Llaneras, and Blackert which may constitute malice. (*See* Doc. 1, ¶ 72). Plaintiff does not, however, make similar allegations regarding Borodkin's improper purposes, stating only that "[t]he actions of Defendant AEI, MOBREZ, LLANERAS, BLACKERT and BORODKIN were willful, malicious, and the product of an evil hand guided by an evil mind." (Doc. 1, ¶ 84). This conclusory statement does not sufficiently "enable [Borodkin] to answer or prepare for trial." *Bowles*, 146 F.2d at 568. The Complaint does not make clear, for instance, whether Plaintiff is alleging that Borodkin had her own, independent improper purposes, much less provide any detail regarding what Borodkin's alleged improper purposes were. Plaintiff must therefore provide a more definite statement regarding Borodkin's alleged improper motives and purposes.

Borodkin lastly contends that Plaintiff must identify the primary tort that Defendants are alleged to have aided and abetted. (Doc. 35 at 16). Plaintiff's third cause of action against Defendants is for "Aiding and Abetting Tortious Conduct." (Doc. 1 at 17). Plaintiff does not state, however, which tort Defendants are alleged to have aided and abetted. The only other claims referenced in the Complaint are the wrongful initiation and continuation of civil proceedings, or in other words, the tort of malicious prosecution. *See* note 2, *supra*. Defendants should not be left to guess, however, whether malicious prosecution is indeed the primary tort they are alleged to have aided and abetted. Plaintiff must provide a more definite statement specifying a particular primary tort.

## V.   Motion to Strike

Borodkin lastly moves to strike portions of paragraphs 2, 42, 44, 50 and 51 of the Complaint under Federal Rule of Procedure 12(f). (Doc. 36 at 1). Rule 12(f) provides: ". . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Allegations may be stricken as scandalous

1    if the matter bears no possible relation to the controversy or may cause the objecting party

2    prejudice." *De Lamos v. Mastro*, 2010 WL 3809936, at *3 (D. Ariz. Sep. 20, 2010) (quoting

3    *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992)).

4         Borodkin first asks the Court to strike paragraph 2 of the Complaint. (Doc. 45 at 2–3).

5    This paragraph states that "Defendants engaged in a wide variety of unlawful, criminal,

6    tortious, and unethical conduct including, but not limited to: **perjury** in violation of 18

7    U.S.C. § 1621, **subornation of perjury** in violation of 18 U.S.C. § 1622, **false swearing** in

8    violation of 18 U.S.C. § 1623, and multiple/repeated violations of the California Rules of

9    Professional Conduct." (Doc. 1, ¶ 2) (double emphasis in original). Whether Defendants

10   submitted false statements during the California Action is relevant to Plaintiff's claims in this

11   case. Plaintiff seeks to establish that Defendants knew the claims in the California Action

12   were factually groundless, and if Defendants knowingly submitted materially false

13   statements, this may be evidence that they knew they had no basis on which to bring such

14   claims. Paragraph 2, however, places undue emphasis on the criminal nature of Defendants'

15   conduct in terms that have no bearing on the claims Plaintiff is asserting. For instance,

16   Plaintiff identifies specific criminal statutes which it accuses Defendants of violating, yet

17   Plaintiff never discusses the elements of such statutes or alleges that the statutes themselves

18   have any bearing on the legal claims it brings in the Complaint. (*Id*.). Plaintiff also makes the

19   broad assertion in paragraph 2 that Defendants have engaged in a "wide variety" of criminal

20   conduct. (*Id*.). Yet the only potentially criminal act referenced elsewhere in the Complaint

21   is Defendants' alleged submission of false statements—an act which does not constitute a

22   "wide variety" of criminal conduct. Finally, the alleged submission of false statements as

23   described in paragraph 2 is also detailed elsewhere in the complaint. (*See, e.g.*, Doc. 1,

24   ¶¶ 49–51). Accordingly, the non-prejudicial information contained in paragraph 2 is

25   redundant. *See* Federal Rule of Procedure 12(f) (court may strike matters which are

26   "redundant"). Paragraph 2 is stricken from the Complaint.

27        Borodkin also asks the Court to strike Plaintiff's allegations of "perjury" and

28   "subornation of perjury" in paragraphs 42, 44, 50, and 51 of the Complaint, contending that

such references are irrelevant to Plaintiff's claims. (Doc. 45 at 6). Black's Law Dictionary (9th ed. 2009) defines perjury as "[t]he act or an instance of a person's deliberately making material false or misleading statements while under oath." Plaintiff has alleged that Defendants Mobrez and Llaneras made false, sworn statements that were material to the California Action, and that Defendants Borodkin and Blackert suborned such statements. As discussed above, whether Mobrez and Llaneras made such statements is material to Plaintiff's claims in this case. Referring to such alleged false statements as "perjury" is consistent with this word's definition in Black's Law Dictionary and does not violate Rule 12(f). Accordingly, paragraphs 42, 44, 50, and 51 are not stricken from the Complaint.

## CONCLUSION

Plaintiff has made a prima facie case for exercising personal jurisdiction over Defendants. Venue is appropriate in the District of Arizona. Plaintiff must provide a more definite statement regarding Defendant Borodkin's alleged improper purpose in continuing the California Action. Plaintiff must also provide a more definite statement regarding its third cause of action and must specify which primary tort Defendants are alleged to have aided and abetted. Paragraph 2 is stricken from the Complaint as scandalous and redundant. Paragraphs 42, 44, 50, and 51 are not stricken from the Complaint.

**IT IS THEREFORE ORDERED:**

1.    Defendants' Motion to Dismiss for Improper Venue or to Transfer (Doc. 17) is **DENIED**.

2.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 18) is **DENIED**.

3.    Defendant Borodkin's Motion for More Definite Statement (Doc. 35) is **granted in part and denied in part**.

4.    Defendant Borodkin's Motion to Strike (Doc. 36) is **granted in part and denied in part**.

/ / /

/ / /

1      5.    **Striking** paragraph 2 from Plaintiff's Complaint (Doc. 1).

2      DATED this 29th day of February, 2012.

3

4      _A. Murray Snow_

       G. Murray Snow
5      United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28