**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Xcentric Ventures LLC, an Arizona limited liability company, | ) ) ) | No. CV-11-1426-PHX-GMS |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| Lisa Jean Borodkin; Daniel Blackert; Asia Economic Institute LLC; Raymond Mobrez; Iliana Llaneras; Does 1-10, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court are Defendant Borodkin's Motion to Strike or for a More Definite Statement (Doc. 64) and Defendants Llaneras and Mobrez's Motion to Set Aside Default (Doc. 94). For the reasons discussed below, Defendant Borodkin's motion is denied and Defendants Llaneras and Mobrez's motion is granted.

## BACKGROUND

Plaintiff Xcentric Ventures, LLC is an Arizona company that operates the website www.ripoffreport.com ("Ripoff Report"). As its name suggests, Ripoff Report is an online forum where users can read and post messages about businesses that purportedly have "ripped off" consumers in some manner. Edward Magedson is the manager of Xcentric and the editor of Ripoff Report.

Defendant Asia Economic Institute, LLC ("AEI") is a California company that

1    published current news and events online from the year 2000 until June 2009.

2    **I.      The 2010 Lawsuit**

3               On January 27, 2010, AEI and its principles, Raymond Mobrez and Iliana Llaneras,

4    brought an action against Xcentric in state court in California (the "California Action"),

5    asserting claims for defamation, unfair business practices, intentional and negligent

6    interference with prospective economic advantage, and RICO violations. *See Asia Economic*

7    *Institute v. Xcentric Ventures, LLC*, 2010 WL 4977054 (C.D. Cal. July 19, 2010). These

8    claims arose out of AEI's allegations that Xcentric deliberately manipulated the Ripoff

9    Report so that posts about AEI were more visible than posts about many other companies,

10   and that Xcentric requested money from AEI in exchange for giving AEI more favorable

11   treatment. *See id.* In February 2010, that action was removed to the U.S. District Court for

12   the Central District of California on the grounds of both federal question and diversity

13   jurisdiction. *See id.*; *Asia Economic Institute v. Xcentric Ventures, LLC,* 2011 WL 2469822

14   (C.D. Cal. May 4, 2011). On July 19, 2010, the District Court granted Xcentric's motion for

15   summary judgment as to the RICO claims. *See Asia Economic Institute*, 2010 WL 4977054.

16   On May 4, 2011, the District Court granted Xcentric's motion for summary judgment as to

17   the remaining claims. *Asia Economic Institute*, 2011 WL 2469822. AEI, Mobrez, and

18   Llaneras were initially represented by just one attorney, Daniel F. Blackert, but from April

19   19, 2010 until the conclusion of the case were also represented by a second attorney, Lisa J.

20   Borodkin.

21   **II.     The Current Lawsuit**

22              On July 18, 2011, Xcentric filed a Complaint in this Court, bringing claims for

23   malicious prosecution and aiding and abetting tortious conduct against AEI, Borodkin,

24   Mobrez, Llaneras, and Blackert. (Doc. 1). On September 30, 2011, Defendants AEI, Mobrez,

25   and Llaneras, who at that time were represented by counsel, filed a motion to dismiss for lack

26   of personal jurisdiction (Doc. 18), and a motion to change venue (Doc. 17), both of which

27   were joined by Borodkin. Borodkin also filed a motion for a more definite statement (Doc.

28   35), and a motion to strike several paragraphs of the Complaint (Doc. 36). On March 1, 2012,

the Court denied the motion to dismiss and the motion to change venue, and granted in part and denied in part the motion for a more definite statement and the motion to strike. (Doc. 52).

On March 16, 2012, to comply with the Court's order that it provide a more definite statement, Plaintiff filed its First Amended Complaint. (Doc. 55). On April 13, the Court granted a motion filed by the attorney for AEI, Llaneras, and Mobrez to withdraw as counsel. (Doc 67). On May 23, the Clerk of Court entered default against AEI, Llaneras, and Mobrez on Plaintiff's motion because they failed to file an Answer to the Amended Complaint. (Doc. 87). Defendant Borodkin now moves to strike the Amended Complaint or in the alternative for a second more definite statement. (Doc. 64). Defendants Mobrez and Llaneras, who are no longer represented by counsel, move to set aside the entry of default against them. (Doc. 94).

**DISCUSSION**

**I.     Borodkin's Motion to Strike the Amended Complaint or for a Second More Definite Statement**

      **A.     Timeliness**

Borodkin first contends that the Court should strike the Amended Complaint because it was not timely. (Doc. 64). On March 1, 2012, the Court ordered that Plaintiff provide a more definite statement regarding Defendant Borodkin's alleged improper purpose in continuing the California Action. (Doc. 52). To comply with this Order, on March 16, 2012 Plaintiff filed a First Amended Complaint. (Doc. 55). Federal Rule of Civil Procedure 12(e), however, provides that "[i]f the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order . . . the court *may* strike the pleading or issue any other appropriate order." FED. R. CIV. P. 12(e) (emphasis added). Plaintiff's First Amended Complaint was filed one day after the 14-day deadline established by Rule 12(e). *See* Fed. R. Civ. P. 6(a)(1) (stating that in computing time periods that Court should "exclude the day of the event that triggers the period" but "include the last day of the period").

