1
2

Iverson, Yoakum, Papiano & Hatch
633 West Fifth Street, Suite 6400
Los Angeles, CA  90071
TELEPHONE:  213.624.7444

3   Lisa J. Borodkin (CA Bar #196412)
    lborodkin@iyph.com
4   *Admitted Pro Hac Vice*

5
6
7

Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One, Two North Central Ave.
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

8   John S. Craiger (#021731)
    John.Craiger@quarles.com
9   David E. Funkhouser III (#022449)
    David.Funkhouser@quarles.com

10  Attorneys for Defendant
11  Lisa Jean Borodkin

12          IN THE UNITED STATES DISTRICT COURT

13              FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 14 XCENTRIC VENTURES, LLC, an Arizona limited liability company, | **No. 2:11-CV-01426-PHX-GMS** |
| 15 | |
| 16 Plaintiff, | **DEFENDANT LISA JEAN BORODKIN'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |
| 17 v. | |
| 18 LISA JEAN BORODKIN and JOHN DOE BORODKIN, husband and wife; | (Assigned to the Honorable G. Murray Snow) |
| 19 RAYMOND MOBREZ and ILIANA LLANERAS, husband and wife; DANIEL | (Oral Argument Requested) |
| 20 BLACKERT and JANE DOE BLACKERT, husband and wife; ASIA ECONOMIC | |
| 21 INSTITUTE, LLC, a California limited liability company; DOES 1-10, inclusive, | |
| 22 Defendants. | |

23

24          Pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent power,

25  Defendant Lisa Jean Borodkin moves this Court to sanction Plaintiff Xcentric Ventures,

26  L.L.C., its manager, Edward Magedson, and its counsel, David Scott Gingras, for signing,

27  verifying and filing the Verified Complaint and Verified First Amended Complaint

28  (collectively, the "Complaint") in this action asserting frivolous claims against her for an

QB\145800.00002\17621190.1                    -1-

improper purpose.  This Motion is supported by the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Lisa Jean Borodkin and the entire record in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION.

Defendant Lisa Jean Borodkin ("Borodkin") was one of the attorneys who represented several plaintiffs in a case against Xcentric Ventures, L.L.C. ("Xcentric") and Ed Magedson ("Magedson") in the Central District of California.  Borodkin joined the California case already substantially in progress, and was involved in litigating the RICO/attempted extortion claim complained of in the Complaint for approximately three (3) months out of the case's eighteen (18) month history.  The rest of Borodkin's involvement with the case focused on other claims not complained of in the Complaint. The California case was eventually resolved via two separate summary judgment orders in favor of the defendants.

Xcentric now has sued Ms. Borodkin in Arizona, on vague, frivolous claims, for a patently improper purpose – to extract from Ms. Borodkin information she does not have about things an unrelated third party "did wrong." Plaintiff, through its manager, Magedson, has telegraphed to Ms. Borodkin, in no uncertain terms, it will not dismiss the Complaint unless she provides information on things this unrelated third party "did wrong." Moreover, the Complaint's factual allegations are contradicted by prior sworn statements of Xcentric's counsel and Magedson in the California case.  Yet even with this information, Xcentric and its counsel refuse to dismiss the Complaint.

Pursuant to Federal Rule of Civil Procedure 11, Xcentric, its counsel, and Magedson should be sanctioned for their outrageous conduct.  Moreover, the Complaint against Ms. Borodkin should be dismissed, with prejudice, and Plaintiff should be ordered to pay Ms. Borodkin's attorneys' fees and costs incurred herein.

## II.    FACTUAL BACKGROUND.

### A.    The Plaintiff And Its Principals.

Xcentric operates a for-profit website known as "Ripoff Report." Magedson is Ripoff Report's manager.  Xcentric's counsel in this matter, David Gingras ("Gingras"), is both General Counsel for Xcentric and was also one of the attorneys of record for Xcentric in the California case.

