# EXHIBIT A

Iverson, Yoakum, Papiano & Hatch
633 West Fifth Street, Suite 6400
Los Angeles, CA 90071
TELEPHONE: 213.624.7444

Lisa J. Borodkin (CA Bar #196412)
lborodkin@iyph.com
*Admitted Pro Hac Vice*

Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One, Two North Central Ave.
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

John S. Craiger (#021731)
John.Craiger@quarles.com
David E. Funkhouser III (#022449)
David.Funkhouser@quarles.com

Attorneys for Defendant
Lisa Jean Borodkin

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, et al.,<br><br>　　　　　Plaintiff,<br>　v.<br>LISA JEAN BORODKIN, et al.<br>　　　　　Defendants. | **No. 2:11-CV-01426-PHX-GMS**<br><br>**DECLARATION OF LISA JEAN BORODKIN IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>(Assigned to the Honorable<br>　G. Murray Snow)<br><br>(Oral Argument Requested) |

QBPHX\2079206.1                                     -1-

1  I, Lisa J. Borodkin, declare,

2  I have first-hand, personal knowledge of the facts set forth below and, if called as a
3  witness, I could and would testify competently thereto.

4  1.  I am an attorney at law, duly admitted to practice before all the courts of the
5  State of California and was co-counsel of record for the plaintiffs in <u>Asia Economic
6  Institute LLC et al. v. Xcentric Ventures LLC et al.</u>, C.D.Cal. No. 10-cv-1360 ("the
7  California Action").

8  2.  On May 10, 2010, Daniel Blackert advised me that he had received a return
9  telephone call from the California State Bar Ethics Hotline in response to a message he
10 had left regarding the May 7, 2010 deposition of Raymond Mobrez, and that the Ethics
   Hotline had referred to some relevant materials.

11 3.  On May 11, 2010, Blackert emailed me three California State Bar Ethics
12 Opinions and one case, *People v. Johnson*, 62 Cal. App. 4th 608 (Cal. App. 4th Dist.
13 1998), relevant to the situation at hand. Based on these authorities, Blackert and I
14 concluded that we could continue to represent the clients after taking appropriate remedial
15 action.

16 4.  On May 11, 2010, Blackert and I received a settlement demand from
17 Xcentric, attached as Exhibit E to the Verified Amended Complaint in this action, that
18 demanded payment of $25,000 in attorneys' fees as a condition of settlement. Blackert
19 and I were not authorized to accept a settlement that required payment of the defendants'
20 attorneys' fees.

21 5.  On June 8, 2010, Plaintiffs took the Deposition of Defendant Edward
22 Magedson in the California Action. Attached hereto as **Exhibit "1"** are true and correct
23 copies of the caption page, pages 72-73 and the verification page of the official deposition
24 transcript of the June 8, 2010 deposition of Mr. Magedson. The full deposition transcript
25 can be provided at the Court's request.

26 6.  Attached as **Exhibit "2"** is a true and correct copy of an August 10, 2011

email message I received from Ed Magedson, as well as earlier email messages I received from David Gingras, counsel for Plaintiff in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April 2012, in Los Angeles, California.

*/s/ Lisa J. Borodkin*
Lisa J. Borodkin

# EXHIBIT "1"

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA

 3   ASIA ECONOMIC INSTITUTE, LLC, a  )
 4   California LLC; RAYMOND MOBREZ,  )
 5   an individual; and ILIANA        )
 6   LLANERAS, an individual,         )
 7              Plaintiffs,           )
     vs.                              ) Case No:
 8   XCENTRIC VENTURES, LLC, an       ) 2:10-cv-01360-SVW-PJW
 9   Arizona LLC, d/b/a as BADBUSINESS)
     BUREAU and/or                    )
10   BADBUSINESSBUREAU.COM and/or     )
     RIP OFF REPORT and/or            )
11   RIPOFFREPORT.COM; BAD BUSINESS   )
12   BUREAU, LLC, organized and       )
13   existing under the laws of       )
14   St. Kitts/Nevis, West Indies;    )
15   EDWARD MAGEDSON, an individual,  )
16   and DOES 1 through 100,          )
17   Inclusive,                       )
18              Defendants.           )
                                      )
     _____
19        Videotaped Deposition of EDWARD MAGEDSON,
20        taken on June 8, 2010 at the offices of
21        Jaburg & Wilk, P.C., 3200 North Central
22        Avenue, Suite 2000, Phoenix, Arizona,
23        commencing at 10:07 a.m. before Marcella
24        Daughtry, RPR and Arizona Certified Reporter.
25   PAGES 1 - 227
```

Page 1

