**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xcentric Ventures, L.L.C., an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Lisa Jean Borodkin, et al.,<br><br>Raymond Mobrez,<br><br>Counterclaimant,<br><br>vs.<br><br>Xcentric Ventures, L.L.C.; and Edward Magedson,<br><br>Counterdefendants. | No. CV-11-01426-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Lisa Borodkin's Motion to Dismiss (Doc. 102) Xcentric's Verified First Amended Complaint (Doc. 55). For the reasons stated below, the Motion is granted.[1]

**FACTUAL BACKGROUND**

Plaintiff Xcentric Ventures, LLC is an Arizona company that operates the website www.ripoffreport.com ("Ripoff Report"). As its name suggests, Ripoff Report is an online forum where users can read and post messages about businesses that purportedly

---

[1] The Parties' requests for oral argument are denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

have "ripped off" consumers in some manner. (*Id.* ¶ 2.) Xcentric claims never to have removed a post. (*Id.* ¶¶ 13-17.) Edward Magedson is the manager of Xcentric and the editor of Ripoff Report. (*Id.* ¶ 8.) Defendant Lisa Jean Borodkin is an attorney who represented Defendant Asia Economic Institute, LLC ("AEI"), a California company that published current news and events online from the year 2000 until June 2009. (*Id.* ¶¶ 3, 5.)

**I.     THE 2010 LAWSUIT**

On January 27, 2010, AEI and its principals, Raymond Mobrez and Iliana Llaneras (the "AEI Plaintiffs"), brought an action against Xcentric in state court in California (the "California Action"). (*Id.* ¶¶ 27-28.) The action was subsequently removed to the United States District Court for the Central District of California. (*Id.*) The initial complaint asserted twelve claims against Xcentric and Magedson, including RICO racketeering claims predicated on extortion and wire fraud. (*Id.*) These claims arose out of the AEI Plaintiffs' allegations that Xcentric deliberately manipulated the Ripoff Report so that negative posts about AEI rose to the top of internet searches, and then used its Corporate Advocacy Program ("CAP") to coerce AEI into paying Xcentric money in exchange for giving AEI more favorable treatment. *See Asia Econ. Institute v. Xcentric Ventures, LLC*, No. CV 10-1360 SVW (PJWx) 2010 WL 4977054 (C.D. Cal. July 19, 2010) (*AEI I*).[2] The AEI Plaintiffs contended that the use and description of the CAP claimed amounted to extortion and wire fraud.

The AEI Plaintiffs were initially represented by Daniel Blackert, and from April 19, 2010, until the conclusion of the case, they were also represented by Borodkin. (Doc. 55 ¶ 30.) At a hearing on April 19, 2010, the California District Court ordered the AEI Plaintiffs to produce "a declaration describing meetings with any representative of

---

[2] The Court takes judicial notice of California District Court's first summary judgment decision because it is a document "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999) (alteration in original).

defendant regarding extortion[]" by May 3, 2010. (*Id.*, Ex. B.) At this time, the Court also bifurcated the action to allow consideration of the extortion claims first. (*Id.*) On May 3, Mobrez and Llaneras filed their declarations. (*Id.* ¶ 32.) Mobrez stated that in the course of several telephone conversations, Magedson told him that the lawsuits were futile and that it would cost AEI $5,000 and a monthly fee to get the negative comments off of Ripoff Report. (*Id.*, Ex. C ¶¶ 6-14.) He allegedly told Mobrez that the only way to repair the damage was to enter the CAP program, and that "the more money a company made, the more they would be charged." (*Id.*) Llaneras listened in on the conversations between Mobrez and Magedson and affirmed in her declaration that the conversations occurred as Mobrez described. (*Id.* Ex. D.)

At his May 7 deposition, Mobrez reaffirmed his testimony. (Doc. 55 ¶ 39.) Counsel for Xcentric then disclosed to Mobrez and Llaneras that all phone conversations between Magedson and Mobrez had been recorded and that the recording flatly contradicted the statements made in the Mobrez and Llaneras affidavits that Magedson asked for money in exchange for removing content. (*Id.* ¶¶ 40-41.) Xcentric's counsel sent a letter to Borodkin and Blackert, in which he stated that Mobrez and Llaneras had perjured themselves, all the claims contained in the complaint were groundless, and that Borodkin and Blackert themselves would face liability for continuing to pursue baseless claims. (*Id.*, Ex. E.)

