**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xcentric Ventures, L.L.C., an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Lisa Jean Borodkin, et al.,<br><br>Raymond Mobrez,<br><br>Counterclaimant,<br><br>vs.<br><br>Xcentric Ventures, L.L.C.; and Edward Magedson,<br><br>Counterdefendants. | No. CV-11-01426-PHX-GMS<br><br>**ORDER** |

Plaintiff/Counterdefendant Xcentric Ventures has filed a Motion for Summary Judgment on Defendant/Counterclaimant pro se Raymond Mobrez's counterclaim. (Doc. 118.)[1] The Court grants the motion for the reasons stated below.

## FACTUAL BACKGROUND

Xcentric is an Arizona company that operates the website www.ripoffreport.com

---

[1] The Motion was filed on September 10, 2012, in response to the counterclaim contained in Mobrez's Answer of August 15 (Doc. 109). That Answer, however, addressed the original Complaint (Doc. 1), and not Xcentric's operative First Amended Complaint ("FAC") that was filed on March 16, 2012 (Doc. 55). Mobrez then filed another Answer that addressed the FAC on November 15, 2012. (Doc. 147.) While Xcentric's Motion for Summary Judgment addresses the counterclaim raised in the first Answer (Doc. 109), the Court construes it to apply to the counterclaim contained in Mobrez's second Answer (Doc. 147) because the counterclaim is identical.

("Ripoff Report"). (Doc. 118-1 ¶¶ 1-2.)[2] It was founded by Edward Magedson, an Arizona resident, in 1998. (*Id.* ¶ 3.) Its operational base is in Arizona. (*Id.* ¶¶ 2-6.)

On January 27, 2010, a California entity called Asia Economic Institute, LLC ("AEI") and its principals, Mobrez and his partner Iliana Llaneras, brought a lawsuit against Xcentric in California. Mobrez and Llaneras are California residents. The content of their lawsuit has been described in the Court's previous orders. All of the claims in that lawsuit were eventually dismissed.

Critical to the instant motion, a series of telephone calls took place in 2009 between Mobrez and Magedson. (*Id.*¶ 7.) Mobrez called Magedson regarding complaints that had been posted about AEI on the Ripoff Report. (*Id.* ¶ 9.) Xcentric used an automatic system for incoming calls, in which the caller would press a certain number to reach a given department identified by the system. (*Id.* ¶ 10.) To speak with the editor, Magedson, the caller would press "5." (*Id.* ¶¶ 10-12.) As soon as the call was connected, Xcentric had a recording system that automatically began recording the call. (*Id.* ¶ 13.) Mobrez placed several calls to Magedson during April and May of 2009. (*Id.* ¶¶ 18-19.)

On July 18, 2011, Xcentric filed a Complaint in this Court, bringing claims for

---

[2] The Court cites to Xcentric's separate statement of facts (Doc. 118-1) for those facts supported by evidence in the record. Mobrez filed a response to Xcentric's separate statement of facts that objects to each statement, but does not cite any countervailing evidence. While the Court recognizes that Mobrez is proceeding pro se, pro se litigants "are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Local Rule 56.1(a) states that

[a]ny party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

Mobrez's failure to comply with this rule allows the Court to disregard its filing and accept the facts as stated by Xcentric. Nevertheless, the Court has limited its discussion of facts to those that are not subject to reasonable dispute based on the record.

malicious prosecution and aiding and abetting tortious conduct against AEI, its attorneys, Mobrez, and Llaneras (Doc. 1). Xcentric then amended its Complaint on March 16, 2012. (Doc. 55.) Mobrez has counterclaimed against Xcentric for violating California's wiretapping law by secretly recording incoming calls. (Docs. 109, 147.)

## DISCUSSION

### I. LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250).

"A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial." *Whitaker v. Pima Cnty.*, 640 F. Supp. 2d 1095, 1100 (D. Ariz. 2009). This rule applies equally to pro se litigants, who are given significant leeway in other areas, but "are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts'").

## II.   ANALYSIS

There is no genuine dispute as to the factual basis supporting Mobrez's counterclaim. Xcentric agrees that it recorded a series of calls without informing Mobrez. The remaining question is a legal one—does California or Arizona law apply to the recordings in question? On one hand, Section 632 of the California Penal Code makes it a crime to "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrop[ ] upon or record[ ] the confidential communication." Section 637.2 creates a civil action for a person injured by § 632.[3] Assuming, therefore, that the Mobrez intended his call to be confidential, the secret recording of the call appears to violate § 632. *See Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 936 (Cal. 2006).

On the other hand, neither the parties nor the Court has identified any provision or case holding that undisclosed recording of calls violates Arizona law. Nothing in the Arizona statutes governing eavesdropping addresses one-sided recording of calls. *See* Ariz. Rev. Stat. § 13-3001, et seq. Likewise, Arizona courts have allowed secret taping of calls where one party has authorized the recordings in the criminal context. *See State v. Stanley*, 123 Ariz. 95, 597 P.2d 998 (Ct. App. 1979) (does not violate Arizona Constitution). There is thus a choice of law issue.

### A.   Arizona Choice of Law Principles

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *see Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003). Thus, because this Court sits in Arizona, the Court must apply Arizona's choice-of-law rules to the question at issue. Arizona has adopted

---

[3] "Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) [or] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." Cal. Penal Code § 637.2.

the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *See Bates v. Super. Ct.*, 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (Ariz. 1988); *Garcia v. General Motors Corp.*, 195 Ariz. 510, 990 P.2d 1069, 1075-76 (Ct. App. 1999). Under this test, the law of the state that has the most significant relationship to an issue will apply to that issue. *Id.*

Section 6(2) of the Restatement sets forth general principles for deciding the applicable rule of law:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Section 145, in turn, gives specific guidance for actions—such as this—that sound in tort. Section 145 provides that the following four contacts are most relevant to determining which state has the most significant relationship to the occurrence: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Examination of the contacts comes first, followed by the more general considerations. *See Bates*, 749 P.2d at 1369-72; *Becker v. Computer Sci. Corp.*, 541 F. Supp. 694, 703-06 (S.D. Tex. 1982).

