1    **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8    Xcentric   Ventures,   L.L.C.,   an   Arizona       No. CV-11-01426-PHX-GMS
     limited liability company,
9                                                         **ORDER**
                      Plaintiff,
10
11   vs.

12   Lisa Jean Borodkin, et al.,

13   Raymond Mobrez,

14                    Counterclaimant,

15   vs.

16   Xcentric   Ventures,   L.L.C.;   and   Edward
     Magedson,
17
                      Counterdefendants.
18
19          Pending before the Court are several Motions. Defendants pro se Raymond

20   Mobrez and Iliana Llaneras ("the AEI Plaintiffs") have filed two "Anti-SLAPP" Motions

21   to Stay or Strike the First Amended Complaint. (Docs. 162, 195.) The Court denies those

22   Motions. The AEI Plaintiffs have also filed a Motion to Dismiss (Doc. 153) and a Motion

23   for Judgment on the Pleadings (Doc. 156). Those Motions are granted in part and denied

24   in part. The Motions for Sanctions brought by the AEI Plaintiffs (Docs. 150, 158, 205)

25   are therefore denied. Defendant Lisa Jean Borodkin has also filed a Motion for Sanctions

26   (Doc. 134), which is denied.

27          In addition, there are several motions relating to discovery. The discovery deadline

28   in this case was December 14, 2012. (Doc. 85.) Borodkin, who was dismissed from this

case on November 8, 2012, filed a Motion for Protective Order on November 29, 2012. (Doc. 155.) Plaintiff Xcentric Ventures has filed a Motion to Amend the Scheduling Order, seeking leave to amend its Complaint for a second time. (Docs. 177, 189.) The AEI Plaintiffs have filed a Motion for Summary Judgment (Doc. 184), which Xcentric seeks to defer to take at least some of the discovery Borodkin seeks to quash (Doc. 201). After they filed their Motion for Summary Judgment, the AEI Plaintiffs filed a Motion to Compel Xcentric to respond to their discovery requests. (Doc. 202.) After consideration of these motions and the general posture of this case, the Court declines to amend its scheduling order to allow Xcentric to amend its Complaint for a second time. Borodkin's Motion to Quash is granted, and Xcentric's Motion to Defer is denied. The Motion to Compel filed by the AEI Plaintiffs is granted in part and denied in part. The Court will re-open a limited period of discovery to allow the AEI Plaintiffs to obtain discovery from Xcentric. No further discovery will be allowed at this time. The reasoning behind these decisions follows.[1]

## FACTUAL BACKGROUND

Plaintiff Xcentric Ventures, LLC is an Arizona company that operates the website www.ripoffreport.com ("Ripoff Report"). As its name suggests, Ripoff Report is an online forum where users can read and post messages about businesses that purportedly have "ripped off" consumers in some manner. (Doc. 55 ¶ 2.) Xcentric claims never to have removed a post, which allows its users to post anything about anyone. (*Id.* ¶¶ 13-17.) Edward Magedson is the manager of Xcentric and the editor of Ripoff Report. (*Id.* ¶ 8.) Defendants Raymond Mobrez and Iliana Llaneras were the principals of Defendant Asia Economic Institute, LLC ("AEI"), a California company that published current news and events online from the year 2000 until June 2009. (*Id.* ¶¶ 4, 5.) In 2009, several Ripoff Reports appeared on the website that made accusations against the AEI Plaintiffs.

---

[1] The Parties' various requests for oral argument are denied because they have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1  (*Id.* ¶ 20.)

2  **I.   THE 2010 LAWSUIT**

3       On January 27, 2010, the AEI Plaintiffs brought an action against Xcentric in

4  California (the "California Action"). (*Id.* ¶¶ 27-28.) They were represented initially by

5  Defendant Daniel Blackert, and then subsequently by Borodkin. (*Id.* ¶¶ 30.) The

6  Complaint asserted twelve claims against Xcentric and Magedson, including RICO

7  racketeering claims predicated on attempted extortion and wire fraud. (*Id.*) These claims

8  arose out of the AEI Plaintiffs' allegations that Xcentric provided a forum for others to

9  make defamatory comments and then used its Corporate Advocacy Program ("CAP") to

10  coerce companies like AEI into paying Xcentric money in exchange for giving them

11  more favorable treatment, such as publishing corrections or modifying placement of

12  negative comments. (*Id.*, Ex. A.)[2] The AEI Plaintiffs contended that Xcentric's general

13  use of CAP, as well as specific comments made to them by Xcentric, provided the

14  predicate act of attempted extortion for a RICO claim. (*Id.*)

15       The California District Court bifurcated the case to consider the extortion claims[3]

16  first and ordered the AEI Plaintiffs to produce "a declaration describing meetings with

17  any representative of defendant regarding extortion[ ]." (*Id.*, Ex. B.) In an affidavit,

18  Mobrez reiterated what the AEI Plaintiffs alleged in their complaint: that in the course of

19  several telephone conversations, Magedson told Mobrez that the lawsuits were futile and

20  that it would cost AEI $5,000 and a monthly fee to get the negative comments removed

21  from Ripoff Report. (*Id.*, Ex. C ¶¶ 6-14.) Magedson allegedly told Mobrez that the only

22  way to repair the damage was to enter the CAP program, and that "the more money a

23  company made, the more they would be charged." (*Id.*) Llaneras listened in on the

24  _____

25       [2] The Court takes judicial notice of claims made in the initial complaint in the
26  California action because it is a document physically attached to the FAC. *See Knievel v.
    ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec.*
27  *Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original).

28       [3] The references to "extortion claims" throughout this Order are references to the
    RICO claim predicated on attempted extortion.

1   conversations between Mobrez and Magedson and affirmed in her declaration that the

2   conversations occurred as Mobrez described. (*Id.*, Ex. D.)

3        At his deposition, Mobrez reaffirmed the statements about his conversations with

4   Magedson. (Doc. 55 ¶ 39.) Xcentric's counsel then disclosed to Mobrez and Llaneras that

5   all phone conversations between Magedson and Mobrez had been recorded and that the

6   recording flatly contradicted the statements made in their affidavits that Magedson asked

7   for money in exchange for removing content. (*Id.* ¶¶ 40-41.) Xcentric claims Magedson

8   never made such comments, and that Mobrez and Llaneras lied in the hopes that they

9   would have the postings about AEI removed. (*Id.* ¶ 42.)

10       On May 20, 2010, Mobrez and Llaneras filed "corrected" affidavits. (*Id.* ¶¶ 48-49;

11  *id.*, Exs. F, G.) These affidavits did not describe any telephone conversations where

12  Magedson threatened AEI or asked for money. (*Id.*, Ex. F.) Mobrez, however, maintained

13  that someone at Xcentric told him it would cost "five grand" to join the CAP, and added

14  that he received several calls from Xcentric. (*Id.* ¶ 5.) He blamed a mix-up between

15  telephone and email conversations for the incorrect statements in his previous

16  declaration. (*Id.* ¶ 6.) Xcentric asserts that Mobrez continued to lie by asserting that he

17  received calls from Xcentric and that someone told Mobrez it would cost "five grand" to

18  join the CAP. (Doc. 55 ¶ 49.)

19       The AEI Plaintiffs opposed Xcentric's motion for summary judgment on the

20  extortion claim despite allegedly knowing that the claim "was factually groundless." (*Id.*

21  ¶ 52.) On July 19, 2010, the District Court granted Xcentric's motion for summary

22  judgment as to the RICO extortion claims, and dismissed the RICO wire fraud claims

23  (which had not been pursued to that point) with leave to amend. (*Id.* ¶ 56.) *See Asia Econ.*

24  *Inst. v. Xcentric Ventures, LLC* ("*AEI I*"), No. CV 10-1360 SVW (PJWx), 2010 WL

25  4977054 at *26 (C.D. Cal. July 19, 2010).[4]

26       The AEI Plaintiffs then filed a First Amended Complaint ("California FAC") on

27

28  ─────────────
    [4] The Court takes judicial notice of the California District Court's summary
    judgment decision.