As stated above, the Federal Rules leave to the Court's discretion whether to strike

the pleading. FED. R. CIV. P. 12(e). *See e.g., Laskey v. Microsoft Corp.*, C 08-01465 WHA, 2008 WL 4104518, at *2 (N.D. Cal. Sept. 2, 2008) (electing not to terminate Plaintiff's action even though he failed to comply with the Court's order to file a more definite statement, and giving him ten more days to file a more definite pleading). Plaintiff filed its amended pleading just one day after the deadline established by the Federal Rules, and Borodkin moved for, and was granted, an extension of time in which to respond to this pleading. (*See* Docs. 55, 61, 62). Plaintiff does not therefore appear to be unfairly prejudiced by the Court declining to strike Plaintiff's First Amended Complaint on timeliness grounds.

**B.    Definiteness**

Borodkin also contends that in Plaintiff's amended pleading, it failed to provide the further detail ordered by the Court, and that the Court should therefore either strike the amended pleading or order that Plaintiff file a second more definite statement. (Doc. 64 at 2).

"If a defendant needs additional information to enable him to answer or prepare for trial the procedure provided by the Federal Rules is a motion for a more definite statement." *Bowles v. Glick Bros. Lumber Co.*, 146 F.2d 566, 568 (9th Cir. 1945). Under Federal Rule of Civil Procedure 12(e), if "a complaint is 'so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading,' the defendant may move for an order requiring a more definite statement by pointing out 'the defects complained of and the details desired." *Bautista v. County of L.A.*, 216 F.3d 837, 843 n.1 (9th Cir. 2000). Rule 12(e) motions are "'ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail, and if the requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim, such motion is inappropriate." *Castillo v. Norton*, 219 F.R.D. 155, 163 (D. Ariz. 2003) (quoting *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 414–15 (D. Or. 2002)).

In its March 1, 2012 Order, the Court stated that Plaintiff must provide a more definite statement regarding Defendant Borodkin's alleged improper purpose in continuing the California Action. (Doc. 52). Under California law, to establish liability for malicious

prosecution, a plaintiff "must plead . . . actual ill will or some improper ulterior motive." *Downey Venture v. LMI Ins. Co.* 66 Cal. App. 4th 478, 494 (1998). (emphasis in original omitted). An improper ulterior motive held by a client "is not imputable to counsel." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.,* 515 F.3d 1019, 1032–33 (9th Cir. 2008). Accordingly, where a plaintiff brings claims against both client and counsel in a malicious prosecution action, the plaintiff must separately plead and prove an improper purpose on each defendant's behalf. *See Zeavin v. Lee*, 136 Cal. App. 3d 766, 772 (1982) ("Appellants' unstated but assumed argument of joint liability of attorney and client for the conduct of each other where both are joined as defendants in a malicious prosecution action [ ] lacks merit.").

In its initial complaint, Plaintiff ascribed several, specific, improper purposes to AEI, Mobrez, Llaneras, and Blackert. (*See* Doc. 1, ¶ 72). Plaintiff did not, however, make specific allegations regarding Borodkin's improper purposes, stating only that "[t]he actions of Defendant AEI, MOBREZ, LLANERAS, BLACKERT and BORODKIN were willful, malicious, and the product of an evil hand guided by an evil mind." (Doc. 1, ¶ 84). The Court held that such a conclusory statement did not sufficiently "enable [Borodkin] to answer or prepare for trial," *Bowles v. Glick Bros. Lumber Co.*, 146 F.2d 566, 568 (9th Cir. 1945), and ordered that Plaintiff  "provide a more definite statement regarding Borodkin's alleged improper motives and purposes." (Doc. 52 at 19).

Plaintiff's amended complaint includes the following additional allegation regarding Borodkin's and Blackert's motives and purposes:

82.     Defendants BORODKIN and BLACKERT continued the Asia Litigation solely for improper purposes. Specifically, the action was continued solely for nonlegitimate reasons including, but not limited to, the following:

a.      To pressure Xcentric to remove material from the Ripoff Report website, without any legal basis for doing so, rather than incurring significant legal fees defending a frivolous case;

b.      To use the threat of continued litigation as improper leverage to coerce Xcentric into not pursuing claims against BORODKIN or BLACKERT for their past conduct in the Asia Litigation;

c.      To improperly attain unwarranted publicity for their own careers;

d.      To force Xcentric to change the manner in which it conducts business by falsely accusing Xcentric of wrongful conduct despite knowing that Xcentric's conduct was, and is, entirely lawful;

e.      To provide unwarranted support to critics of the Ripoff Report website;

f.      To stifle the First Amendment rights of XCENTRIC and users of the Ripoff Report website;

g.      To cause XCENTRIC to divert its resources to defending a frivolous case rather than using those resources to improve the Ripoff Report site;

h.      To intimidate XCENTRIC into limiting the public's ability to use the Ripoff Report website to publish truthful information and access truthful information published by others;

i.      To wrongfully investigate Magedson's personal life and to obtain and publicly release personal, private, confidential and/or embarrassing information solely for the purpose of embarrassment and harassment.