Ripoff Report solicits and publishes negative reviews of businesses and people. Ripoff Report earns revenues from services including the "Corporate Advocacy Program" ("CAP").[1] Members of CAP receive preferential treatment.[2]  For example, negative reports about CAP members are less prominent in internet searches.[3]  In order to join CAP, a company must pay a fee to Xcentric.[4]  CAP costs an initial flat fee of $7,500, as well as a monthly fee.[5]

The Florida Court of Appeals described the CAP as follows:

> Xcentric describes a 'service' it provides to people and entities who wish to challenge false postings on Xcentric's website. This 'service' is called the 'Corporate Advocacy Program' by Xcentric. Individuals or businesses who believe they have been defamed by a posting on Xcentric's website must, according to the amicus brief filed in this case; 'pay  a tidy sum to be investigated by Xcentric's management.' Moreover, '[i]n addition to a steep upfront charge, the business is required to make periodic payments to keep its status in the program.'

*See Giordano v. Romeo*, 76 So. 3d 1100, 1102 and fn.1 (Fla. Dist. Ct. App. 3d Dist. 2011)

### B.    The California Action.

Xcentric, Magedson and "Doe Defendants" were defendants in an action litigated in the Central District of California, styled as Asia Economic Institute, L.L.C. et al. v.

---

[1] *See Asia Econ. Inst. v. Xcentric Ventures, LLC*, 2010 U.S. Dist. LEXIS 133370 (C.D. Cal. July 19, 2010) (the "July 19, 2010 Order") at *11.

[2] *See Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 U.S. Dist. LEXIS 145380 (C.D. Cal. May 4, 2011) (the "May 4, 2011 Order") at *8.

[3] *See id.*

[4] *See id.*

[5] *See* July 19, 2010 Order, at *13.

1  <u>Xcentric Ventures, L.L.C. et al.</u>, C.D.Cal. No. 10-cv-1360 ("the California Action").  The

2  California Action had been commenced by defendant Daniel F. Blackert ("Blackert") on

3  January 27, 2010 on behalf of Asia Economic Institute, L.L.C. ("AEI"), Raymond Mobrez

4  and Iliana Llaneras (collectively with AEI, the "AEI Parties").  It is undisputed that

5  Borodkin had no role in preparing or signing the original complaint.  *See* Compl. ¶ 31.[6]

6  The initial complaint filed by Blackert contained numerous claims under both state

7  and federal law.  *See* Compl. ¶29 and Ex. A thereto.  Xcentric's first response was to file

8  an Anti-SLAPP motion under California Civil Code § 425.16.  It claimed, unsuccessfully,

9  that the California Action was filed to chill Ripoff Report's First Amendment rights.  On

10  April 19, 2010, the Court denied Xcentric's first anti-SLAPP motion in a 33-page

11  opinion.[7]  It found that Ripoff Report complaints were not a matter of public concern.[8]

12  At the April 19, 2010 hearing, the Court bifurcated the action and set an early trial

13  on one of the claims in the initial complaint - the RICO claim predicated on attempted

14  extortion.  *See* Compl. ¶32 and Ex. B thereto.  After bifurcating the RICO/attempted

15  extortion claim, the Court ordered the parties to submit declarations describing all

16  meetings with each other.[9] *See id.* Thereafter, on May 3, 2010, Blackert filed declarations

17  for Mobrez and Llaneras per the Court's Order. *See Compl.* ¶ 33 and Exs. C-D thereto.  On

18  May 11, 2010, Gingras also filed a declaration for Magedson per the Court's Order.[10]

19  On May 7, 2010, Gingras took the deposition of Mobrez.  After eliciting testimony,

20  Gingras produced and played unauthenticated recordings of conversations that he alleged

21  were all the telephone conversations between Mobrez and Magedson.[11]  It is undisputed

22

---

23  [6] Citations to "Compl. _¶" are to the Complaint in this action.
   [7] *See* AEI v. Xcentric, C.D. Cal No. 10-cv-1360 DN-23, available at:
24  https://ecf.cacd.uscourts.gov/doc1/031110016999 (the "Apr. 20, 2010 Order").
   [8] *See id*. Xcentric and Magedson later filed a second unsuccessful anti-SLAPP motion
25  towards the end of the case. *See* May 4, 2011 Order, at *33.
   [9] It is undisputed that Ms. Borodkin only became involved in the California Action after
26  April 19, 2010, long after the proceeding had been initiated. *See* Compl. ¶ 31.
   [10] *See* AEI v. Xcentric, C.D. Cal No. 10-cv-1360 DN-31 (May 11, 2010), available at
27  https://ecf.cacd.uscourts.gov/doc1/031110147370.
   [11] Borodkin was not present for this portion of the deposition.
28

that the recordings were made without Mobrez' knowledge.  *See* Compl. ¶41.  The unauthenticated recordings were inconsistent with Mobrez **and** Magedson's prior declarations.