```
 1   confidential volunteer work in the community?
 2       A    Yes.
 3       Q    Is it in the Phoenix community?
 4       A    Yes. And I would say even nationwide.
 5       Q    Why do you do it?                              11:45:43
 6       A    Because I love animals, so that tells you --
 7   that tells you the story right there.
 8       Q    Does it concern animals?
 9       A    Yes.
10       Q    And it doesn't concern people?                 11:46:02
11       A    Correct.
12       Q    But you think that because of your work with
13   the animals, people could be subject to harassment?
14       A    Yeah, so I'd be harassing -- I'd be subjecting
15   any organization that I do anything for or anything     11:46:16
16   else like that, I would. So, yeah.
17       Q    I'm sorry, I don't understand.
18       A    That would be yes, it would be.
19       Q    Why do you think that?
20       A    Because people who I'm sure you've already     11:46:28
21   reached out to and that have been mentioned are people
22   who are directly connected, and all have helped other
23   people to perform DDoS attacks, gotten people to try
24   to -- like Mr. Mobrez, to lie, which I'll assume, as
25   nice as you are -- that I think the two of you's are    11:46:49
```

Page 72

```
 1   nice people, that you're probably -- I would assume you
 2   weren't aware of -- I don't know.  I don't want to
 3   really just say anymore.
 4             But -- but that's not the only thing.
 5   There is something else that I do that does, you know,            11:47:02
 6   go with human rights, something else.  Because I've
 7   been a human rights activist, I would say since my teen
 8   years, because I don't -- I don't like discrimination
 9   and those kinds of things.  So there is other things
10   that I do make time for and I'm involved with.                    11:47:22
11      Q    Is there any -- is there any of that that you
12   can tell us about today?
13      A    No, it's better off I don't, because it's
14   just -- I don't want to say too much because it would
15   just cause a problem.                                             11:47:35
16      Q    Okay.  Do you donate any money?
17      A    That's a question I don't even want -- I don't
18   want to answer.  President Obama.  But I'm asking for a
19   refund.
20      Q    Are you?                                                  11:48:03
21      A    I'm kidding.  No, I'm joking.
22      Q    Is Ripoff Report a better known name than
23   Xcentric Ventures?
24      A    Yes, of course.  Yes.  That's the trade name,
25   Ripoff Report.                                                    11:48:53
```

Page 73