On May 20, 2010, Mobrez and Llaneras filed corrected affidavits. (*Id.* ¶¶ 48-49, Exs. F, G.) The corrected affidavits did not describe any telephone conversations where Magedson threatened AEI or asked for money. (*Id.*, Ex. F.) Mobrez, however, maintained that he received telephone calls from someone at Xcentric who told him it would cost "five grand" to join the CAP. (*Id.* ¶ 5.) He blamed a mix-up between telephone and email conversations for the incorrect statements in his previous declaration. (*Id.* ¶ 6.) Borodkin and Blackert allegedly participated in preparing these declarations. (Doc. 55 ¶ 50.)

Borodkin continued to represent the AEI Plaintiffs in prosecuting their California case. (*Id.* ¶ 52.) On July 9, 2010, one day before oral argument was to take place on

Xcentric's summary judgment motion, Borodkin filed a Rule 56(f) motion to allow further discovery to take place. (*Id.* ¶ 53.) On July 19, 2010, the District Court denied the Rule 56(f) motion, granted Xcentric's motion for summary judgment as to the RICO extortion claims, and dismissed the RICO wire fraud claims (which had not been pursued to that point) with leave to amend. (*Id.* ¶ 56.) *See AEI I*, 2010 WL 4977054 at *26.

Borodkin then filed a First Amended Complaint ("California FAC") for the AEI Plaintiffs on July 27, 2010. It asserted claims for wire fraud under RICO, RICO conspiracy, unfair business practices, defamation, intentional and negligent interference with prospective economic advantage, negligent interference with economic relations, deceit, and fraud. (Doc. 103-1, Ex. 8; Doc. 55 ¶ 57.)[3] The California FAC alleged that Xcentric caused the negative reviews to appear and disappear—depending on whether a company had entered the CAP—when an internet user entered the company's name into a search engine, and focused on the alleged discrepancy between how the CAP functions and Xcentric's statements on its website about never removing content. (*Id.* ¶¶ 22-23, 25, 62-68, 138-69.) The California FAC also faulted Xcentric for concealing the allegedly exorbitant fees charged for participation in the CAP. (*Id.* ¶¶ 22-24.) It asserted that these actions, taken together, constituted wire fraud and provided the predicate act for the RICO claim. (*Id.* ¶¶ 22-23, 25, 62-68, 138-69.)

Xcentric again moved for summary judgment on September 27, 2010. (Doc. 55 ¶ 59.) Two hours before the summary judgment hearing on November 1, 2010, Borodkin filed another 56(f) motion on behalf of her clients, seeking a continuance of the hearing to allow for further discovery relating to James Rogers, who was previously a personal assistant to Magedson. (*Id.* ¶ 60; Doc. 103-1, Ex. 11 at 199-219.)[4] In a declaration attached to the motion, Borodkin stated that she tried to arrange the deposition of Rogers

---

[3] The Court takes judicial notice of the First Amended Complaint in the California Action referenced in Xcentric's FAC.

[4] The Court also takes judicial notice of the November 1, 2010 Rule 56(f) Motion referenced in Xcentric's FAC.

with Xcentric's counsel, but was unable to come to an agreement. (Doc. 103-1, Ex. 11 at 217.) Subsequent efforts to get Rogers to come to California were unsuccessful. (*Id.*) Xcentric alleges that these statements made in the Rule 56(f) motion were false and misleading. (Doc. 55 ¶¶ 61-62.) The District Court vacated the hearing. (*Id.* ¶ 63.)

At some point, the RICO wire fraud claims were dropped or dismissed. *Asia Econ. Institute v. Xcentric Ventures, L.L.C.*, No. CV 10–01360 SVW (PJWx) 2011 WL 2469822 at *1 (C.D. Cal. May 4, 2011) (*AEI II*).[5] On May 4, 2011, the District Court granted Xcentric's motion for summary judgment as to the remaining claims. (Doc. 55 ¶¶ 64-65.)

## II. THE CURRENT ACTION

On July 18, 2011, Xcentric filed a Complaint in this Court, bringing claims for malicious prosecution and aiding and abetting tortious conduct against AEI, Borodkin, Mobrez, Llaneras, and Blackert. (Doc. 1).[6] In response to this Court's order that it provide a more definitive statement, Xcentric filed its First Amended Complaint on March 16, 2012. (Doc. 55.) Two claims are asserted against Borodkin: (1) wrongful continuation of civil proceedings and (2) aiding and abetting tortious conduct. She now moves to dismiss Xcentric's FAC under Rule 12(b)(6) for failure to state a claim. She has also filed a Request for Judicial Notice (Doc. 103), in which she asks this Court to take notice of various documents mentioned in Xcentric's FAC.