### B. Application of the Restatement Factors

#### 1. Section 145 Contacts

The first inquiry under the "most significant relationship" test relates to the place of injury. The injury in question is the alleged invasion of Mobrez's privacy. *See Kearney*, 137 P.3d at 930. ("The legislatively prescribed purpose of the 1967 invasion-of-privacy statute, however, is 'to protect the privacy of the people of this state.'"). That

invasion occurred in California, where Mobrez was located at the time the calls were recorded.

Second, the conduct that allegedly caused the injury occurred in Arizona. Xcentric is located in Arizona, Mobrez called an Arizona number, Magedson was in Arizona, and the recording took place in Arizona.

The third factor is inconclusive. The domicile, residence, nationality, place of incorporation, and place of business of the parties is mixed. Mobrez is a citizen of California, and Xcentric is an Arizona LLC whose place of business is in Arizona.

The ultimate balance of contacts thus rests on the fourth factor—the place where the relationship between Mobrez and Xcentric is centered. Mobrez contends that the relationship was based in California because the alleged harm occurred there. That approach conflates the first factor—place of injury—with the fourth, which concentrates on the origin of the relationship giving rise to the claim. The relationship that gives rise to Mobrez's privacy claim was initiated when Mobrez made several phone calls to Magedson and Xcentric in Arizona. It was Mobrez, not Magedson, who reached into a state. The contacts flow from California to Arizona, and the relationship between the parties was formed upon connection between Mobrez and Magedson that began in Arizona. Consequently, Arizona is the place where the relationship between Mobrez and Xcentric centers. Mobrez's assertion that Xcentric does business with California residents, if true, does not change this conclusion, because the fourth factor focuses on the relationship between the parties to this case.

The fourth factor tips balance of relevant contacts towards Arizona. Another district court came to the same conclusion on the question of whether the California eavesdropping statute applied in a similar situation. *See Becker*, 541 F. Supp. at 706. The majority of relevant contacts slightly favor the application of Arizona law.

**2.  Section 6 General Principles**

**a.  Needs of the Interstate System**

"Choice-of-law rules, among other things, should seek to further harmonious

relations between the states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 comment d (1971). Neither party has presented any evidence that a decision one way or the other will impact commercial intercourse between California and Arizona. This factor does not assist the analysis.

### b. Relevant Policies of Arizona and California and Justified Expectations

Both states have sought to protect the privacy of their citizens. Arizona has passed a series of laws that protect individuals from eavesdropping and wiretapping. *See* Ariz. Rev. Stat. § 13-3001, et seq. But Arizona has not made it illegal for a party to a conversation to secretly record that conversation.

California has a similar interest in protecting the right of privacy of its citizens. Indeed, the California Supreme Court held in *Kearney v. Salomon Smith Barney, Inc.* that California's interest in protecting its citizens' privacy necessitates application of California law over the law of another state with regard to conduct quite similar to that at issue here. The court applied the California eavesdropping statute to the recording of a California citizen that took place in Georgia. 137 P.3d at 936. Critically, however, the California Supreme Court applied a different choice-of-law rule than that employed in Arizona—the so-called governmental interest analysis, which focuses more on state interests than contacts.[4]

Yet a state also has an interest in ensuring that its own law governs the conduct of its citizens within its borders. *See Becker*, 541 F. Supp. at 705. The case for applying Arizona law is stronger because the alleged wrongful conduct did not come from

---

[4] "In brief outline, the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state.'" *Kearney*, 137 P.3d at 922.

Xcentric in Arizona to Mobrez in California; instead, Mobrez was the party who called Xcentric at its place of business in Arizona. Arizona's citizens have a right "to rely on and act in conformity" with Arizona law when they plan their conduct in Arizona. *Id.* Xcentric's reliance on the application of Arizona law was more justified vis-à-vis Mobrez, whose reliance on the application of California law to conversations that he initiated with an Arizona resident is less justified.

The consequences of applying California law to the conduct at issue are also important. What Xcentric did appears legal under Arizona law. As Xcentric notes, to apply California law when an Arizona business records a call initiated by California resident would place a significant burden on Arizona companies. This is especially true in light of the two states' geographical proximity and the high volume of telephonic traffic between the two states. Thus the protection of justified expectations weighs heavily in favor of applying Arizona law.

### e. Certainty of Result and Ease of Determination

Because the forum state is Arizona, this Court is more familiar with Arizona law. Nevertheless, it could just as easily determine and apply the appropriate law of California and provide certainty, predictability, and uniformity of result. *See Bates*, 156 Ariz. at 50.

Thus the general guidelines of Restatement § 6 also tilt in favor of applying Arizona law. Because Mobrez relies only on California law to support his action, and does not cite any Arizona law that makes Xcentric's conduct illegal, summary judgment on the counterclaim is appropriate.

### CONCLUSION

Arizona law applies to Xcentric's act of recording Mobrez's calls. Mobrez has failed to state a claim under Arizona law for that action, and the Court consequently grants summary judgment for Xcentric.

/ / /

/ / /

/ / /

**IT IS THEREFORE ORDERED** that Xcentric's Motion for Summary Judgment (Doc. 118) is **GRANTED.** Mobrez's counterclaim is dismissed.

Dated this 9th day of January, 2013.

*A. Murray Snow*
/G. Murray Snow
United States District Judge