July 27, 2010. (Doc. 55 ¶ 57.) The California FAC took a decidedly different approach and asserted claims for wire fraud under RICO, RICO conspiracy, unfair business practices, defamation, intentional and negligent interference with prospective economic advantage, negligent interference with economic relations, deceit, and fraud. (*Id.*; Doc. 103-1, Ex. 8.)[5] The California FAC contained complicated allegations about how, among other things, Xcentric caused negative reviews to appear and disappear—depending on whether a company had entered the CAP—when an internet user entered the company's name into a search engine, and also focused on the alleged discrepancy between how the CAP functions and Xcentric's statements on its website about never removing content. (Doc. 103-1, Ex. 8 ¶¶ 22-23, 25, 62-68, 138-69.) The California FAC alleged that Xcentric concealed the allegedly exorbitant fees charged for participation in the CAP. (*Id.* ¶¶ 22-24.) It argued that these actions, taken together, constituted wire fraud and provided the predicate act for a RICO claim. (*Id.* ¶¶ 22-23, 25, 62-68, 138-69.)

Xcentric again moved for summary judgment on September 27, 2010. (Doc. 55 ¶ 59.) At some point, the RICO wire fraud claims were dropped or dismissed. *Asia Econ. Institute v. Xcentric Ventures, L.L.C.*, No. CV 10–01360 SVW (PJWx), 2011 WL 2469822 at *1 (C.D. Cal. May 4, 2011) (*AEI II*).[6] On May 4, 2011, the District Court granted Xcentric's motion for summary judgment as to the remaining claims. (Doc. 55 ¶¶ 64-65.)

## II.    THE CURRENT ACTION

On July 18, 2011, Xcentric filed a Complaint in this Court, bringing claims for malicious prosecution and aiding and abetting tortious conduct against AEI, Borodkin, Mobrez, Llaneras, and Blackert. (Doc. 1.)[7] Xcentric amended its Complaint (the "FAC")

---

[5] The Court takes judicial notice of the claims made in the First Amended Complaint in the California Action referenced in Xcentric's FAC.

[6] The Court likewise takes judicial notice of the May 4, 2011 decision of the California District Court referenced in Xcentric's FAC.

[7] Default judgment has been entered against Blackert and AEI. (Doc. 126.)

on March 16, 2012. (Doc. 55.) On August 30, 2012, Borodkin moved to dismiss Xcentric's claims asserted against her under Rule 12(b)(6) for failure to state a claim. (Doc. 102.) This Court granted Borodkin's Motion to Dismiss on November 8, 2012. (Doc. 146) (hereinafter "Borodkin Order"). Borodkin has also filed for sanctions. (Doc. 134.)

On November 28, 2012, the AEI Plaintiffs also filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim. Because the AEI Plaintiffs had already filed their answer to Xcentric's FAC (Doc. 147), they subsequently filed a Rule 12(c) Motion for Judgment on the Pleadings on November 30, 2012, along with a Notice of Errata inviting the Court to disregard the previously filed Motion. (Docs. 156, 159.) The AEI Plaintiffs have also filed a Request for Judicial Notice (Doc. 154), in which they ask this Court to take notice of various documents mentioned in Xcentric's FAC. Finally, they have filed motions for sanctions. (Docs. 150, 158, 205.)

The AEI Plaintiffs also filed so-called "Anti-SLAPP" Motions on December 6, 2012, and again on January 31, 2013. (Docs. 162, 201.) They then filed a Motion for Summary Judgment on December 28, 2012. (Doc. 184.) Various discovery issues have also resulted in the filing of Motions.

## DISCUSSION

## I.    THE AEI PLAINTIFFS' ANTI-SLAPP MOTIONS

The AEI Plaintiffs filed two Motions to Strike Xcentric's FAC under California's "Anti-SLAPP" statute. *See* Cal. Civ. Proc. Code § 425.16. That statute provides certain substantive protections when a suit is filed "against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." *Id.* § 425.16(b)(1). In such a case, that suit "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* The parties agree that a malicious prosecution suit comes under the ambit of the Anti-SLAPP statute.

The statute, however, has a timing provision: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." *Id.* § 425.16(f). Some federal courts have held that the 60 day time limit renews upon the filing of an amended complaint. *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999). Xcentric's FAC was filed on March 16, 2012. The standard time limit for the AEI Plaintiffs to have filed their Anti-SLAPP motions expired on May 15, 2012. Their first Anti-SLAPP motion was filed on December 6, 2012, almost seven months after the statutory deadline.

As the Parties recognize, the Court retains discretion to consider the motion outside the 60-day window. The Court declines to exercise it, however. Substantial litigation and discovery took place in the seven months that elapsed from the statutory deadline to the time the motion was filed. The AEI Plaintiffs themselves filed numerous motions, including a Motion to Dismiss, Motion for Sanctions, and a Motion for Judgment on the Pleadings. None of those motions mentioned the Anti-SLAPP statute. The Court recognizes that the AEI Plaintiffs are now proceeding pro se and that their counsel withdrew around the time the window for filing the Anti-SLAPP motion was closing. Some flexibility was in order. Nevertheless, the fact that a litigant is pro se does not give them leave to raise untimely issues at any point in the litigation. Too much time has passed since the AEI Plaintiffs began proceeding pro se and the litigation has entered a more advanced stage.

Even if the Court considered the merits of the AEI Plaintiffs' Motion, it would be denied. Both parties admit that a malicious prosecution action arises from acts in furtherance of the AEI Plaintiffs' right of petition or free speech. *See Zamos v. Stroud*, 87 P.3d 802, 806 (Cal. 2004). But, as demonstrated by the Court's ruling on the AEI Plaintiffs' Motion for Judgment on the Pleadings below, Xcentric has "stated and substantiated a legally sufficient claim", *Jarrow Formulas , Inc. v. LaMarche*, 74 P.3d 737, 740 n.8 (Cal. 2003), for wrongful initiation of civil proceedings based on the

extortion claim. It has therefore carried its burden to show that there "is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). Consequently, the Court denies the Motions to Strike.

## II.   THE AEI PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   Legal Standard

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1998); *see Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004) (stating that in ruling on a Rule 12(c) motion, the court must accept as true all allegations in the plaintiff's complaint and treat as false the allegations in the defendant's answer that contradict the plaintiff's allegations). In other words, dismissal pursuant to Rule 12(c) is inappropriate if the facts as pled would entitle the plaintiff to a remedy. *Merchants Home Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995). In considering a motion for judgment on the pleadings, the Court cannot consider evidence outside the pleadings unless the Court treats the motion as a motion for summary judgment pursuant to Federal Rule Civil Procedure 56. Fed. R. Civ. P. 12(c). The Court does not do so here.

Nevertheless, the general rule that a court may not consider evidence or documents beyond the pleadings in the context of a Rule 12(c) Motion has two specific exceptions. First, a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel*, 393 F.3d at 1076 (alteration in original). Second, a court may take judicial notice of "matters of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104

(1991).[8] While matters of public record, such as prior court proceedings, are proper subjects of judicial notice, the court may take notice only of the authenticity and existence of a particular order or pleading, not the veracity or validity of its contents. *Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001); *Walker v. Woodford,* 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006), *aff'd in part,* 393 F. App'x 513 (9th Cir. 2010). Even when considering a public record, however, judicial notice is limited to those facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

## B.   Analysis

Xcentric asserts two basic claims against the AEI Plaintiffs: (1) malicious prosecution for their initiation and continuation of the California action, and (2) aiding and abetting their attorneys and AEI in their allegedly tortious conduct.

### 1.   Wrongful Initiation and Continuation of Civil Proceedings

As this Court previously held, California law applies to Xcentric's claims against the AEI Plaintiffs. (Doc. 146 at 7.) Under California law, "[m]alicious prosecution is a disfavored action. . . . This is due to the principles that favor open access to the courts for the redress of grievances." *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 150 (Ct. App. 1998). California law requires the narrow construction of a malicious prosecution claim to ensure that "litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 502 (Cal. 1989).