(Doc. 55, ¶ 82).

Borodkin contends that these new allegations are ambiguous because they do not distinguish which motives were held by Borodkin and which were held by her co-defendant, Blackert. (Doc. 64 at 5–6). As stated by Plaintiff, however, there is no need for Xcentric to distinguish between Borodkin and Blackert's alleged improper purposes "because Xcentric does not contend that [ ] Ms. Borodkin and Mr. Blackert acted separately; rather Xcentric contends that both lawyers acted together and they both shared the same malicious intent." (Doc. 65 at 2; Doc. 55, ¶ 82).

Borodkin further contends that Plaintiff's new theories of malice "consist only of motives attributed to Ms. Borodkin and Mr. Blackert's alleged states of mind and do not furnish any facts of actions taken by Ms. Borodkin or Mr. Blackert that would allow a fact-finder to arrive at these conclusions." (Doc. 64 at 6). However, Federal Rule of Civil Procedure 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's

mind may be alleged generally." *See also Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) ("[A] complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Accordingly, at this stage of the litigation, Plaintiff need not identify a specific factual basis for Borodkin's alleged state of mind. It is sufficient that Plaintiff has distinguished between Borodkin's alleged improper motives for bringing the California Action and her clients' motives for bringing the Action.

## III.  Llaneras and Mobrez's Motion to Set Aside Entry of Default

The Court may set aside the entry of default if good cause is shown. FED. R. CIV. P. 55(c). In determining whether good cause has been shown, the Court considers: 1) whether there was culpable conduct on the part of the defendant; 2) whether any meritorious defenses are available, and 3) whether there is any prejudice to the plaintiff. *See TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). "[T]he party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment." *Id.* This burden, however, is not "extraordinarily heavy." *Id.* at 700.

The Court first considers whether there was "culpable" conduct on the part of defendants. *Id.* at 696. In this case, Llaneras and Mobrez's failure to respond to the action does not appear to have been culpable. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Knoebber,* 344 F.3d at 697. Intentional conduct, in this context, must rise to the level of conduct which is willful, deliberate, or done in bad faith. *Id.* at 697–98. Llaneras and Mobrez state that they were unaware that they needed to answer Plaintiff's Complaint because they "are not Attorneys by profession [and are not] aware of all the Court Rules." (Doc. 96 at 2). The Court warns Llaneras and Mobrez that the fact that they are not attorneys does not excuse them from familiarizing themselves with and following both the Federal Rules of Civil Procedure and the Court's Local Rules. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) ("Pro se litigants must follow the same rules of procedure that govern other litigants."). Nonetheless, their failure to answer the Complaint was apparently unintentional,

1 and this factor therefore weighs in favor of setting aside the default judgment.

2 Second, the Court considers whether Llaneras and Mobrez have an available

3 "meritorious defense." *Knoebber,* 344 F.3d at 697. The Court need not conclude that

4 Defendant will prevail on the alleged defense to determine that this factor weighs in favor

5 of setting aside default. *See Apache Nitrogen Products, Inc. v. Harbor Insurance Co.*, 145

6 F.D.R. 674, 682 (D. Ariz. 1993).  Instead, the Court need only find that after a trial on the

7 merits, the alleged defense may cause a different result than default.  *Id.* Llaneras and

8 Mobrez contend that the allegations made against them by Plaintiffs in the Amended

9 Complaint are false. (Doc. 96 at 4). This constitutes a meritorious defense.

10 Lastly, the Court considers whether setting aside the entry of default would be

11 prejudicial to Plaintiff. "To be prejudicial, the setting aside of a judgment must result in

12 greater harm than simply delaying resolution of the case. Rather, the standard is whether

13 [Plaintiff's] ability to pursue [its] claim will be hindered." *Knoebber*, 244 F.3d at 701

14 (internal quotation omitted). Plaintiff contends that should the Court set aside the entry of

15 default Llaneras and Mobrez may be able to "flee or dispose of assets." (Doc. 95 at 5).

16 Plaintiff, however, has produced no evidence showing that Llaneras and Mobrez are likely

17 to do so. In short, the *Knoebber* factors weigh in favor of setting aside the entry of judgment.

18 **CONCLUSION**

19 Plaintiff need not provide a second more definite statement and its first more

20 definite statement will not be stricken. The Court will set aside the entry of default against

21 Defendants Llaneras and Mobrez.

22 **IT IS THEREFORE ORDERED** that Defendant Borodkin's Motion to Strike or

23 for a More Definite Statement (Doc. 64) is **DENIED**.

24 **IT IS FURTHER ORDERED** that Defendants Llaneras and Mobrez's Motion to

25 Set Aside Default (Doc. 94) is **GRANTED**.

26

27

28

1     The Clerk of Court shall revise its May 23, 2012 Order (Doc. 87) to set aside the

2  entry of default against Raymond Mobrez and Iliana Llaneras, but shall not set aside the

3  entry of default against Asia Economic Institute, LLC.

4     DATED this 17th day of July, 2012.

5

6     *A. Murray Snow*

7     G. Murray Snow
      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28