On May 10, 2010, Blackert and Ms. Borodkin consulted the California State Bar Ethics Hotline and read the authorities recommended by the Ethics Hotline, particularly California State Bar Formal Ethics Opinion No. 1983-74. *See* Declaration of Lisa J. Borodkin ("Borodkin Decl.") attached hereto as Exhibit A, at ¶¶2-3; Request for Judicial Notice ("RJN"), filed concurrently herewith, at Exhibit "1". After counseling Mobrez and Llaneras, and consistent with California Ethics Opinion No 1983-74, defendants Blackert and Borodkin honored the clients' informed decision to continue with the case after taking corrective measures. As such, Blackert filed corrected declarations for both Mobrez and Llaneras on May 20, 2010.  Compl. ¶49 and Exs F-G thereto.  Mobrez and Llaneras did not refer to the corrected testimony and did not rely on evidence of oral threats in the case thereafter. *See Asia Econ. Inst. v. Xcentric Ventures, LLC*, 2010 U.S. Dist. LEXIS 133370 (C.D. Cal. July 19, 2010) at *46.

Importantly, for purposes of this Motion, Gingras, too, had to correct the testimony of his client.  On May 11, 2010 Gingras filed a new declaration for Magedson, recanting Magedson's false statements in declarations filed on both March 22, 2010 and April 5, 2010, alleging that Mobrez had "threatened" him in a telephone conversation. *See* RJN, at Ex. 2.

Notwithstanding the foregoing, Gingras insisted repeatedly that Blackert and Ms. Borodkin faced serious ethical consequences with the California State Bar by continuing to represent the AEI Parties after taking corrective action.  *See* Compl. ¶44 and Ex. E. However, in a letter dated May 11, 2010, Gingras states that Xcentric would not agree to settle the case unless the AEI Parties agreed to the following terms:

> The first point is that [the AEI Parties] would need to retract their prior testimony and admit that they were never asked for money, etc., and immediately agree to the dismissal of their lawsuit with prejudice.

> The second point is that your clients would agree to pay all of the attorney's fees and costs incurred by Xcentric to date which we believe are probably less than $25,000 (though this number is increasing with each passing day).
>
> The third point is that your clients would provide a full, complete, and truthful explanation of each and every third party who aided, solicited, and/or encouraged them to make their false extortion claims in this case.

*See* Compl. ¶44 and Ex. E thereto at 4.  Blackert and Ms. Borodkin were not authorized to agree to a settlement that required the AEI Parties to pay all Xcentric's fees. Borodkin Decl. ¶4.

On May 24, 2010, Xcentric moved for summary judgment on the RICO claim based on attempted extortion.[12] Gingras attempted to offer the recordings that were purportedly all the conversations between Mobrez and Magedson, in support of the defendants' first motion for summary judgment.[13]  In the July 19, 2010 Order, the Court excluded the recordings from evidence. RJN, Ex. 3, at 21. The Court found that the recordings had been obtained in violation of California's wiretapping law, Penal Code Section 632(a):

> [I]t is undisputed that Mobrez was unaware that his calls with Magedson were being recorded and that Mobrez did not give consent . . . some of the recordings that Defendants seek to admit were obtained in violation of California Penal Code § 632(a).

RJN, Ex. 3, at 21:25-22:4. The Court also found that the recordings "may not be accurate," finding:

> *Defendants have refused to reveal the name of the third party vendor to the Plaintiffs despite the Plaintiffs' reasonable request* . . . and have not offered any declarations from the third party vendor or any information about the method of recording, the equipment used, or how the recordings are kept in the ordinary course of the vendor's business.. . .Further, the foundational shortcomings are especially problematic here because Plaintiffs have

---

[12] Xcentric also moved for summary judgment on the other claims. The Court found the motion "inappropriate given the Court's prior Order bifurcating the RICO/extortion claims." *See* July 19, 2010 Order at *26.