```
 1   STATE OF ARIZONA          )
                               )   ss:
 2   COUNTY OF MARICOPA        )
 3
 4              I HEREBY CERTIFY that the foregoing
 5   deposition was taken before me; that I was then and
 6   there a Registered Professional Reporter, and an
 7   Arizona Certified Reporter, Certificate No. 50623, in
 8   and for the State of Arizona; that the witness before
 9   testifying was duly sworn by me to testify to the whole
10   truth; that the questions propounded by counsel and the
11   answers of the witness thereto were taken down by me in
12   shorthand and thereafter transcribed under my
13   direction; and that the foregoing 227 pages contain a
14   full, true, and accurate transcript of all deposition
15   testimony and proceedings had, all done to the best of
16   my skill and ability.
17              I FURTHER CERTIFY that I am in no way
18   related to nor employed by any of the parties hereto,
19   nor am I in any way interested in the outcome.
20              DATED at Phoenix, Arizona, this 21st
21   day of June, 2010.
22
23
24                    _____
                      MARCELLA L. DAUGHTRY, RPR
                      Certified Reporter
25                    Certificate No. 50623
```

Page 227

**EXHIBIT "2"**



Lisa Borodkin <lborodkin@gmail.com>

# Settlement offer, so we are all on the same page.. / RE: ROR Lawsuit

**ED - Rip-off Report <EDitor@ripoffreport.com>**    Wed, Aug 10, 2011 at 2:05 PM
To: lborodkin@gmail.com, lisa_borodkin@post.harvard.edu
Cc: david@gingraslaw.com

Dear Lisa,

Sorry for all the confusion, sometimes attorneys and clients are not on the same page..

You don't need to respond to me on this, <u>do respond to David</u>.

To be clear,. NO MONEY WOULD BE DEDUCTED for any information on Brewington. Not a dime. The only benefit to you would be, if you do provide information to us that you know would help us with Brewingtons other alledged activities to hurt Ripoff Report and myself.. the only thing that would get you is the following.

I would consider settling with you out of court, but, I would require you to stipulate to a judgment for $100,000 as well..

Benefit to you, you would not have to go thru a long court battle. This amount will be much less than what I will be suing for. This is one court battle I will be looking forward to. I will be on a mission to get courts to punish lawyers like you and Blackert. What you did is disgusting, despicable and unforgivable. Courts need to start coming down on lawyers like you as well as prosecutors for misconduct.

The only way that judgment would get lowered is if I am successful in getting damages from your accomplices. But, my damages are way more than the $100,000 .. You would be responsible for at least $40,000 no matter what.. I intend on getting what I deserve as you almost devastated me and the business I built for the last 13 years and you stressed me out more than I had ever been before... I really want to have my chance to expose you. You are the reason lawyers get a bad name. You should be ashamed of yourself. Even though you kept telling everyone, .."I really like ED"

What I am offering you will get you to avoid a long and drawn out legal battle and will only make you look worse than you already do.
You can also start focusing on looking for a job instead of a legal battle.

In order to get me to settle out of court with you, you would also need to provide info on things you know John F Brewington did wrong. I know you can help in this area.

You would also need to start, immediately paying on that judgment, $10,000 down and $5,000 a month. If not, I will see you in court.

But Lisa, "*I really like you*." .. Lisa, you are a phony and in my opinion, you should not be practicing law and you should be prosecuted. You're a real piece of work and an embarrassment to the entire law community and the Harvard School you went to.

If we have to file or answer another document for this case, this offer is off the table.

If you want to talk more specifics, contact David Gingras. I think we all now understand what page I am on.


ED Magedson - Founder
EDitor@RipoffReport.com
www.ripoffreport.com

..by consumers, for consumers



PO BOX 310, Tempe, AZ 85280
602-359-4357 when selection starts, press 5 ...then, three seconds later press 1... Say who you are!

**Our mission:**

- *empower* consumers

- *defend* the First Amendment

- *expose wrongdoing*

- help companies *regain control*

*Do for others as you would want them to do for you*
ED Magedson: Founder, Ripoff Report

Follow **Ripoff Report** on Twitter
Follow me, **Ed Magedson**, on Twitter

Find us on Facebook

---

**From:** David Gingras [mailto:david@gingraslaw.com]
**Sent:** Wednesday, August 10, 2011 11:33 AM
**To:** 'ED - Rip-off Report'
**Subject:** FW: ROR Lawsuit

Ed,

FYI – the reason I said $100k is the amount of the judgment is because I called J&W and that's what your fees and costs were on the Asia case (the actual amount was technically $99k and a little more, so I rounded it up to $100k).

David S. Gingras, Esq.

David@GingrasLaw.com

Tel.: (480) 668-3623

Fax: (480) 248-3196



---

**From:** David Gingras [mailto:david@gingraslaw.com]
**Sent:** Wednesday, August 10, 2011 11:32 AM
**To:** 'david@gingraslaw.com'; 'lborodkin@gmail.com'
**Cc:** 'lisa_borodkin@post.harvard.edu'
**Subject:** RE: ROR Lawsuit

Lisa,

Although you haven't responded to my email below, I need to let you know that apparently I misunderstood Ed – he's NOT willing to settle his claims against you based solely on information about Brewington. Instead, Ed said that his offer would require you to stipulate to a judgment for $100,000, and if you provided information that resulted in Ed collecting any damages from Brewington, that amount would be deducted from the judgment against you.

Sorry about the miscommunication.

David S. Gingras, Esq.

David@GingrasLaw.com

Tel.: (480) 668-3623

Fax (480) 248-3196



From: David Gingras [mailto:david@gingraslaw.com]