## DISCUSSION

## I. LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl.*

---

[5] The Court likewise takes judicial notice of the May 4, 2011 decision of the California District Court referenced in Xcentric's FAC.

[6] Default judgment has been entered against Blackert and AEI. (Doc. 126.)

- 5 -

*Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Igbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998). On a motion to dismiss, the court may consider only allegations contained in the pleadings and documents referred to in the complaint. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (in considering a motion to dismiss, a court may consider only the material in the pleading and "material which is properly submitted as part of the complaint").

The general rule that a court may not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) Motion to Dismiss has two specific exceptions. First, a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," *Knievel*, 393 F.3d at 1076 (alteration in original).

Second, a court may take judicial notice of "matters of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991). While matters of public record such as prior court proceedings, are proper subjects of judicial notice, the court may take notice only of the authenticity and existence of a particular order or pleading, not the veracity or validity of its contents. *Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001); *Walker v. Woodford,* 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) *aff'd in part,* 393 F. App'x 513 (9th Cir. 2010). Even when considering a public record, however, judicial notice is limited to those facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

## II.   ANALYSIS

### A.   Wrongful Continuation of Civil Proceedings

Presumably because Borodkin entered her representation in the California Action after the initial complaint was filed, Xcentric brings a claim against her for "wrongful continuation of civil proceedings," a species of malicious prosecution. This tort allegedly occurred in California and consequently California law applies. Under California law, "[m]alicious prosecution is a disfavored action. . . . This is due to the principles that favor open access to the courts for the redress of grievances." *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 150 (Cal. Ct. App. 1998). California law requires the narrow construction of a malicious prosecution claim to ensure that "litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 502 (Cal. 1989).

Three elements must be pleaded in a malicious prosecution claim against an attorney to survive a motion to dismiss: "a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Id.* at 501 (internal quotations omitted). Borodkin contests the first

1 element only with respect to the wire fraud claims, which she asserts were voluntarily
2 dismissed. As for the remaining claims, she argues that Xcentric has failed as a matter of
3 law to show that the California Action was brought without probable cause and was
4 maliciously continued by Borodkin.

5 There are two ways a plaintiff can show a defendant lacked sufficient probable
6 cause to justify bringing an action: "A litigant will lack probable cause for his action
7 either if he [1] relies upon facts which he has no reasonable cause to believe to be true, or
8 [2] if he seeks recovery upon a legal theory which is untenable under the facts known to
9 him." *Sangster v. Paetkau*, 80 Cal. Rptr. 2d 66, 75 (Cal. Ct. App. 1998). The standard is
10 an objective one and inquires "whether any reasonable attorney would have thought the
11 claim to be tenable." *Paiva v. Nichols*, 85 Cal. Rptr. 3d 838, 848 (Cal. Ct. App. 2008)
12 (citing *Sheldon Appel*, 765 P.2d at 511-12). The existence of probable cause is a question
13 of law for the court to decide. *Sheldon Appel*, 765 P.2d at 503.[7] The burden to show a
14 lack of probable cause is high, even presumably on a motion to dismiss, because
15 California law gives a malicious prosecution defendant the benefit of the doubt: "[i]n
16 making its determination whether the prior action was legally tenable, the trial court must
17 construe the allegations of the underlying complaint liberally in a light most favorable to
18 the malicious prosecution defendant." *Sangster*, 80 Cal. Rptr. 2d at 75. All the defendant
19 needs is some rational basis for the claims pursued. Accordingly, an unsuccessful claim is
20 hardly an automatic basis for a malicious prosecution suit. *Paiva*, 85 Cal. Rptr. 3d at 849.
21 Indeed, "[p]robable cause may be present even where a suit [is] merit[less]." *Jarrow*
22 *Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743 n.13 (Cal. 2003) (internal quotations
23 omitted).

24 Xcentric advances two categories of allegations to support its claim that Borodkin
25 pursued the California Action, despite knowing it lacked probable cause: factual and
26 procedural. First, it asserts that Mobrez and Llaneras, Borodkin's clients, made

---

28 [7] In its Response, Xcentric incorrectly argues that the existence of probable cause is a subjective inquiry improper for resolution at the 12(b)(6) stage.