Three elements must be pled in a malicious prosecution claim to survive a motion for judgment on the pleadings: "a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Id.* at 501 (internal quotations omitted). Liability also lies for continuing to

---

[8]   These cases speak to the rule in a 12(b)(6) motion, but the principles are the same in a motion for judgment on the pleadings. *See Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 981 (9th Cir. 1999).

prosecute a lawsuit after one discovers that a properly filed lawsuit now lacks probable cause, although that cause of action typically lies against the attorney. *Zamos v. Stroud*, 87 P.3d 802, 807 (Cal. 2004). It is a claim often pursued in the alternative or against the attorneys. *See Antounian v. Louis Vuitton Malletier*, 117 Cal. Rptr. 3d 3, 16 (Ct. App. 2010); *Paiva v. Nichols*, 85 Cal. Rptr. 3d 838, 850 (Ct. App. 2008). For all claims, the AEI Plaintiffs argue that Xcentric has failed as a matter of law to allege facts showing that the California Action was initiated or continued without probable cause or with malice.

A court must examine the entirety of the cause of action brought by a malicious prosecution defendant because "[a] claim for malicious prosecution may also apply to a defendant who has brought an action charging multiple grounds of liability when some, but not all, of the grounds were asserted without probable cause and with malice." *Sycamore Ridge Apartments, LLC v. Naumann*, 69 Cal. Rptr. 3d 561, 572 (Cal. Ct. App. 2007). The specific factual allegations contained in Xcentric's FAC focus on the litigation of the extortion claims by the AEI Plaintiffs. Xcentric's allegations regarding the other claims are limited to general assertions that those claims were "groundless." Nevertheless, the AEI Plaintiffs have sought to dismiss the entire FAC and so the Court examines each class of claims brought by the AEI Plaintiffs in the California Action.

### a.    Initiation and Continuation of the RICO Extortion Claims

### 1)    Lack of Probable Cause

The AEI Plaintiffs first argue that Xcentric has failed to allege sufficient facts to make plausible its claim that the AEI Plaintiffs initiated the California action without probable cause. There are two ways Xcentric can allege that the AEI Plaintiffs lacked sufficient probable cause to justify bringing an action: "A litigant will lack probable cause for his action either if he [1] relies upon facts which he has no reasonable cause to believe to be true, or [2] if he seeks recovery upon a legal theory which is untenable under the facts known to him." *Sangster v. Paetkau*, 80 Cal. Rptr. 2d 66, 75 (Cal. Ct. App. 1998). The standard is an objective one and inquiries into the "facts upon which the

defendant acted in prosecuting the prior case." *Paiva v. Nichols*, 85 Cal. Rptr. 3d 838, 848 (Cal. Ct. App. 2008) (citing *Sheldon Appel*, 765 P.2d at 511-12). The existence of probable cause is a question of law for the court to decide. *Id.*; *Sheldon Appel*, 765 P.2d at 503. For purposes of a motion for judgment on the pleadings, the Court takes the allegations of the complaint as true and determines whether those allegations would show a lack of probable cause.

Xcentric asserts that there is a subjective side to the probable cause inquiry. It cites the California Supreme Court's statement in *Bertero v. National General Corporation*, 13 Cal.3d 43, 55 (1973), that "if the initiator knows that his claim is groundless he cannot have an actual or honest belief in its validity, and he may not escape liability for commencing an action based on such a claim merely because a reasonable man might have believed it was meritorious." That portion of the probable cause inquiry is encapsulated in the first method of demonstrating a lack of probable cause: when a litigant "relies upon facts which he has no reasonable cause to believe to be true . . . ." *Sangster*, 80 Cal. Rptr. 2d at 75. It is a defendant-specific standard that requires examination of that defendant's knowledge relative to the facts on which he pursued his case. For purposes of this Motion for Judgment on the Pleadings, the Court looks at the claims Xcentric makes in its FAC to determine whether it has alleged sufficient facts to make its claim plausible.

The burden to show a lack of probable cause is high, even at this stage, because California law gives a malicious prosecution defendant the benefit of the doubt: "[i]n making its determination whether the prior action was legally tenable, the trial court must construe the allegations of the underlying complaint liberally in a light most favorable to the malicious prosecution defendant." *Sangster*, 80 Cal. Rptr. 2d at 75. All the defendant needs is some rational basis for the claims pursued. Accordingly, the defendants' lack of success in the underlying action is hardly an automatic basis for a malicious prosecution suit. *Paiva*, 85 Cal. Rptr. 3d at 849. "Probable cause may be present even where a suit [is] merit[less]." *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743 n.13 (Cal. 2003)

1    (internal quotations omitted).

2         The largest portion of the FAC asserts that the AEI Plaintiffs lacked probable

3    cause to initiate the extortion claim because the California Complaint relied upon facts

4    that they "had no reasonable cause to believe to be true." *Sangster*, 80 Cal. Rptr. 2d at 75.

5    The initial California Complaint brought by the AEI Plaintiffs highlights conversations

6    between Mobrez and Magedson as prime evidence of Xcentric's extortion. Mobrez and

7    Llaneras submitted affidavits in May 2010 that attested to the existence and content of

8    those conversations. Those affidavits had been filed in response to the California District

9    Court's order to file declarations "describing meetings with any representative of

10   defendant regarding extortion[ ]" by May 3, 2010. (Doc. 55 ¶ 30; *id.*, Ex. B.) Xcentric's

11   FAC alleges that the AEI Plaintiffs revised their May 2010 declarations after learning

12   that Xcentric recorded the telephone conversations between Mobrez and Magedson, and

13   thereby exposed falsity of the factual foundation for the extortion claim. (*Id.* ¶¶ 39-48.)

14   Xcentric also alleges in its FAC that Mobrez's and Llaneras's claim that Magedson

15   demanded "at least five grand" from Mobrez in such conversations "was, and is,

16   completely false." (*Id.* ¶ 40.) More specifically, the FAC alleges that the AEI Plaintiffs

17   intentionally misstated the substance of the conversation to create a basis for the RICO

18   extortion claims described by the "Bird Article," a "How-To" guide for prospective

19   Ripoff Report plaintiffs. (*Id.* ¶¶ 17-19)

20        Xcentric has sufficiently alleged that the AEI Plaintiffs initiated their extortion

21   claim by relying on facts they had no reasonable cause to believe to be true.  Xcentric

22   provides factual allegations in supports of its claims by alleging that Mobrez and

23   Llaneras's declarations about such conversations were directly contradicted by a

24   recording or recordings that are in Xcentric's possession. (*Id.* ¶¶ 40-42.) Xcentric further

25   alleges that the AEI Plaintiffs intentionally fabricated this extortion allegation to create a

26   RICO cause of action that enabled the AEI Plaintiffs to avoid the limitations imposed by

27   the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1). (Doc. 55 ¶¶ 14-19,

28   42.) Mobrez's and Llaneras did file corrected declarations. Yet, Xcentric alleges that

Mobrez and Llaneras did so because both "knew that they could not legitimately present [an extortion] theory because at no time was AEI actually extorted by Xcentric or Magedson." (Doc. 55 ¶¶ 23, 48).

Taking as true the allegations that the AEI Plaintiffs knew AEI was never extorted by Magedson and that there is audio evidence of the contradiction between what the AEI Plaintiffs initially alleged in the California Complaint and declarations and what was actually said in those conversations, Xcentric has alleged sufficient facts to plausibly claim that the AEI Plaintiffs lacked probable cause to initiate the extortion claim. The extortion claim in California Complaint relies primarily on the existence of those conversations between Magedson and Mobrez. Again, the fact that Mobrez and Llaneras substantially revised their affidavits in a way that casts serious doubt on the existence of those conversations after being confronted with the recording is sufficient evidence to make plausible Xcentric's claim that they lacked probable cause to initiate the extortion claim.