[13] *See id.* at *29.

*presented facts indicating that the recordings may not be accurate or trustworthy.* Specifically, Mobrez's phone records indicate the duration of each of the calls made from Mobrez to Magedson in March and April 2009. . . . In most instances, the duration of the calls is considerably longer than the length of the recorded conversation submitted to the Court.

RJN, Ex. 3, at 26:9-22 (emphasis added).  Moreover, the Court found that California law would apply in a choice-of-law analysis:

[I]f the Court were to engage in a choice-of-law analysis between Arizona and California law, the Court undoubtedly would apply California law, given California's strong public interest in protecting the confidentiality of certain communications.

RJN, Ex. 3, at 22:4-9.

In addition, Gingras and Magedson maintained during the California Action that they believed Blackert and Ms. Borodkin were <u>not</u> aware that Mobrez' and Llaneras' May 3, 2010 declarations were purportedly inaccurate. On June 24, 2010, Gingras filed a declaration in support of Xcentric's motion for summary judgment explaining that he was trying to "warn" Blackert of potential ethics pitfalls.  To show this, Gingras quoted from his own statement at the May 7, 2010 deposition of Mobrez:

GINGRAS:  I want – your [Mobrez's] lawyer has certain obligations under his duties to the State Bar and to our court, and I do not want to put him in a position, *assuming, as I hope, that he is an innocent victim of your conduct and your crimes*, I do not want to put him in a position where he will lose his license if he continues to represent you knowing, as he knows now, that you have committed perjury in this case.

RJN, Ex. 4, at 4:19-27 (emphasis added).  Gingras reiterated this position in his May 11, 2010 letter to Blackert and Ms. Borodkin, when he stated: "*Of course, as I have already explained to Dan, my assumption thus far has been that both of you have been unaware of the truth.*" Compl. ¶44 and Ex. E thereto at 5 (emphasis added).

Likewise, Magedson testified at his June 8, 2010 deposition that he "assumed" Blackert and Ms. Borodkin "weren't aware" of lies against him:

Q:   Why do you think that?

1
2
3
4
5

> MAGEDSON:  Because people who I'm sure you've already reached out to and that have been mentioned are people who are directly connected, and all have helped other people to perform DDoS attacks, gotten people to try to -- *like Mr. Mobrez, to lie, which I'll assume, as nice as you are -- that I think the two of you's [Borodkin and Blackert] are nice people, that you're probably -- I would assume you weren't aware of --* I don't know. I don't want to really just say anymore.

6    *See* Borodkin Decl. ¶5, Ex.1 at 72:19-73:3 (emphasis added).

7    From May 20, 2010 to its conclusion in July 2011, Blackert and Ms. Borodkin

8    litigated the California Action without referring to the corrected testimony.  The RICO

9    claim predicated on attempted extortion was dismissed on July 19, 2010.[14]   The RICO

10   Claim based on wire fraud was voluntarily dismissed on September 20, 2010.[15] The rest of

11   the case concerned claims for unfair competition, tortious interference with economic

12   advantage, fraud, deceit, defamation,[16] false light and injunction.

13   However, Xcentric kept trying to revive the issue of the recordings. Xcentric made

14   two unsuccessful Rule 11 motions, one of which claimed, falsely, that:

15
16
17

> *[I]t was proven that the individual Plaintiffs (Mr. Mobrez and Ms. Llaneras) committed perjury* in this case by manufacturing and presenting sworn false testimony accusing Mr. Magedson of demanding $5,000 in order to make negative information disappear from the Rip-Off Report website.[17]

18   Of course, no "perjury" was ever "proven."   As explained above, the Court had

19   commented that the recordings violated California's Penal Code and that "*may not be*

20   *accurate or trustworthy*." *See* RJN, Ex. 3, at 21, 26 (emphasis added). The Court denied

21   all of Xcentric's Rule 11 Motions, as well as Xcentric's second unsuccessful anti-SLAPP

22   motion.  *See* RJN, Ex. 5, at 12-14.