Sent: Monday, August 08, 2011 9:58 AM
To: 'lborodkin@gmail.com'
Cc: 'lisa_borodkin@post.harvard.edu'
Subject: RE: ROR Lawsuit

Lisa,

To follow up on our phone conversation last week, I have talked to Ed and he's not willing to resolve his claims against you in exchange for information about Dan's location. He also understands that obtaining money from you or Mr. Mobrez might be impossible, but that's not the sole point of the lawsuit. Ed feels he has to send a strong message to all the "haters" out there telling them that if they break the law when pursing ROR, that conduct will have serious consequences. Standing alone, if we can prevent even one other person from bringing a case based on fabricated claims against ROR, this will have significant value to Ed.

Having said that, as much as Ed feels that it is important to send a message by making an example here, after talking about it, he said that it is possible we could reach an alternative resolution. How? Simple – Ed wants to know if you have any evidence that would implicate John Brewington in any sort of unlawful conduct. I understand you previously answered that question by saying no, but that was a long time ago, and maybe new information has come to light.

I know you're aware of the long history with Brewington, so there's no need to discuss all the details. It suffices to say that if you had solid, reliable information (really, it would have to be documents/emails/etc.) showing that Brewington did something unlawful either in connection with the Asia litigation or otherwise, that information could be extremely valuable to Ed and it might provide a basis for resolving Ed's claims against you. Of course, if the honest answer is that you have no such information, then that's fine...we have no interest in anything but discovering the truth. For my part, I am not now nor have I ever been very closely involved in any of Ed's disputes with Brewington (this is mainly Maria's thing), so I really don't know what information might be out there, but anything that shows Brewington participating in or encouraging any sort of unlawful conduct would probably be of the highest value to Ed.

Because I know we talked about this before, I assume that you might have the same practical concerns – i.e., if you did have information to share, how could you know whether Xcentric would simply review the information and then say: "Yeah, that's not good enough. No Deal."? My answer to that is pretty simple – you would simply have to make a generalized proffer which described the type of information at issue, and we'd have to see if it sounded interesting enough to proceed. I think this could be done in such a way that Xcentric would not be able to "burn" you by taking the information, using it to our advantage, but then refusing to resolve the case against you. In other words, I would envision an arrangement wherein Xcentric agrees that it cannot use any of the information you provide for any purpose unless we reach a resolution on Xcentric's claims against you. This is sort of what FRE 408 says anyway.

Of course, because you have always said that there wasn't any helpful information to give, I don't want to belabor this topic, but if you think you might want to discuss it as a possible way of resolving the case, I would be happy to hear whatever you have to say.


David S. Gingras, Esq.

David@GingrasLaw.com

Tel.: (480) 668-3623

Fax: (480) 248-3196



---

**From:** David Gingras [mailto:david@gingraslaw.com]
**Sent:** Wednesday, August 03, 2011 4:32 PM
**To:** 'lborodkin@gmail.com'
**Cc:** 'lisa_borodkin@post.harvard.edu'
**Subject:** ROR Lawsuit


Lisa,


I'm sorry to be reaching out to you this way, but I have a question for you. By now, I assume you're aware of the lawsuit that Xcentric has commenced here in Arizona. Because I have no physical address for Dan, I mailed a copy of the Complaint, Summons, and a request for waiver of service to the PO box address that Dan has listed on the State Bar of California's website. As reflected in the attached PDF, I just received notice from the post office that Dan's address is invalid.

Because I have no other way of contacting him (I understand that the email address listed on the bar's website is also invalid, and I called the phone number they have for him but I got a strange voicemail recording that didn't sound anything like Dan), I wanted to see if you would be willing to provide me with whatever other address you may have for him. Obviously I can't require you to provide this, but I wanted to ask anyway.

If you don't have any other contact information for Dan or you're not willing to provide it to me, please let me know if you have any objection to Xcentric seeking leave from the court to perform early discovery on this issue. My thinking is that the California bar probably has a non-public address for Dan that I could obtain with a subpoena, so that's what I would seek leave to do.

Thank you.

David S. Gingras, Esq.

David@GingrasLaw.com

Tel.: (480) 668-3623

Fax: (480) 248-3196



# **PROOF OF SERVICE**

State of California, County of Los Angeles:

I am employed in the county aforesaid; I am over the age of eighteen years and my business address is: 633 West Fifth Street, 64th Floor, Los Angeles, California 90071.

On April 26, 2012, I served the foregoing document(s) on the interested parties in this action by email and U.S. Mail as follows:

> David S. Gingras, Esq.
> Gingras Law Office, PLLC
> 3941 E. Chandler Blvd., #106-243
> Phoenix, Arizona 85048
> David@GingrasLaw.com

___  VIA FACSIMILE

_X_  VIA ELECTRONIC MAIL

_X_  (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

___  (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

_X_  (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 26, 2012, at Los Angeles, California.

                                                _/s/ Lisa J. Borodkin_
                                                Lisa J. Borodkin