- 8 -

statements in their declarations that Xcentric demonstrated were false. (Doc. 55 ¶¶ 32-50.) Borodkin allegedly should have known the extortion claim was factually groundless because Mobrez and Llaneras filed corrected affidavits after Xcentric's counsel informed them of the tape recording. Xcentric also claims that the extortion claim was baseless because AEI had no revenues. (*Id.* ¶51.) Second, Xcentric cites two instances where Borodkin filed last-minute Rule 56(f) motions, and asserts that these motions contained false statements, served to prolong the litigation, and reinforced the baseless character of the AEI Plaintiffs' claims. (*Id.* ¶¶ 53-55, 60-63.)

A court must examine the entirety of the cause of action brought by a malicious prosecution defendant because "[a] claim for malicious prosecution may also apply to a defendant who has brought an action charging multiple grounds of liability when some, but not all, of the grounds were asserted without probable cause and with malice." *Sycamore Ridge Apartments, LLC v. Naumann*, 69 Cal. Rptr. 3d 561, 572 (Cal. Ct. App. 2007). The specific factual allegations contained in Xcentric's FAC focus on the litigation of the extortion claims and the filing of the Rule 56(f) motions. Its allegations regarding the other claims are limited to general assertions that those claims were "groundless." Nevertheless, the Court examines each class of claims brought by the AEI Plaintiffs and pursued by Borodkin in the California Action.

### 1. RICO Extortion Claims

Almost the entire thrust of Xcentric's FAC in this action concerns how Borodkin litigated the extortion claim, which the California District Court considered first and separate from the other claims. In essence, Xcentric asserts that Borodkin lacked probable cause because the extortion claim "relie[d] upon facts which [s]he ha[d] no reasonable cause to believe to be true." *Sangster*, 80 Cal. Rptr. 2d at 75. It argues that Borodkin should have known the California Action was groundless because Mobrez and Llaneras made false statements in May 2010 regarding supposed conversations with Magedson. (Doc. 55 ¶¶ 32-50.) According to the terms of the Complaint, however, Borodkin assisted Mobrez and Llaneras only with their corrected affidavits. (*Id.* ¶ 50.) Nevertheless,

Xcentric claims that the fact that Mobrez and Llaneras revised their May 2010 declarations after learning that the telephone conversations between Mobrez and Magedson had been taped should have alerted Borodkin that there was no truth to their extortion claims. (*Id.* ¶¶ 39-48.) The affidavits had been filed in response to the California District Court's order to file declarations "describing meetings with any representative of defendant regarding extortion[]" by May 3, 2010. (*Id.* ¶ 30, Ex. B.)

"In general, a lawyer is entitled to rely on information provided by the client." *Daniel v. Robbins*, 105 Cal. Rptr. 3d 683, 698 (Cal. Ct. App. 2010) (internal quotations omitted). But "[i]f the lawyer discovers the client's statements are false, the lawyer cannot rely on such statements in prosecuting an action." *Id.* Without knowledge that her client has made specific false statements, an attorney "may, without being guilty of malicious prosecution, vigorously pursue litigation in which [s]he is unsure of whether h[er] client or the client's adversary is truthful, so long as that issue is genuinely in doubt." *Morrison v. Rudolph*, 126 Cal. Rptr. 2d 747, 752 (Cal. Ct. App. 2002), *disapproved on other grounds by Zamos v. Stroud*, 32 Cal. 4th 54, 65 (2004).

Xcentric's allegation seems to be that Borodkin discovered that the declarations of Mobrez and Llaneras were false and nevertheless proceeded with the extortion claim, relying on the content of the false declarations. At least two problems exist with that contention. First, the FAC does not allege that Borodkin was involved in any way with the declarations containing the initial, allegedly false statements. According to the FAC, her involvement really began with preparation of the corrected affidavits. (Doc. 55 ¶ 50.) Even if the Court were to infer from the FAC that Borodkin—who had entered an appearance for the AEI Plaintiffs (*Id.* ¶ 30)—was involved with the preparation of the first declarations, the only basis supplied by Xcentric in its FAC for Borodkin's knowledge of the falsity is that Xcentric's counsel subsequently told Mobrez and Llaneras about the tape (without giving it to them) and sent a letter to Blackert and Borodkin that accused their clients of lying. "But a letter from a litigation adversary merely suggesting it disagrees with the verity of the allegations in the lawsuit is not

sufficient to put the lawyer on notice of the falsity of the client's allegations." *Daniels*, 105 Cal. Rptr. 3d at 698. Nothing is alleged that would show Borodkin knew that everything her client was saying was false. Second, the original compliant in the California action relied on communications beyond the conversations between Mobrez and Magedson to support the extortion claim, such as emails. (Doc. 1, Ex. A ¶¶ 28-38, 61-63.) Even if Borodkin somehow knew that everything her clients said was false, she relied also on documentary evidence for the extortion claim.[8]