### 2)    Malice

To survive the AEI Plaintiffs' 12(c) Motion, Xcentric must also set forth sufficient facts to support a finding that the AEI Plaintiffs pursued the extortion claim with malice because, "by itself, the conclusion that probable cause is absent logically tells the trier of fact nothing about the defendant's subjective state of mind. . . . [T]he presence of malice must be established by *other, additional evidence*." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1031 (9th Cir. 2008) (quoting *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 152 (Ct. App. 1998)) (emphasis in original). In other words, a malicious prosecution plaintiff's "bare assertion that [defendants] 'fabricated' evidence" does not show malice. *Sangster,* 80 Cal. Rptr. 2d at 75.

Consequently, Xcentric must allege facts demonstrating that the AEI Plaintiffs instituted the suit "primarily for an improper purpose." *Sierra Club Found. v. Graham*, 85 Cal. Rptr. 2d 726, 739 (Ct. App. 1999). The malice element of a malicious prosecution claim depends on the defendant's subjective intent in initiating the prior action and is not

limited to actual hostility toward the plaintiff. *Id.* (citing *Sheldon Appel,* 765 P.2d at 503). In their FAC, Xcentric alleges that "the action was commenced wrongfully, maliciously, and for the improper purpose of harassment." (Doc. 55 ¶ 52.) In all, Xcentric's FAC enumerates eight "non-legitimate reasons" for initiating the California Action. (Doc. 55 ¶ 71.) These include:

> [t]o cause XCENTRIC to divert its resources to defending a frivolous case rather than using those resources to improve the Ripoff Report site; [t]o intimidate XCENTRIC into limiting the public's ability to use the Ripoff Report website to publish truthful information and access truthful information published by others; [t]o wrongfully investigate Magedson's personal life and to obtain and publicly release personal, private, confidential, and/or embarrassing information solely for the purpose of embarrassment and harassment.

(*Id.*) Such allegations, taken as true at this stage, are sufficient to allege malice. This claim of improper purpose is bolstered by Xcentric's allegation that Mobrez and Llaneras devised a plan to induce Magedson to ask for money, thereby "fabricating" a RICO/extortion theory that would allow them to sidestep CDA immunity. (Doc. 55 ¶¶ 23-24, 42.)

Consequently, the Court concludes that the FAC alleges sufficient facts to allege that the AEI Plaintiffs lacked probable cause under California law to initiate the RICO/extortion action and that they did so with malice. Xcentric may proceed on its claim for malicious prosecution of the RICO extortion claim.

As for Xcentric's claim that the AEI Plaintiffs wrongfully continued litigating the extortion claim, the substance of the wrongful continuation cause of action is directed at the AEI Plaintiffs' attorneys, Borodkin and Blackert. (Doc. 55 ¶¶ 74-80.) The allegations against the AEI Plaintiffs in that portion of the FAC are a repeat of those in the wrongful initiation cause of action. When the California Supreme Court first recognized wrongful continuation as a species of malicious prosecution, it did so in a context where an attorney discovered the absence of probable cause after the case had already been filed. *Zamos*, 87 P.3d at 807. Those are the situations where a wrongful continuation claim lies.

1    In any event, it makes no difference in this case. There is no meaningful distinction

2    between wrongful initiation and wrongful continuation as it relates to the AEI Plaintiffs'

3    extortion claim. Xcentric has alleged facts that support a classic malicious prosecution

4    case—that the AEI Plaintiffs (1) commenced an action based on extortion against

5    Xcentric that was pursued to a legal termination (summary judgment) in Xcentric's favor,

6    (2) was brought without probable cause; and (3) was initiated with malice. *See Sheldon*

7    *Appel*, 765 P.2d at 501. It does not matter, substantively, how that cause of action is

8    phrased. Xcentric states a claim for malicious prosecution based on the extortion claim in

9    the California Complaint.

10                          **b.       RICO Wire Fraud and Unfair Business Practices**

11           The next class of claims that the AEI Plaintiffs pursued against Xcentric was for

12   RICO wire fraud and unfair business practices. These claims were litigated by the AEI

13   Plaintiffs in the California action only after the California District Court granted

14   summary judgment on the RICO extortion claim. (Doc. 55, Ex. B; *id.* ¶¶ 56-57.) The AEI

15   Plaintiffs litigated these claims through their amended Complaint. The AEI Plaintiffs

16   made numerous allegations in the California FAC about the Ripoff Report's manipulation

17   of HTML coding for members of the CAP and how Ripoff Report's presentation of that

18   information to the public amounted to fraud. (Doc. 103-1, Ex. 8 ¶¶ 22-23, 25, 62-68, 138-

19   69.) Thus, in their FAC, the AEI Plaintiffs were not relying on any conversations with

20   Magedson.  Xcentric therefore cannot rely on those allegations to maintain its claim that

21   the AEI Plaintiffs wrongfully litigated the wire fraud and unfair business practices

22   claims. Thus, unlike the extortion claim, Xcentric's FAC does not contain any allegations

23   as to why the AEI Plaintiffs lacked probable cause to bring the wire fraud claim. (Doc.

24   103-1, Ex. 8.) Xcentric's FAC asserts only that the AEI Plaintiffs knew these allegations

25   were "entirely groundless" without alleging any facts about how or why they should have

26   known the factual basis for the claims was false. (Doc. 55 ¶¶ 69, 78.) The arguments the

27   AEI Plaintiffs put forth in favor of dismissal on Xcentric's claim as it pertains to their

28   wire fraud count are basically those set forth by this Court in dismissing similar claims

1    against Borodkin.

2           Thus the only remaining avenue that Xcentric could take to plead a lack of

3    probable cause is to allege that the wire fraud theory was legally untenable. *Sangster*, 80

4    Cal. Rptr. 2d at 75. As explained more fully in the Borodkin Order (Doc. 146 at 15-16),

5    the AEI Plaintiffs did not lack probable cause to bring the claim because California legal

6    authority justifying the wire fraud theory existed at the time of the California Action. *See*

7    *Leavitt v. Yelp! Inc.*, Nos. C–10–1321 EMC, C–10–2351 EMC, 2011 WL 5079526 at *9

8    (N.D. Cal. Oct. 26, 2011) (leaving open the possibility that allegations under California's

9    unfair competition statute would not be immunized under the CDA).

10          In short, largely for the reasons set out in the Borodkin Order (Doc. 146 at 14-16),

11   Xcentric's FAC fails to sufficiently allege facts that would to support its malicious

12   prosecution claim against the AEI Plaintiffs for their claims of wire fraud and unfair

13   business practices.

14                          **c.     Remaining Claims**

15          The same holds true for the remaining claims pressed by the AEI Plaintiffs in the

16   California Action. Xcentric's FAC makes no allegations specific to the derivative claims

17   of   defamation, intentional and negligent interference with prospective economic

18   relations, negligent interference with economic relations, deceit, and fraud. (Doc. 103-1,

19   Ex. 8.) The entirety of its FAC is focused on the litigation of the extortion claim, and

20   therefore the Court will dismiss the malicious prosecution claims relating to the

21   derivative claims.

22             **B.     Aiding and Abetting Malicious Prosecution**

23          Xcentric asserts that the AEI Plaintiffs "provided substantial assistance or

24   encouragement to [the other Defendants] with the intent of promoting their wrongful

25   conduct[,] specifically the malicious commencement and/or continuation of the Asia

26   Litigation." (Doc. 55 ¶ 88.) Although the Court determined that Xcentric's FAC fails to

27   state a claim against Borodkin, it entered default judgment against the two other

28   Defendants, AEI and Blackert. (Docs. 50, 86, 90.) The possibility exists that the AEI

Plaintiffs aided and abetted those two. So Xcentric has a claim against the AEI Plaintiffs for aiding and abetting for the same reasons that it has one for malicious prosecution; namely, that the AEI Plaintiffs lied about their conversations with Magedson and thereby assisted others in perpetuating tortious activity in the California litigation. These actions as alleged constitute aiding and abetting another's malicious prosecution.