23
24

25   [14] *See* July 19, 2010 Order at *79.
26   [15] AEI v. Xcentric, AEI v. Xcentric, C.D. Cal No. 10-cv-1360   DN-144, available at https://ecf.cacd.uscourts.gov/doc1/031110926415 (the "Sept. 20, 2010 Order").
     [16] The defamation claims were asserted primarily against "Doe" defendants."
27   [17] AEI v. Xcentric, AEI v. Xcentric, C.D. Cal No. 10-cv-1360  DN-135 at 2:12-15, available at https://ecf.cacd.uscourts.gov/doc1/031110823447 (the "Sept. 3, 2010" Order).
28

C.      **The Complaint.**

On July 18, 2011, Gingras signed and filed the Complaint in the District of

Arizona. The Complaint alleged, in a conclusory fashion:

- "[Before filing the California Action] BLACKERT knew that they could not legitimately present [a RICO/extortion] theory because at no time was AEI actually extorted by XCENTRIC or Magedson." Compl. ¶ 24.

- "At the time the [California Action] was commenced, Defendants AEI, MOBREZ, LLANERAS and BLACKERT each knew the action was factually groundless in particular as to the allegations of RICO/extortion[.]" Compl. ¶ 70.

- That Defendants [including Borodkin] "engaged in . . . multiple/repeated violations of the California Rules of Professional Conduct including, but not limited to, Rule 3-200 (prohibiting a lawyer from bringing an action or asserting any position in litigation without probable cause and for the purpose of harassing or maliciously injuring any person); Rule 3-210 (prohibiting a lawyer from advising a client to violate the law); and Rule 5-200 (B) (prohibiting a lawyer from misleading a court by making a false statement of fact)." Compl. ¶ 2.

- That Defendants (including Ms. Borodkin), and each of them, wrongfully continued the [California Action] without probable cause and knowing that the action was brought primarily for a purpose other than that of securing the proper adjudication of the claims in which the proceedings were based. Compl. ¶ 82.

Moreover, and despite the fact that the California Action did not actually contain a claim

for extortion (only RICO predicated on a pattern of attempted extortion) the Complaint

further alleged:

- "As of no later than May 7, 2010, Defendants BORODKIN and BLACKERT knew, with absolute certainty, that Defendants MOBREZ and LLANERAS had committed perjury and that their claims of extortion were totally fabricated and false." Compl. ¶ 77.

And, although the AEI Parties did not refer to any phone calls between Mobrez and

Magedson after May 7, 2010, the Complaint further alleged in a conclusory fashion:

- "MOBREZ further perjured himself [in his May 20, 2010 declaration] by testifying for the first time, 'In addition, there were a number of incoming calls to me from Ripoff Report.'" Compl. ¶ 50

- "Upon information and belief, Defendants BORODKIN and BLACKERT assisted Defendant MOBREZ with the creation of his "Corrected declaration" and in doing so, BORODKIN and BLACKERT intentionally suborned perjury from MOBREZ." Compl. ¶ 51.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    The Demand.**

After filing the Complaint, on August 10, 2011, Magedson sent Ms. Borodkin an email making outrageous and improper demands, using the Complaint as leverage.  That email stated, in pertinent part, that:

> To be clear,. *NO MONEY WOULD BE DEDUCTED for any information on Brewington*. Not a dime. The only benefit to you would be, if you do provide information to us that you know would help us with Brewingtons other alleged activities to hurt Ripoff Report and myself.. the only thing that would get you is the following.
>
> I would consider settling with you out of court, but, I would require you to stipulate to a judgment for $100,000 as well..
>
> *Benefit to you, you would not have to go thru a long court battle*. This amount will be much less than what I will be suing for. This is one court battle I will be looking forward to. I will be on a mission to get courts to punish lawyers like you and Blackert. What you did is disgusting, despicable and unforgivable. Courts need to start coming down on lawyers like you as well as prosecutors for misconduct. . . .
>
> What I am offering you will get you to avoid a long drawn out legal battle and will only make you look worse than you already do. You can also start focusing on looking for a job instead of a legal battle. *In order to get me to settle out of court with you, you would also need to provide info on things you know John F Brewington did wrong*. I know you can help in this area.
>
> You would also need to start, immediately paying on that judgment, $10,000 down and $5,000 a month. If not, I will see you in court.

Borodkin Dec. ¶6, Ex. 2 (emphasis added).