In its Response, Xcentric argues that the RICO claims were without probable cause because Borodkin could not have proven economic damages. (Doc. 107 at 2-3.) There is a tangential statement in Xcentric's FAC that references the fact that "during nine years of existence, AEI's total revenues were $0. (Doc. 55 ¶ 51.) Yet the absence of revenue or profit does not preclude the existence of economic damages. Therefore, Xcentric's allegation regarding damages does not support a claim that the California Action lacked probable cause. The FAC thus contains no plausible basis for an allegation that Borodkin "relied upon facts which [s]he ha[d] no reasonable cause to believe to be true." *Sangster*, 80 Cal. Rptr. 2d at 75.

Xcentric can nevertheless survive a motion to dismiss by alleging that Borodkin sought "recovery upon a legal theory which is untenable under the facts known to h[er]." *Id.* California law "construe[s] the allegations of the underlying complaint liberally in a light most favorable to the malicious prosecution defendant." *Sangster*, 80 Cal. Rptr. 2d at 75. Xcentric's FAC alleges that Borodkin proceeded on an RICO extortion theory because such a theory would enable the AEI Plaintiffs to avoid the limitations imposed by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1). (Doc. 55 ¶¶ 14-19.) The initial California Complaint supports this claim: the AEI Plaintiffs alleged that

---

[8] The Court also notes that Borodkin apparently abandoned any reliance after the May 2010 episode on oral conversations to support the extortion claim: "Further, it is clear from Plaintiffs' Opposition that Plaintiffs are not relying on the substance of the phone calls to support their claims that Defendants engaged in attempted extortion. Instead, Plaintiffs appear to rely solely on the emails Magedson sent to Mobrez and the content on Defendants' website." *AEI I*, 2010 WL 4977054 at *14 n.14.

- 11 -

conversations between Xcentric and Mobrez demonstrated that Xcentric engaged in extortion. (Doc. 1, Ex. A ¶¶ 57-68.) *See AEI I*, 2010 WL 4977054 at *14.

Extortion requires that Xcentric threatened "to do an unlawful injury [to the AEI Plaintiffs]; to accuse [the AEI Plaintiffs] of any crime; to expose, or to impute [to the AEI Plaintiffs] any deformity, disgrace or crime; or . . . to expose any secret [of the AEI Plaintiffs]." Cal. Penal Code § 519. The first California Complaint alleged that the CAP, in exchange for a fee, promised "to change[] the negative listings on search engines into a positive along with all the Reports on Rip-off Report." (Doc. 1, Ex. A ¶ 62.) The AEI Plaintiffs, represented by Borodkin, thus argued that the presentation of the CAP program, along with its fees, amounted to a form of extortion. Moreover, although Mobrez had corrected his declaration, he maintained that someone from Xcentric had told him it would cost "five grand" to join the CAP. (Doc. 1, Ex. F ¶ 5.)

In *Hy Cite Corp. v. badbusinessbureau.com*, a decision of this Court denied a motion to dismiss an extortion claim that had a similar foundation. 418 F. Supp. 2d 1142, 1149-50 (D. Ariz. 2005) ("Here, Defendants operate a website. Plaintiff alleges that Defendants create and solicit false and defamatory complaints against businesses, but will cease this conduct for a $50,000 fee and $1,500 monthly retainer. Remedying the publication of false and defamatory complaints, which Defendants allegedly created and solicited, does not give Defendants the right to collect fees.").[9] Nevertheless, the California District Court eventually rejected all of Borodkin's theories for lack of evidence. *See AEI I*, 2010 WL 4977054 at *16-19 ("[N]one of the communications Defendants sent to Plaintiffs contain any suggestion that the CAP Program (or the payment of fees) would result in negative reports being taken off the website or that such

---

[9] Borodkin's other cases are not on point. In *Giordano v. Romeo*, 76 So.3d 1100 (Fla. Dist. Ct. App. 2011), the court ruled that Xcentric had immunity under the Communications Decency Act. In its dicta, the court referred to Xcentric's business practices as "appalling," *id.* at 1102, but that does not provide support for a claim that Xcentric was engaged in extortion. The other case, *Leavitt v. Yelp! Inc.*, Nos. C–10–1321 EMC, C–10–2351 EMC 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011), likewise addresses questions of immunity under the CDA.