Xcentric therefore can pursue its claim against the AEI Plaintiffs for malicious prosecution and aiding and abetting based upon the extortion claim. These are the only claims remaining in this lawsuit.

### III.   THE AEI PLAINTIFFS' MOTIONS FOR SANCTIONS

The AEI Plaintiffs have filed a Motion for Sanctions (Doc. 150) and two Motions for Leave to File Rule 11 Motion for Sanctions (Docs. 155, 205) against Xcentric and its counsel. As the AEI Plaintiffs recognized in their second Motion (Doc. 158), their original Motion for Sanctions was filed in violation of the Court's Case Management Order ("CMO") (Doc. 85 at 6) and Rule 11 of the Federal Rules of Civil Procedure.

In their first Motion for Leave, the AEI Plaintiffs state that they have "asked Plaintiff's attorney to withdraw its claims" and "served the motion on Plaintiff Xcentric's Attorney. . . and wish to wait 21 days before seeking leave to file the motion." (Doc. 158 at 1.) They then filed a second Motion for Leave over two months later. Their attached Motion for Sanctions appears substantively the same as the original Motion for Sanctions. The Court has reviewed the Motion and denies it. The primary thrust of the Motion for Leave is that Xcentric has filed a frivolous complaint against the AEI Plaintiffs. As the discussion above demonstrates, however, Xcentric's FAC states a claim against the AEI Plaintiffs. Moreover, the remainder of the Motion relates to perceived wrongs that occurred to the AEI Plaintiffs in the California action. As much as the AEI Plaintiffs may feel that they have suffered real harms, those issues are not before this Court. It cannot pass judgment on them and it is a waste of the AEI Plaintiffs' page limits to rehash those issues. The only question that is relevant is whether the AEI Plaintiffs committed or aided and abetted malicious prosecution by pressing the extortion claim

against Xcentric. The Motions for Leave are therefore denied.

The Court further reminds the AEI Plaintiffs of the need to follow the Federal Rules of Civil Procedure and the Court's Local Rules, including rules regarding the length and timing of motions, all of which are available on the Court's website.

## IV.   BORODKIN'S MOTION FOR SANCTIONS

The Court has detailed extensively in this Order and prior Orders the litigation that occurred in California between Xcentric and Borodkin's former clients. Suffice it to say, Xcentric also filed this malicious prosecution action against Borodkin herself. (Doc. 55.) Xcentric alleged that Borodkin engaged in malicious prosecution and aided and abetted her clients' tortious conduct when she litigated the California action on their behalf. (*Id.*) The Court granted Borodkin's Motion to Dismiss Xcentric's First Amended Complaint on November 8, 2012. (Doc. 146.) Borodkin filed a Motion for Leave to File Motion for Rule 11 Sanctions on September 19, 2012 (Doc. 122), which this Court granted on October 16, 2012 (Doc. 132).

### A.   Legal Standard

Rule 11 of the Federal Rules of Civil Procedure provides that

> [t]he signature of an attorney or party [on a legal filing] constitutes a certificate . . . that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Rule 11 provides that violations of its provisions can result in sanctions, "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed. R. Civ. P. 11.

"The central purpose of Rule 11 is to deter baseless filings." *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994). Rule 11 justifies sanctions "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an

improper purpose." *Estate of Blue v. Cnty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). But because the standard governing Rule 11 is objective, "the 'improper purpose' inquiry subsumes the 'frivolousness' inquiry" when applied to the filing of complaints. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). In other words, "complaints are not filed for an improper purpose if they are non-frivolous." *Id.* A "frivolous" filing is one that is "both baseless and made without a reasonable and competent inquiry." *Id.* Of course, Rule 11 "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).

## B.    Analysis

### 1.    Rule 11

Borodkin supports her Motion by claiming that (1) Xcentric's malicious prosecution and aiding and abetting claims were frivolous, (2) the claims lacked evidentiary support, and (3) Xcentric's FAC was brought for an improper purpose. This litigation has been protracted and contentious, but Borodkin has not shown that the Complaint violated Rule 11.

Xcentric ultimately failed to state a claim for malicious prosecution against Borodkin. (Doc. 146.) After examining each class of claims brought in the California action, the Court determined that Xcentric's FAC did not state a claim that Borodkin lacked probable cause to prosecute the case on behalf of her clients. Xcentric failed to allege sufficient facts, in light of the documents attached to the Complaint and those of which the Court took judicial notice, that Borodkin either "relie[d] upon facts which [s]he had no reasonable cause to believe to be true, or . . . s[ought] recovery upon a legal theory which [wa]s untenable under the facts known to h[er]." *Sangster v. Paetkau*, 80 Cal. Rptr. 2d 66, 75 (Ct. App. 1998). In short, Xcentric's FAC failed to allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Court noted, the showing necessary to establish probable cause in a malicious prosecution action is quite low and liberal construction was given to

1   the claims Borodkin raised in the underlying complaint. *See Sheldon Appel*, 765 P.2d at
2   502; *Sangster*, 80 Cal. Rptr. 2d at 75.

3       It is one thing for a complaint to be without merit; it is another for it to be
4   frivolous. Where to draw the line is a difficult question—the Supreme Court has
5   recognized that "[t]he issues involved in determining whether an attorney has violated
6   Rule 11 . . . involve fact-intensive close calls." *Cooter & Gell*, 496 U.S. at 404. Borodkin,
7   however, fails to demonstrate how Xcentric's FAC crossed the line from being non-
8   meritorious to frivolous. She only repeats the same claims made in her Motion to
9   Dismiss, namely the existence of some legal authority that supported her claims in the
10  underlying action and the absence of specificity in the allegations of malice. Those
11  arguments, among others, may have carried the day at the Motion to Dismiss stage, but
12  are insufficient to show that the Complaint was frivolous.

13      Borodkin also claims that Xcentric's Complaint lacked evidentiary support.
14  "[W]hether a pleading is sanctionable must be based on an assessment of the knowledge
15  that reasonably could have been acquired at the time the pleading was filed." *Townsend*,
16  929 F.2d at 1364. Borodkin cites various statements by Xcentric's counsel and manager
17  that suggest they believed Borodkin was not involved in the potentially perjurious
18  declarations offered by her clients in May 2010. According to Borodkin, these statements
19  reveal that the allegations of her involvement in the Complaint lacked evidentiary
20  support. Her point is not well taken. Isolated statements by counsel some time before a
21  case was filed do not preclude further evidentiary revelations. Furthermore, those
22  comments, in the context they were made, were not avowals of Borodkin's innocence;
23  instead, they were assumptions made at that time. Finally, as discussed in the Borodkin
24  Order, Xcentric's malicious prosecution claim did not rest solely on an allegation that the
25  California Action lacked a factual basis. It also attempted to allege that Borodkin pursued
26  an untenable legal theory. Borodkin has not shown that Xcentric's claims were so lacking
27  in evidentiary support as to warrant sanctions under Rule 11.

28      Finally, Borodkin asserts that Xcentric filed the Complaint for an improper

purpose. The Ninth Circuit, however, has stated that "subjective evidence of the signor's purpose is to be disregarded" when a defendant alleges that a complaint was filed for an improper purpose. *Townsend*, 929 F.2d at 1362 (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1989)). The sole question is the frivolousness of the Complaint. *Id.* Borodkin has not shown that it was. In any event, Borodkin relies solely on an email communication between herself and Xcentric's counsel that contains an offer of settlement. As Xcentric notes, statements made during the course of a settlement negotiation cannot be offered "to prove liability for or invalidity of [a] claim . . . ." Fed. R. Evid. 408. Furthermore, the statement does not establish an improper purpose. It appears to have been part of a larger two-way settlement dialogue with Borodkin. Consequently, she has not established that the Complaint was filed with an improper purpose.