Moreover, Gingras sent Ms. Borodkin an email on August 8, 2011 stating that evidence about Brewington might "provide a basis for resolving Ed's claims against you." Borodkin Dec., at Ex. 2.  John Brewington is an unrelated third party who was neither a party nor a witness in the California Action.

On March 1, 2012, this Court granted in part Ms. Borodkin's motion to strike and motion for a more definite statement, striking paragraph 2 of the Complaint and ordering Xcentric to "provide a more definite statement regarding Borodkin's alleged improper motives and purposes." *See* Doc. 52 at 19:12-14; 20:16.

1    On March 16, 2012, Xcentric filed a Verified Amended Complaint. The Verified

2    First Amended Complaint did not retract any of the allegations in the Complaint except

3    for Paragraph 2, which had been stricken by the Court. The Verified First Amended

4    Complaint pleaded Ms. Borodkin's purported malice in wholly conclusory terms,

5    collectively with Blackert's and without any new accompanying factual allegations to

6    support them.

7    Based on the foregoing, this Motion follows.

8    ## III.  ARGUMENT.

9    ### A.  The Standards Imposed By Rule 11.

10   By signing the Complaint, Gingras certified for himself and on behalf of Xcentric

11   that to the best of their "knowledge, information, and belief, formed after an inquiry

12   reasonable under the circumstances" that:

13
      (1) [The Complaint is] not being presented for any improper
14   purpose, such as to harass or to cause unnecessary delay or needless
     increase in the cost of litigation;

15
      (2) the claims, defenses, and other legal contentions therein are
16   warranted by existing law...; [and]

17    (3) the allegations and other factual contentions have
     evidentiary support or, if specifically so identified, are likely to have
18   evidentiary support after reasonable opportunity for further
     investigation or discovery ... .

19   Fed. R. Civ. Proc. 11(b).  And, by signing the verification, Magedson subjects himself to

20   sanctions also. *See Business Guides v. Chromatic Communications Enters.*, 892 F.2d 802,

21   809 (9th Cir. 1989). Sanctions are especially appropriate when the party is sophisticated,

22   representing itself as having extensive litigation experience. *See id.* at 812.

23   Sanctions under Rule 11 are appropriate in either of the following instances:

24   (a) "when a pleading is frivolous, i.e., both baseless and made without a reasonable and

25   competent inquiry"; or (b) when a pleading is filed for an improper purpose. *See*

26   *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991) (*en banc*); *In*

27   *re Pozsga*, 158 F.R.D. 435, 437 (D. Ariz. 1994).  Determining if a pleading is frivolous

28

1   does not depend on a lawyer's subjective belief, but rather is judged by an objective

2   standard of whether a "competent attorney would believe it was well-grounded in fact and

3   warranted by law." *Adriana Intel Corp. v. Thoeren,* 913 F.2d 1406, 1415 (9th Cir. 1990);

4   *see also Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993); *Pozsga*, 158 F.R.D.

5   at 437.

6        Here, the Complaint is **both** frivolous **and** has been filed for an improper purpose.

7   Accordingly, the Court should impose sanctions against Xcentric, its counsel, and

8   Magedson, pursuant to Rule 11.

9        **B.    Plaintiff's Complaint Is Frivolous.**

10       Plaintiff's Complaint asserts two claims against Ms. Borodkin: (1) "Wrongful

11   Continuation of Civil Proceedings"; and (2) Aiding and Abetting Tortious Conduct.

12       Here, Plaintiff has not pled, nor does Plaintiff (or Plaintiff's counsel) have any

13   objectively reasonable reason to believe, that Ms. Borodkin's representation in the

14   California Action was "motivated by malice" or not "primarily to help the client obtain a

15   proper adjudication of the client's claim."

16       The California Action alleged, among other things, that Ripoff Report's activities

17   constituted unfair and deceptive trade practices, fraud and racketeering.   Until July 19,

18   2010, the California Action included causes of action under the RICO statutes, 18 U.S.C.

19   1962(c)-(d) predicated on attempted extortion.[18]

20       Indeed, a similar claim of RICO against Ripoff Report predicated on threatened

21   extortion had survived a motion to dismiss in *Hy Cite Corp. v. Badbusinessbureau*, 418 F.