- 12 -

1 reports would no longer be featured in search results. The offer to help Plaintiffs restore their reputation and facilitate resolution with the complainants in exchange for a fee does not constitute a threat under California Penal Code § 519.").

Based on the allegations in Xcentric's FAC and the documents of which the Court has taken judicial notice, the Court cannot say that Borodkin's legal theory was so absurd that no reasonable attorney would have advanced it. The *Hy Cite* court found the theory at least tenable on a motion to dismiss, although the California District Court ultimately found the evidence lacking in the case of Borodkin's clients. Moreover, even an absence of legal authority—or presence of contrary decisions—does not amount to a lack of probable cause. *See Franklin Mint Co. v. Manatt, Phelps & Phelps, LLP*, 109 Cal. Rptr. 3d 143, 182 (Cal. Ct. App. 2010) ("[A] claim is *not* untenable merely because there is no existing authority that indisputably establishes its legal viability. Indeed, a claim is not necessarily untenable *even if the existing authority is directly adverse,* provided there is a tenable basis to argue for an extension, modification, or reversal of existing law.") (emphasis in original). As the California Supreme Court has recognized, a "court must properly take into account the *evolutionary potential of legal principles*." *Sheldon Appel*, 765 P.3d at 511 (emphasis in original).

Xcentric alleges that Borodkin's July 9, 2010 Rule 56(f) motion for additional discovery demonstrates that she lacked a legal basis for her claim. (Doc. 55 ¶¶ 53-55.) Xcentric does not, however, allege sufficient facts to make this plausible. Since, as has been determined above, Borodkin did not lack probable cause to proceed with the claim, there is no reason to assume that she was not entitled to discover facts that would support her claim. One of the principal purposes of discovery is for an attorney to uncover facts that establish her client's claims. Xcentric does not allege that the discovery sought by Borodkin in her Rule 56(f) motion in some way makes it plausible that she should have known her clients never had any claim to begin with, or that Borodkin had to somehow have become aware that they had no claim.

Xcentirc's allegations simply do not describe how that filing affected the

1 California District Court's disposition of the case in a way that harmed Xcentric, other
2 than to assert that it served "to prolong the action and compound the caused" and that
3 Borodkin "accused XCENTRIC, Magedson, and their counsel of a variety of improper
4 conduct." (*Id.*¶¶ 53-54.) In fact, three paragraphs later, Xcentric states that the California
5 District Court issued its summary judgment decision a mere 10 days later. There is no
6 indication that Xcentric was harmed in any way by the motion, so the allegation
7 concerning the timing of the Rule 56(f) motion is insufficient of itself to support a claim
8 for malicious prosecution. The theory presented in the AEI Plaintiffs' first California
9 Complaint had some support. That Borodkin's client in the end could not produce
10 sufficient evidence to support their extortion theory does not show that their attorney
11 maliciously pursued the claim. Nor does the July 9 Rule 56(f) Motion support a claim for
12 malicious prosecution. Consequently, the Court concludes that the FAC does not provide
13 sufficient facts to plausibly allege that Borodkin lacked probable cause under California
14 law to bring the extortion action on behalf of the AEI Plaintiffs.

### 2. RICO Wire Fraud and Unfair Business Practices

16 The next class of claims was for RICO wire fraud and unfair business practices.
17 These claims were pursued in the AEI Plaintiffs' FAC only after the California District
18 Court granted summary judgment on the RICO extortion claim. Borodkin contends first
19 that Xcentric's FAC fails to state a claim for malicious prosecution as to the wire fraud
20 claim because Borodkin voluntarily dismissed the RICO/wire fraud claim. The first
21 element of a malicious prosecution action is that the underlying proceeding was pursued
22 to a legal termination in the plaintiff's favor. *See Bertero v. Nat'l Gen. Corp.*, 529 P.2d
23 608, 613 (Cal. 1974). Nevertheless, the California District Court's final summary
24 judgment decision did not specify which claims it rejected and which claims Borodkin
25 dismissed. *See AEI II*, 2011 WL 2469822 at *1 ("Plaintiffs' claims under RICO have
26 previously been rejected by the Court or dropped by Plaintiffs.") On a motion to dismiss,
27 the Court accepts as true Xcentric's contention that the claims were all pursued to a legal
28 termination in its favor.