Borodkin's Motion for Sanctions is denied. Similar to the AEI Plaintiffs, the Court notes that the majority of her Motion is devoted to a rehash of alleged wrongs that occurred in the California action that are not before the Court. Xcentric, in its Response, has asked the Court to award it "the reasonable expenses, including attorney's fees, incurred" by addressing this Motion. Fed. R. Civ. P. 11(c)(2). The Court declines to do so.

### 2.    Order to Show Cause

While Borodkin has not succeeded in her Rule 11 motion, she asked this Court in her Reply to show cause why Xcentric and its counsel should not be sanctioned for seeking to amend the Complaint yet again (Doc. 166) to add Borodkin after the Court ordered her dismissed from the case and long after the Case Management Order's deadline for amendment. 28 U.S.C. § 1927 declares that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court agrees with Borodkin that Xcentric's Motion to Amend appears unreasonable and vexatious in light of the Court's

prior orders. Nevertheless, Borodkin did not file a response to Xcentric's Motion to Amend (Doc. 166), and the Court swiftly disposed of it. In addition, Borodkin's attached spreadsheets of costs and attorneys' fees do not show any time devoted to responding to Xcentric's Motion to Amend. (Doc. 170, Exs. A, B.) Therefore, her request is denied.

## V.   DISCOVERY

Several issues relating to discovery have arisen both before and after the cutoff of December 14, 2012. (Doc. 85.) A dispute regarding Xcentric's efforts to take discovery from Borodkin resulted in Borodkin filing a Motion for Protective Order on November 29, 2012. (Doc. 155.) Subsequent to the dismissal of Borodkin from the case, Xcentric filed a Motion to Amend the CMO to allow it to file another amended complaint. (Docs. 177, 189.) The AEI Plaintiffs filed a Motion for Summary Judgment (Doc. 184), but Xcentric seeks to defer consideration until it can take limited discovery from Borodkin (Doc. 201). The AEI Plaintiffs—after already filing their Motion for Summary Judgment—seek to compel Xcentric to respond to their written discovery requests. The Court will address each issue in turn.

### A.   Motion to Amend CMO

Xcentric seeks yet again to amend its Complaint. The Court has denied prior attempts to do so, both as a matter of course and for violating the CMO. Xcentric moves the Court to amend the CMO now to permit amendment and advances a number of arguments about how it is not at fault in the protraction of this litigation. The Court recognizes that some events were out of Xcentric's hands. Nevertheless, the Court adheres to the CMO unless good cause can be shown, and Xcentric has not shown good cause. It appears the main purpose of its Motion is to try and add detail to its FAC that was previously lacking, after it has already had at least one previous chance to do so. That does not constitute good cause. Xcentric's Motions to Amend are denied.

### B.   Discovery from Borodkin

Before discovery closed on December 14, 2012, Borodkin filed a Motion for Protective Order under Rule 45 of the Federal Rules of Civil Procedure. On November

26, 2012—after she was dismissed from the case and became a nonparty—Xcentric noticed her deposition and served a subpoena duces tecum on her. The subpoena asked Borodkin to bring the following categories of documents:

1.) Produce copies of all non-privileged documents, including but not limited to correspondence, in YOUR possession which relate to the Asia Litigation *excluding* pleadings actually filed with the court, deposition transcripts and exhibits, and documents and correspondence actually provided to or received from Xcentric's counsel during the course of the Asia Litigation.

2.) Produce copies of all non-privileged documents, including but not limited to correspondence, in YOUR possession which relate to:
   a. Xcentric Ventures, LLC
   b. Edward Magedson
   c. The website www.ripoffreport.com
   d. The webpage located at: http://www.seomoz.org/blog/the-anatomy-of-a-ripoff-report-lawsuit

3.) Produce copies of any correspondence you have sent to or received from any of the following people/entitles from January 1, 2008 to the present which relate to Xcentric, Edward Magedson, the Ripoff Report website, or the Asia Litigation:
   a. Daniel Blackert
   b. Sarah Bird, Esq.
   c. SEOmoz
   d. John F. Brewington
   e. Shawn Richeson
   f. Darren Chaker
   g. James Rogers
   h. Kenton Hutcherson
   i. Christopher Ingle
   j. Tina Norris
   k. Jan Martin Smith
   l. Fadi Karnaby
   m. Joe Reed
   n. Melissa A. Herman
   o. David Russo
   p. Eric Goldman
   q. Michael Roberts
   r. Scott Karosa
   s. Richard Goddeau

4.) Produce copies of any documents which YOU allege are evidence that RAYMOND MOBREZ, ILIANA LLANERAS, and/or ASIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ECONOMIC INSTITUTE, LLC had probable cause to commence the Asia Litigation.

5.) Produce copies of any documents which YOU allege are evidence that RAYMOND MOBREZ, ILIANA LLANERAS, and/or ASIA ECONOMIC INSTITUTE, LLC had probable cause to continue the Asia Litigation.

(Doc. 155-3 at 13-14.) Borodkin objects to these requests on a host of grounds. As an initial matter, Requests 4 and 5 are quashed because Borodkin is no longer a party in this matter and therefore does not allege anything regarding the existence or not of probable cause. Xcentric makes no argument to the contrary in its Response.

The Court can now evaluate Borodkin's remaining claims of privilege, burden, and relevancy with regard to the remaining claim in this action: that the AEI Plaintiffs engaged in or aided and abetted malicious prosecution by commencing and continuing to prosecute a claim for extortion against Xcentric.

### 1.    Legal Standard

Rule 45(c)(1) instructs that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorneys' fees—on a party or attorney who fails to comply." Rule 45(c)(3)(A) allows a court to quash any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to an undue burden." When a person seeks to withhold subpoenaed information under a claim of privilege, she is required to "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A).

1
2

### 2.    Specific Claims

#### a.    Undue Burden

3    The Court first considers Borodkin's claim that production of the information

4  Xcentric seeks in Requests 2 and 3 is unduly burdensome. She asserts that the Requests

5  are overbroad and largely irrelevant to Xcentric's remaining claim against the AEI

6  Plaintiffs. "Any information sought by means of a subpoena must be relevant to the

7  claims and defenses in the underlying case. More precisely, the information sought must

8  be 'reasonably calculated to lead to admissible evidence.'" *Gonzales v. Google, Inc.*, 234

9  F.R.D. 674, 680 (N.D. Cal. 2006) (quoting Fed. R. Evid. 26(b)). Overbroad subpoenas

10  must be quashed or modified because they impose an undue burden on the subpoenaed

11  party. Fed. R. Civ. P. 45(c)(3).

12    Request 2 asks Borodkin to produce all non-privileged documents in her

13  possession that relate to Xcentric, Magedson, and the websites www.ripoffreport.com and

14  http://www.seomoz.org/blog/the-anatomy-of-a-ripoff-report-lawsuit.    Borodkin    claims

15  that this information is largely irrelevant to the claim that the AEI Plaintiffs lacked

16  probable cause and acted with malice in prosecuting the California action. The vast

17  majority of this information is irrelevant to Xcentric's claim against the AEI Plaintiffs.

18  Only a small subset of this broad category of information is "reasonably calculated to

19  lead to admissible evidence" that the AEI Plaintiffs engaged in malicious prosecution,

20  and that would be any information that the AEI Plaintiffs communicated to Borodkin and

21  her communications back to them about the four subcategories in Request 2. The

22  applicability of any privilege claim is addressed below. Any other information that

23  Borodkin—now a nonparty—has about Xcentric, its manager, its website, and a blog

24  posting is not relevant to Xcentric's remaining case.