22   Supp. 2d 1142, 1150 (D. Ariz. 2005). There, the Court had written:

23       Defendants operate a website. Plaintiff alleges that Defendants create and solicit
         false and defamatory complaints against businesses, but will cease this conduct for
24       a $50,000 fee and $ 1,500 monthly retainer. Remedying the publication of false
         and defamatory complaints, which Defendants allegedly created and solicited, does
25       not give Defendants the right to collect fees. . . . Plaintiff has properly alleged
         threatened extortion.
26

27       [18] Contrary to the allegations, the California Action had no claim for "extortion" and did not
         claim that Magedson "extorted" the AEI Parties.  *See* Compl. ¶29 Ex. A, at ¶63.

28

1   418 F. Supp. 2d 1142.  *Hy Cite* was eventually dismissed by stipulation.[19]  Additionally,

2   in California, the recent case, *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135 (C.D.

3   Cal. 2009), recognized a private cause of action for attempted extortion under Penal Code

4   § 523 even if no money changed hands. *See id.* at 1136. Thus, Ms. Borodkin had no

5   improper motives, and was merely litigating claims for her clients that were supported by

6   California law.

7        In addition, Xcentric cannot show that Ms. Borodkin did anything other than

8   observe her ethical duties to follow her clients' instructions in declining to dismiss the

9   California Action upon Gingras' demand that the AEI Parties pay all of Xcentric's fees.

10  Compl. ¶44 and Ex. E at 4 thereto. Where a lawyer's client is willing to dismiss the action

11  but instructs the attorney not to agree to a settlement that requires the client to pay the

12  adversary's attorney's fees, the attorney is ethically required to follow the client's

13  instructions.  *See Smith v. Lucia*, 173 Ariz. 290, 296 (App. 1992).  In *Smith*, the Court

14  found that the adversary was more concerned with preserving a claim for malicious

15  prosecution against the lawyer than in resolving the case.  The record here would support

16  the same finding.

17        **C.      Plaintiff's Complaint Lacks Evidentiary Support.**

18        This is not a case in which a party filed a pleading with the reasonable belief that

19  the allegations would find evidentiary support once discovery was conducted.  Gingras

20  and Magedson's statements show that they already *know* that they will not find

21  evidentiary support for the allegations. On June 24, 2010, Gingras filed a declaration in

22  the California Action stating that he believed Blackert was "innocent" of the alleged

23  perjury. RJN Ex. 4 at 4:19-27.  Likewise, Magedson testified on June 8, 2010 that he did

24  not believe Blackert and Borodkin were "aware" of the alleged perjury.

25

26        _____
27        [19] *Hy Cite* had contained allegations that Ripoff Report "created and solicited reports";
     however, no case had tested RICO predicated on attempted extortion alleging solely that Ripoff
     Report "solicited" reports.
28

1      No evidence has come to light indicating that Borodkin was aware of any

2  purported perjury. Nor does the Complaint refer to any newly-discovered evidence since

3  Gingras and Magedson made these sworn statements that they believed Blackert and

4  Borodkin were "innocent" of the alleged perjury. Yet Gingras and Magedson continue to

5  use the alleged inconsistencies shown by the illegally-made recordings to harass Blackert

6  and Borodkin, even after the conclusion of the California Action.

7      Plaintiff, its counsel and Magedson therefore cannot claim absentmindedness or

8  mistake as an excuse for filing the frivolous Complaint. *See Smith v. Ricks*, 31 F.3d 1478,

9  1488 (9th Cir. 1994), *cert. denied*, 514 U.S. 1035 (1995). At a minimum, the facts

10  demonstrate that Plaintiff and its counsel filed the challenged allegations without

11  reasonable inquiry.  That, alone, is enough for sanctions under Rule 11.  *See Terran v.*

12  *Kaplan*, 989 F. Supp. 1025, 1026 (D. Ariz. 1997).

13      **D.      Plaintiff's Complaint Is Brought for an Improper Purpose.**

14      Plaintiff, Magedson and Gingras filed the Complaint for an improper purpose.

15  Magedson's August 10, 2011 communication evidences, without a doubt, that he intends

16  to use the Complaint as leverage to intimidate Ms. Borodkin into providing negative

17  information about John F. Brewington.  Indeed, Magedson wrote to Ms. Borodkin that he

18  "would not settle out of court *unless* you also provide information of what John F.