Xcentric's FAC asserts only that Borodkin knew these allegations were "entirely groundless" without alleging any facts about how or why Borodkin should have known the factual basis for the claims was false. (Doc. 55 ¶¶ 29, 78.) Thus the only inquiry is whether Borodkin's wire fraud theory was untenable. *Sangster*, 80 Cal. Rptr. 2d at 75. Unlike the extortion claim, Xcentric's FAC does not contain any allegations as to why the wire fraud claim was "groundless."

Borodkin made numerous allegations on behalf of her clients in the California FAC concerning the way Ripoff Report manipulated HTML coding for members of the CAP and how Ripoff Report's presentation of that information to the public amounted to fraud. (Doc. 103-1, Ex. 8 ¶¶ 22-23, 25, 62-68, 138-69.) Even if the wire fraud claim was ultimately terminated in favor of Xcentric, Borodkin did not lack probable cause to bring the claim. California legal authority existed that justified Borodkin's wire fraud theory. In *Leavitt v. Yelp!*, the Northern District of California left the door open to the kind of claim brought by Borodkin, albeit under California's unfair competition statute, Cal. Bus. & Prof. Code § 17200:

> Plaintiffs do not allege . . . that Yelp violated § 17200 by falsely stating its posting of reviews is based on bona fide neutral criteria. Indeed, it could be argued that . . . harm . . . stems from an alleged misrepresentation about Yelp's posting criteria and failure to disclose its alleged practice of manipulating ratings in favor of those who advertise. Claims of misrepresentation, false advertising, or other causes of action based not on Yelp's publishing conduct but on its representations regarding such conduct, would not be immunized under [the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA")].

2011 WL 5079526 at *9. Moreover, the California FAC attached various screenshots and descriptions of processes that the AEI plaintiffs marshaled in attempt to show the very behavior described in the *Leavitt* dicta. That factual support may have been insufficient to demonstrate a wire fraud—and, indeed, the wire fraud claims do not appear to have made it to the summary judgment stage—but the claims were not so lacking in probable cause

to justify an action for malicious prosecution.[10]

Once again, Xcentric cites an "eleventh hour" Rule 56(f) motion as evidence that Borodkin did not have probable cause to pursue the wire fraud claim on behalf of her clients. (Doc. 55 ¶¶ 60-63.) This time, Xcentric alleges that Borodkin "intentionally sought to mislead the Court a[s] to [the necessity of the last minute filing]." (*Id.* ¶ 62.) Standing alone, this allegation, taken as true, does not support the claim that the AEI Plaintiffs' wire fraud case lacked probable cause. Xcentric does not allege that the discovery Borodkin sought was unavailing, irrelevant, or otherwise amounted to harassment. The only injury it alleges is that its attorney flew out to California for the hearing and had to fly back. (*Id.* ¶ 63.) That inconvenience, while undoubtedly annoying, cannot shoulder the weighty burden necessary for a malicious prosecution action. In short, Xcentric's FAC fails to sufficiently allege facts that would justify its malicious prosecution claim against Borodkin for the claims of wire fraud and unfair business practices.

### 3. Remaining Claims

The residual claims brought by Borodkin on behalf of the AEI Plaintiffs in the FAC are the derivative claims: defamation, intentional and negligent interference with prospective economic relations, negligent interference with economic relations, deceit, and fraud. (Doc. 103-1, Ex. 8.) Again, Xcentric's FAC does not set forth how or why Borodkin should have questioned the truthfulness of the factual basis for the claim; just that her claim was untenable.

With the wire fraud claim gone, the California District Court ruled that the remaining claims were barred by the CDA because Xcentric was the information service provider and not the publisher of the content. *See AEI II*, 2011 WL at *5-8. The court

---

[10] Xcentric attaches to its Response a colloquy between Borodkin and the California District Court from a hearing on July 12, 2010. (Doc. 107-1.) That hearing and its contents, however, are not referenced in Xcentric's FAC and therefore the Court declines to take judicial notice of it. Furthermore, the Court declines to convert Borodkin's 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Consequently, the Court will not consider the contents of the attachment.

noted "that this very issue has been litigated by several district courts to date, where nearly identical allegations against Xcentric (and Magedson where applicable) based on Ripoff Report postings have been barred under the CDA." *Id.* at * 5 (citing *GW Equity, LLC v. Xcentric Ventures, LLC,* 2009 WL 62173 (N.D. Tex. 2009); *Intellect Art Multimedia, Inc. v. Milewski,* 2009 WL 2915273 (N.Y. Sup. 2009); *Whitney Info. Network Inc. v. Xcentric Ventures, LLC,* 2008 WL 450095 (M.D. Fla. 2008); *Global Royalties, Ltd. v. Xcentric Ventures, LLC,* 544 F.Supp.2d 929 (D. Ariz. 2008)).