25    Request 3 lists 19 people, and Xcentric seeks Borodkin's communications with

26  them dating back to January 1, 2008. This is an overbroad request. Borodkin claims, and

27  Xcentric does not contest, that three of these individuals—Shawn Richeson, John

28  Brewington, and Sarah Bird had no involvement in the California Action. Borodkin's

communications with those individuals are therefore irrelevant to Xcentric's claims against the AEI Plaintiffs. Another four—Joe Reed, Kenton Hutcherson, Jan Smith, and Tina Norris—submitted declarations in the California Action. (Doc. 155-1 ¶ 15.) The Court agrees that, in this specific instance, any non-public communications that Borodkin would have had with these four individuals that would be relevant to this action are covered by the attorney work product doctrine. As to the remaining individuals, Borodkin claims—and Xcentric does not contest—that they are irrelevant to this litigation. The Court therefore quashes Request 3 for being overly broad and unduly burdensome.[9]

### b.    Privilege Claims

Borodkin claims that much of the information sought by Xcentric is privileged. She raises claims under California's Reporter's Shield Law, attorney work product, and attorney-client privilege.

### 1)    Reporter's Shield Law

Borodkin first claims that any correspondence with Eric Goldman, Sarah Bird, and Michael Roberts (in Request 3) is protected under the California Constitution's Reporter's Shield Law. That law states that a newsperson "shall not be adjudged in contempt . . . for refusing to disclose the  source of any information procured while so connected or employed [as a newsperson] . . .  or for refusing to disclose  any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public." Cal. Evid. Code § 1070(a). Borodkin avers that she is a blogger who writes on her own blog and has written for other websites. (Doc. 155-1 ¶¶ 3-4.) She is a member of the Los Angeles press club and has also contributed to web television shows and appeared as a guest lecturer at the University of Southern California. (*Id.* ¶¶ 5-7.) Xcentric objects to Borodkin's invocation of the Reporter's Shield Law and claims that she has not shown that she falls within its protections.

---

[9] Throughout her Motion, Borodkin accuses Xcentric of using discovery as an opportunity to conduct a wide-range "fishing expedition" into matters related to other litigation. The Court does not express any opinion on that and trusts that this Order will clarify the relevant issues in this case going forward.

The law lists the individuals who fall within its protection: "a publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, or by a press association or wire service"; or "a radio or television news reporter or other person connected with or employed by a radio or television station." Cal. Evid. Code § 1070. Borodkin has stated only that she self-publishes material and collaborates on web video presentations. She has not shown that she "is affiliated with any newspaper, magazine, periodical, book, pamphlet, news service, wire service, news or feature syndicate, broadcast station or network, or cable television system." *Obsidian Fin. Group, LLC v. Cox*, No. CV–11–57–HZ, 2011 WL 5999334 at *1 (D. Or. Nov. 30, 2011) (interpreting similar Oregon law to not apply to unaffiliated blogger). The statute requires affiliation with such an organization in order to call upon it for protection, presumably to avoid the uncertainty of the law's application in today's world of blogs, tumblrs, and tweets, where anyone could claim the mantra of a reporter. Borodkin has not established that she is covered by the Reporter's Shield law and her claim of privilege thereunder is denied.

### 2) Attorney-Client Privilege, Attorney Work Product, and Undue Burden

Borodkin claims that the information sought in the remaining three requests is covered by the attorney-client privilege and attorney work product doctrine. Responding to Xcentric's requests would therefore create an undue burden because Borodkin would have to produce extensive privilege logs and very little else. The attorney-client privilege protects confidential attorney-client communications, but the privilege belongs to the client and can be waived. *See* Fed. R. Evid. 502(g)(1); *Upjohn Co. v. United States*, 449 U.S. 383 (1981). It is the attorney, though, who has standing to assert the work-product privilege. *See State Comp. Ins. Fund v. Superior Court*, 111 Cal. Rptr. 2d 284, 292 (Ct. App. 2001). California has codified the attorney work product privilege, which creates two tiers of work product. First, "[a] writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any

circumstances." Cal. Code Civ. P. § 2018.030(a). Second, "[t]he work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." *Id.* § 2018.030(b). "The protection afforded by the privilege is not limited to writings created by a lawyer in anticipation of a lawsuit. It applies as well to writings prepared by an attorney while acting in a nonlitigation capacity." *Cnty. of Los Angeles v. Superior Court*, 98 Cal. Rptr. 2d 564, 574. (Ct. App. 2000). In short, both the attorney-client privilege and the work product doctrine provides broad protection when a party seeks discovery from a non-party attorney.

At first blush, much of the information requested in Requests 1 and 2 would likely involve communications covered by the attorney-client privilege and attorney work product doctrine. The Requests, however, expressly limit themselves to "any *non-privileged* information." Nevertheless, as the briefing of this Motion makes clear, Xcentric admits that while some documents it has requested would normally fall within the attorney-client privilege, the AEI Plaintiffs have waived it. Xcentric has clarified that position by filing a Motion to Defer Summary Judgment under Rule 56(d), in which it claims that the AEI Plaintiffs may intend to raise an advice of counsel defense. While it is not apparent to the Court that it should even address such a demand in light of the fact that the subpoena specifically excludes privileged documents, even were it to countenance such a request, the burden would be upon Xcentric to establish the waiver to the extent it seeks documents that are subject to the attorney-client privilege

Advice of counsel can be a valid defense in a malicious prosecution action when the client has fully and truthfully disclosed the relevant facts to her counsel and acted in good faith. *See Swat-Frame, Inc. v. Goldstein*, 124 Cal. Rptr. 2d 556, 567-68 (Ct. App. 2002), *disapproved of on other grounds by Reid v. Google, Inc.*, ___ P.3d ___,___, 113 Cal. Rptr. 3d 327 (2011). But its invocation would result in a waiver of the attorney-client privilege as to the communications and documents relating to the advice. *State Farm*

*Mut. Auto. Ins. Co. v. Superior Court*, 279 Cal. Rptr. 116, 119 (Ct. App. 1991).

Xcentric has failed to carry its burden of showing a waiver of attorney-client privilege. To this date the AEI Plaintiffs have not affirmatively invoked advice of counsel as a defense in any of their pleadings or motions. Xcentric cites statements by Mobrez and Llaneras that they took certain actions relating to the prosecution of the California suit after consulting with counsel. For example, Xcentric submitted the following Requests for Admission ("RFAs") to Mobrez: "Admit that YOU were involved in the original decision to commence the Asia Litigation" and "Admit that YOU were involved in the decision to continue pursuing the Asia Litigation." (Doc. 183 at 7.) Mobrez responded: "Admit that together with the advi[c]e of my Attorney(s) decided to commence the Asia Litigation" and "Admit that together with the advi[c]e of my Attorney(s) decided to continue the Asia Litigation." (Doc. 183-1, Ex. B.) Xcentric also cites statements from the deposition of Mobrez and Llaneras where they respond to certain questions by citing their lawyers. (*Id.*, Exs. C, D.) But when asked by Xcentric's counsel whether she would raise advice of counsel as a defense, Llaneras responded "I don't know." (*Id.*, Ex. D.) Of course, Xcentric's remaining claims focus on the wrongful initiation of litigation, and it is not disputed that Borodkin was not counsel to the AEI Plaintiffs at that time. She may have documents related to the AEI Plaintiffs' actions after April 19, 2010, but, as is indicated, Xcentric has not established that the Asia Plaintiffs are raising a right to counsel defense.

In addition, much of the information sought by Xcentric in its remaining three Requests would qualify as work product, as described by Cal. Code Civ. P. § 2018.030. Indeed, there does not appear to be anything in Requests 1 and 2 that would be relevant to Xcentric's claim that the AEI Plaintiffs committed malicious prosecution by filing an extortion claim, or aided and abetting AEI or Blackert, and yet not covered by the attorney-client privilege or attorney work product doctrine. At least, Xcentric does not describe information that it seeks that meets those criteria. The Court must weigh the burden on Borodkin with the value of any information that could be obtained to Xcentric.

*See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). The Court must be sensitive to the burdens on non-parties. *See Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005). Even if there was such information, requiring Borodkin to create a massive privilege log just so Xcentric can obtain the small slice of information that may be relevant and non-privileged places an undue burden on Borodkin. *See Nocal, Inc. v. Sabercat Ventures, Inc.*, C 04-0240 PJH(JL), 2004 WL 3174427 at *3 (N.D. Cal. Nov. 15, 2004) ("In the instant case, the burden of production outweighs the benefits of the subpoena because [the] attorney-client and work product privileges . . . , outweigh the benefits of allowing Plaintiff access to documents which are either already within its possession or irrelevant. Moreover, the categories of documents requested by the subpoena are overly broad and irrelevant because they seek the entire litigation history . . . . Beard believes the search for responsive documents would require hundreds of hours and thousands of dollars to review decades of documents and prepare privilege logs to ultimately produce documents which the Plaintiff already has.")

Because the Court cannot see anything that Xcentric requests in Requests 1 and 2 as falling within the category of relevant and also non-privileged, it grants Borodkin's Motion and quashes the subpoena. Furthermore, because the basis for Xcentric's Motion to Defer Summary Judgment was its desire to obtain the discovery from Borodkin that the Court just quashed, that Motion is likewise denied. The Court will consider the Response that Xcentric has already filed in deciding the AEI Plaintiffs' pending Motion for Summary Judgment. Borodkin has asked for sanctions in her motion, and that request is denied. Xcentric did not cross the line into sanctionable conduct with its attempt to obtain discovery from Borodkin.

### C.   AEI Plaintiffs' Motion to Compel

The AEI Plaintiffs filed a Motion to Compel Xcentric to respond to their written discovery requests. Pursuant to the CMO, all written discovery requests were due by October 30, 2012. (Doc. 85 ¶ 4.) The AEI Plaintiffs served their written requests on Xcentric on December 7, 2012, one week before the close of discovery. Xcentric objected

to the requests on the basis that they were untimely under the CMO. (Doc. 202, Ex. 3.) It also raised a number of objections to certain requests. Xcentric responded to the AEI Plaintiffs' Motion by citing ¶ 6(a) of the CMO, which directs the parties to arrange an informal telephonic conference with the Court in the event of a discovery dispute. (Doc. 85.) Nevertheless, the CMO also states that "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery . . . ." (*Id.* ¶ 6(c).)

Xcentric did not behave unreasonably in its response to the AEI Plaintiffs' written discovery requests. It sought simply to abide by the CMO. Nevertheless, the Court will grant the AEI Plaintiffs' Motion and require Xcentric to respond within 30 days of this Order to those written discovery requests served on it by the AEI Plaintiffs on December 7, 2012. The AEI Plaintiffs may not serve any additional requests.

Xcentric objected to several of the requests on substantive grounds. It objected to Request for Production ("RFP") 2 on the grounds that it covers information subject to the attorney-client privilege and seeks information that is irrelevant. The Court agrees with Xcentric that RFP 2 asks for information that irrelevant to the question of whether the AEI Plaintiffs committed malicious prosecution when they brought and pressed their extortion claim against Xcentric. Xcentric is under no obligation to respond to RFP 2.

Xcentric also objects to RFP 5. RFP 5 is very similar to Request 3 that Xcentric served on Borodkin, discussed above. It lists 23 people or entities (including a reference to "Any other parties or entities") and asks for all of Xcentric's correspondence with those individuals since January 1, 2008. Blackert and Borodkin were the AEI Plaintiffs' attorneys in the California Action, and so the request is relevant as to Xcentric's correspondence with them. The same goes for Joe Reed, Kenton Hutcherson, Jan Smith, and Tina Norris, who submitted declarations in the California Action. Xcentric must respond to RFP 5 for these individuals. As for the others, neither the AEI Plaintiffs here, nor Xcentric earlier, have demonstrated that they had any relevance to the AEI Plaintiffs' pursuit of the California action. Xcentric need not respond to RFP 5 with regard to the

remainder.

RFPs 7-9 ask for information relating to Xcentric's probable cause to commence and continue the current litigation. Those requests are irrelevant on the issues remaining in this case, and Xcentric's objection to them is sustained.

RFPs 11-20 ask for detailed financial information, such as tax forms and insurance policies, relating to Xcentric's operation for over a decade. Mobrez and Llaneras claim that the information is relevant to Xcentric's claim of damages. (Doc. 55 ¶¶ 72, 90.) Insofar as Xcentric is alleging damages, the Court agrees that certain financial information is relevant. Xcentric therefore must produce the information requested in RFPs 11, 13-17, 19. To the extent Xcentric wishes only to recover legal fees from the California Action, it may enter a stipulation that the only damages it will seek are legal expenses. In that case, it need only provide the legal bills that it seeks to recover. The financial information requested in RFPs 12, 18, and 20 is irrelevant. Nevertheless, the Court agrees with the AEI Plaintiffs that the identities of Xcentric's employees, partners, and members, and those of its contractors and affiliates are relevant to this case. As the Court understands the AEI Plaintiffs' case, they argue that someone affiliated with Xcentric made the communication that formed the crux of the extortion claim in the California action. Xcentric therefore must provide the identities requested in RFPs 12-17. RFP 21 does not relate to the claims pursued in this action.

Xcentric likewise objects to a number of the RFAs on the grounds of relevance. RFA 1 seeks information relevant to the question of whether the AEI Plaintiffs had probable cause to pursue the extortion claim. Xcentric's objection is therefore overruled. The Court agrees with Xcentric that RFA 4 seeks information that is irrelevant to the remaining claim. RFAs 6 and 7 ask for information relevant to the AEI Plaintiffs' theory of extortion and Xcentric's objection to the contrary is overruled. RFAs 8-11 ask for irrelevant information and Xcentric's objection is sustained. Given that Xcentric has already denied RFAs 2, 3, 6, 7, and 9, Xcentric needs to respond only to RFAs 1 and 4.

Xcentric finally objects to certain interrogatories on the basis of relevance. The

information sought in Interrogatories 3, 5, 8, 9 and 15 is irrelevant. The Court reminds the AEI Plaintiffs that this is a case against *them*, not Xcentric, for malicious prosecution.

In the event that a dispute arises between the Parties in the course of responding to the remaining written discovery requests, they are instructed to follow the procedure detailed at ¶ 6(a) of the CMO in a timely manner. The Court reminds the AEI Plaintiffs that they have already filed a Motion for Summary Judgment, and the Court will consider only the evidence submitted with that Motion and not any evidence subsequently submitted.

## CONCLUSION

The only remaining claim in this case are the claims by Xcentric against the AEI Plaintiffs for malicious prosecution or aiding and abetting tortious conduct arising out of the initiation  of the extortion claim in the California action. All remaining claims or parties have been dismissed or had default judgment entered against them.

**IT IS THEREFORE ORDERED THAT:**

1.     The AEI Plaintiffs' Motions to Dismiss or for Judgment on the Pleadings (Docs. 153, 156) are **granted in part and denied in part**.

2.     Borodkin's Motion for Protective Order (Doc. 155) is **GRANTED.**

3.     Borodkin's Motion for Sanctions (Doc. 134) is **DENIED.**

4.     The AEI Plaintiffs' Anti-SLAPP Motions (Docs. 162, 195) are **DENIED**.

5.     The AEI Plaintiffs' Motions for Sanctions (Docs. 150, 158, 205) are **DENIED.**

6.     Xcentric's Motions to Amend (Docs. 177, 189) are **DENIED**.

7.     Xcentric's Motion to Defer Ruling (Doc. 201) is **DENIED.**

/ / /

/ / /

/ / /

/ / /

/ / /

8.     The AEI Plaintiffs' Motion to Compel (Doc. 202) is **granted in part and denied in part**. Xcentric shall have 30 days from the date of this Order to respond to the written discovery requests served on it by the AEI Plaintiffs on December 7, 2012, except for those requests to which the Court has sustained Xcentric's objections.

Dated this 20th day of March, 2013.

_A. Murray Snow_

G. Murray Snow
United States District Judge