19  Brewington did wrong."  *See* Borodkin Dec. Ex. 2 (emphasis added).  This is an

20  unequivocal threat and an improper reason to refuse to settle a case.  Magedson's August

21  10, 2011 email also threatened that the lawsuit will make Ms. Borodkin look "worse than

22  you already do" and subject her to a costly "long drawn out court battle." *See id.*

23      Where litigants act willfully and in bad faith in filing a complaint, "including to

24  circumvent a court order in another case and to harass and intimidate witnesses," the

25  sanction of attorneys' fees and dismissal is appropriate. *See Hussein v. Frederick*, 2011

26  U.S. App. LEXIS 11722 (9th Cir. June 8, 2011) at *4; *see also Buster v. Greisen*, 104

27  F.3d 1186, 1190 (9th Cir. 1997) ("Buster's efforts to relitigate the prior case similarly

28

1    support a finding of harassment"); *In re Grantham Bros.*, 922 F.2d 1438, 1443 (9th Cir.

2    1991) (filer sought to harass or intimidate adversary through frivolous collateral attack of

3    prior proceeding).

4         A lawyer may not file a baseless complaint to be vindictive against counsel in a

5    prior action. *See Townsend*, 929 F.2d at 1363 ("the court inferred from the fact that the

6    allegations were frivolous and from the fact that Wilson & Reitman had been the law firm

7    which opposed Wright in the state court action that the naming of Wilson was essentially

8    vindictive.")  That is what Gingras has done here, and should therefore be sanctioned.

9    **IV.   XCENTRIC, ITS COUNSEL, AND MAGEDSON HAVE ACTED
10        EGREGIOUSLY, AND THEREFORE SHOULD BE SANCTIONED FOR
         THE ATTORNEYS' FEES THAT MS. BORODKIN HAS INCURRED AND
11        THE ACTION SHOULD BE DISMISSED.**

12        A competent attorney would not file a complaint which is contradicted by both his

13   own and his client's prior statements under oath, and use the complaint to harass and

14   coerce testimony about an unrelated third party. One federal court has already found the

15   recordings troublingly unreliable and made in violation of California's Penal Code. *See*

16   RJN, Ex. 3, at 21:25-22:4.

17        In sum, the Complaint focuses almost entirely on certain unauthenticated

18   recordings – which, the court noted were missing substantial chunks of time -- as a pretext

19   to harass Ms. Borodkin into paying Xcentric's attorney fees and intimidate her into

20   providing testimony in an unrelated matter.

21   **V.   CONCLUSION.**

22        For the foregoing reasons, Ms. Borodkin requests, pursuant to Rule 11, that the

23   Court sanction Gingras and Magedson as follows: (1) require Magedson and Gingras to

24   pay all of Ms. Borodkin's attorneys' fees, costs, and expenses associated with her defense;

25   and  (2) dismiss the action with prejudice as against Ms. Borodkin.

26

27

28

1   RESPECTFULLY SUBMITTED this 31st day of July, 2012.

2                                    IVERSON, YOAKUM, PAPIANO &
                                     HATCH
3                                    633 West 5th Street, 64th Floor
                                     Los Angeles, CA 90071

4                                              and

5                                    QUARLES & BRADY LLP
6                                    Renaissance One, Two North Central Avenue
                                     Phoenix, AZ  85004-2391

7

8                                    By  */s/ David E. Funkhouser III*          _
9                                        John S. Craiger
                                         David E. Funkhouser III

10                                   Attorneys for Defendant
11                                   Lisa Jean Borodkin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on July 31, 2012, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5                    David S. Gingras, Esq. ([David@GingrasLaw.com](mailto:David@GingrasLaw.com))
                     *Attorneys for Plaintiff*
6
                     Raymond Mobrez (Raymond@asiaecon.org)
7                    *Pro se*

8                    Iliana Llaneras (iliana@asiaecon.org)
                     *Pro se*
9
                              */s/ David E. Funkhouser III*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QB\145800.00002\17621190.1              -17-