At the time the California Action was being litigated, however, a plaintiff had obtained injunctive relief from the author of a Ripoff Report that required the author to take down the report. Yet the Northern District of Illinois held that the judgment obtained against the author was not a basis on which the plaintiff could force Xcentric to take down the report because Xcentric had not yet been made a party to the lawsuit. *See Blockowicz v. Williams*, 675 F. Supp. 2d 912, 915-16 (N.D. Ill. 2009), *aff'd*, 630 F.3d 563 (7th Cir. 2010). In Borodkin's November 2010 Rule 56(f) filing, referenced by Xcentric in its FAC, Borodkin asserts that

> Defendants say that Plaintiffs should sue the authors, not them. However, Defendants actively seek to hide the identity of authors and will not cooperate with court orders against the authors, anyway. Plaintiffs agree that they have a remedy against the third-party authors of the original Reports about them, and have named such third-parties as John Doe defendants. However, it is necessary to join Defendants on those claims if Plaintiffs want Defendants to be bound by any orders of this Court granting relief. Defendants have taken the position in other cases, notably Blockowicz v. Williams, 09-cv-3955 (N.D. Ill.) (now pending on appeal in the United States Court of Appeals for the Seventh Circuit after the oral argument on September 29, 2010) that if Defendants are not joined as parties in a defamation case, they will not have had notice and an opportunity to be heard, and therefore are not bound by a Court order to take down the defamatory Reports. In other words, it would do no good to sue "John Does" if Defendants will not cooperate with any takedown orders against the John Does.

(Doc. 103-1, Ex. 11 at 211.) It is certainly plausible that Borodkin may have included the

- 17 -

1 derivative claims against Xcentric to preserve her clients' ability to get the content removed if it went after the authors of the content. That was the position she took at summary judgment stage. Under the very generous standard for probable cause, Borodkin had a tenable legal theory for including these derivative claims in its case, even when those claims have never worked against Xcentric alone. Xcentric's FAC contains no factual allegations as to why Borodkin lacked probable cause as to the derivative claims.

There is no need to consider the third element of an action for malicious prosecution because Xcentric's FAC and the documents cited therein fail to state that Borodkin lacked probable cause to pursue each claim of the California Action. Almost all of the allegations in Xcentric's FAC center on the extortion claim, but, for the reasons set forth above, those allegations do not support a malicious prosecution claim. As to Borodkin's legal theories for the other claims, Xcentric's FAC does not contain the barest of allegations stating why Borodkin lacked probable cause to bring such claims. Accordingly, the claim for wrongful continuation of civil proceedings is dismissed. The Court notes that the California District Court denied Xcentric's motion for Rule 11 sanctions, further indication that, while Borodkin certainly pursued a losing cause, the claims she brought on behalf of her clients were not so lacking in probable cause as to be utterly frivolous. *See AEI II*, 2011 WL 2469822 at *11.

### B.     Aiding and Abetting Malicious Prosecution

The second claim Xcentric brings against Borodkin is that she "provided substantial assistance or encouragement to [the other Defendants] with the intent of promoting their wrongful conduct[,] specifically the malicious commencement and/or continuation of the Asia Litigation." (Doc. 55 ¶ 88.) Xcentric's FAC does not contain any additional allegations that support a claim for aiding and abetting liability separate from those that ostensibly supported an action for wrongful continuation of civil proceedings. Accordingly, the aiding and abetting claim is dismissed.

/ / /

/ / /

**CONCLUSION**

After considering the allegations of Xcentric's FAC and the documents of which the Court took judicial notice, Xcentric has failed to state a claim against Borodkin. Accordingly, all claims against her are dismissed.

**IT IS THEREFORE ORDERED** that Borodkin's Motion to Dismiss (Doc. 102) is **GRANTED.** The Clerk of Court is directed to terminate Defendant Lisa Jean Borodkin from this action.

Dated this 8th day of November, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge